UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------- x
SENIOR HEALTH INSURANCE COMPANY OF :
PENNSYLVANIA,                      :
                                   :
        Plaintiff,                 :
                                   :
        -v-                        :        18-cv-6658 (JSR)
                                   :
BEECHWOOD RE LTD., B ASSET MANAGER, :       OPINION AND ORDER
L.P., BEECHWOOD BERMUDA            :        _____
INTERNATIONAL, LTD., BEECHWOOD RE  :
INVESTMENTS, LLC a/k/a BEECHWOOD RE :
INVESTORS, LLC, ILLUMIN CAPITAL    :
MANAGEMENT, LP, MOSHE M. FEUER     :
a/k/a MARK FEUER, SCOTT A. TAYLOR, :
DAVID I. LEVY, DHRUV NARAIN, and   :
JOHN DOES 1-10,                    :
                                   :
        Defendants.                :
---------------------------------- x



JED S. RAKOFF, U.S.D.J.

After discovering that it had invested $320 million with

the affiliates of a failed Ponzi scheme, plaintiff Senior Health

Insurance Company of Pennsylvania ("SHIP") brought a 13-count

complaint against defendants Beechwood Re Ltd., B Asset Manager,

L.P., Beechwood Bermuda International, Ltd., Beechwood Re

Investments, LLC a/k/a Beechwood Re Investors, LLC, Illumin

Capital Management, LP, Moshe M. Feuer a/k/a Mark Feuer, Scott

A. Taylor, David I. Levy, Dhruv Narain, and John Does 1-10. Now

before the Court is the partial motion of most of the defendants[1]

_____

[1] Defendant Levy does not join the motion, nor obviously do the
John Does.

to dismiss SHIP's complaint. For the reasons discussed below, and as explained in more detail herein, defendants' motion is granted in part and denied in part.

## Background

In evaluating defendants' partial motion to dismiss, the following allegations are taken as true: SHIP is an insurance company that provides long-term care coverage. Complaint ¶ 5 ("Compl."), ECF No. 1. In 2003, SHIP stopped writing new business and developed a "run-off strategy" with the Pennsylvania Insurance Department. Id. ¶ 40. Although SHIP is technically a for-profit entity, it is managed only for its policyholders' benefit, and any assets remaining after the satisfaction of SHIP's policies and obligations are paid out to charities that focus on senior health issues. Id. ¶ 41

Of central importance to this action is non-party Platinum Partners, L.P., a Manhattan-based hedge fund founded by non-parties Mark Nordlicht, Murray Huberfeld, and David Bodner. Id. ¶ 15. For over a decade, Platinum falsely inflated the reports of its performance, and as of 2012, the hedge fund was "suffering severe liquidity problems and needed constant cash infusions to prop up its funds and support redemptions." Id. ¶¶ 16-17. To meet these shortfalls, Platinum partnered with defendants Mark Feuer, Scott Taylor, and David Levy (Huberfeld's

nephew) to form defendant Beechwood Re and its affiliates. Id.
¶ 17. The purpose of creating Beechwood Re was to "present the
false appearance of being unrelated to Nordlicht, Huberfeld, or
Bodner in order [to] attract institutional investors that
Platinum itself could not attract directly." Id. ¶ 48.[2]

In 2013, SHIP was introduced to Beechwood Re, and in 2014
and 2015, SHIP's CEO and CFO met with Feuer, Taylor, and Levy to
discuss SHIP's investment challenges. Id. ¶ 45. Feuer, Taylor,
and Levy advised that Beechwood Re would not be able to provide
reinsurance to SHIP, but that Beechwood Re could provide SHIP
with access to the same investments that Beechwood Re used for
policies that it reinsured. Id. Over the course of several
meetings and presentations, defendants pitched SHIP on
Beechwood's record of outperformance and conservative investment

_____

[2] Over the past several years, Huberfeld, Nordlicht, Levy, and
others have been subject to criminal and SEC prosecution for
activity relating to Platinum. See Compl. ¶ 16. Huberfeld pled
guilty to conspiracy to commit wire fraud by bribing a union
leader to invest millions of dollars in Platinum. See United
States v. Seabrook et al., 16-cr-467 (S.D.N.Y.), ECF No. 203.
Nordlicht and Levy have been indicted for wire fraud, investment
advisor fraud, and securities fraud, arising, inter alia, out of
an alleged scheme to defraud Platinum investors. United States
v. Nordlicht et al, 16-cr-640 (E.D.N.Y.), ECF No. 1. Of note,
the indictment alleges that Nordlicht and Levy "devised a scheme
to use the significant liquid assets held by Beechwood . . . to
address [Platinum's] liquidity problems, which included
[Platinum's] inability to timely satisfy redemptions by
[Platinum's] investors." Id. ¶ 54.

3

strategy. They "recommended a strategy of investing in assets that were highly collateralized and well protected," and they "represented to SHIP that the investments were over-secured by collateral that Beechwood could seize in the event that a loan or other investment was not repaid, which would enable Beechwood to recover the value of any investment." Id. ¶ 70.

'In 2014 and 2015, SHIP invested $270 million through three Investment Management Agreements (IMAs), one with defendant Beechwood Re, id. ¶ 98, one with defendant Beechwood Bermuda International, Ltd. ("BBIL"), id. ¶ 82, and one with defendants B Asset Manager, LP ("BAM") and Beechwood Re Investors, LLC ("BRILLC"), id. ¶¶ 114, 118. Each of these IMAs had the same basic structure: the IMAs guaranteed SHIP a 5.85% annual return, with the defendants required to make up any shortfall. Id. ¶¶ 86, 102, 118. Any returns in excess of 5.85% would go to defendants as a performance fee. Id. ¶¶ 88, 104, 119.

Rather than investing in highly collateralized credit instruments, defendants almost immediately began moving SHIP's assets through a series of complicated transactions that ultimately served to enrich Platinum and Beechwood. Two weeks after SHIP made its investment with BAM, for example, BAM used SHIP funds to acquire an unsecured $35,500,000 note issued by an entity owned by one of Platinum's funds. Id. ¶ 141. Although the

4

note purchase agreement had a collateralization requirement, this requirement was deferred nine times in three months, and when collateral was ultimately posted, it was a small amount that "simultaneously served as collateral for the debt to be collected under two other defaulted investments in which Beechwood had invested SHIP policy reserves." Id. ¶ 144.

The complaint describes several similar transactions that funded Platinum and Beechwood at SHIP's expense. In February 2015, BBIL wired BRILLC $50 million of SHIP assets to fund a 6% note, but to date BRILLC has repaid neither interest nor principal. Id. ¶¶ 157, 160, 162. And between 2015 and 2016, defendants used SHIP's assets to buy themselves out of a risky loan to an energy company. Id. ¶ 146. In doing so, defendants — particularly defendant Dhruv Narain,[3] who was then BAM's CIO — also renegotiated the loan to subordinate SHIP's interest to that of other Beechwood entities. Id. ¶¶ 151-53. Finally, the most egregious example — also allegedly orchestrated by Narain — involved a complicated series of transactions in which SHIP was

---

[3] Narain formed defendant Illumin Capital Management, LP ("Illumin") in January 2017. Id. ¶ 194. According to the complaint, Narain "moved the remaining Beechwood investment management, operations, and administrative team to Illumin," and "Illumin effectively served as an alter ego to Beechwood." Id. The complaint offers little additional information about Illumin.

5

made to repeatedly resell itself an interest in a convertible note that one Platinum entity held in another Platinum entity. Id. ¶¶ 166-90. The result is that SHIP now has $70 million tied up in an illiquid investment of questionable value. Id. ¶ 195.

While defendants were using SHIP's assets to fund themselves, they were also paying themselves tens of millions of dollars of performance fees out of SHIP's accounts. Id. ¶¶ 89, 105, 121. SHIP alleges that defendants justified these fees by falsely overstating the value of SHIP's assets under management. Id. ¶ 132. In particular, defendants paid advisors and consultants to submit "reports that contained inflated, and in some cases entirely falsified, valuations that purported to show that the Platinum-related investments were performing well." Id. As a specific example, SHIP points to an April 9, 2015 Duff & Phelps report that Elliot Feit at Beechwood emailed SHIP's then-CFO on April 20, 2015. Id. ¶ 136; ECF No. 63, Ex. G. SHIP alleges that this report significantly overstated the value of certain Platinum-related assets that Beechwood had purchased with SHIP funds. Compl. ¶ 136.

On July 25, 2016, the Wall Street Journal published an article about Beechwood's ties to Platinum. Id. ¶ 197. This was the first time that SHIP became aware of the connection, and Beechwood sent a letter the next day to SHIP's CEO, in which

6

Beechwood reassured SHIP there was "no reason to believe that
either Beechwood or any of [SHIP's] related portfolios suffered
financial harm" from investments involving Platinum. Id. ¶ 198.
Beechwood "continued to tout its 'appropriate risk management'
and 'strong safeguards' for SHIP's investments," and it
"represented to SHIP that it was in the process of, and was
capable of, severing all ties with Platinum." Id. Beechwood
continued to withdraw millions in fees from SHIP's accounts. Id.
¶ 199.

Around November 2016, Beechwood proposed terminating SHIP's
IMAs, but SHIP refused, instead requiring Beechwood to transfer
assets out of the IMA accounts and into SHIP's custodial
accounts. Id. ¶¶ 201-02. SHIP also revoked Beechwood's authority
to act without SHIP's express permission. Id. ¶ 202. Over the
following months, SHIP "gradually began to uncover
misrepresentations and omissions by Beechwood and the pervasive
cover-up of Beechwood's . . . investment of SHIP assets and its
favoring of its own interests and those of its affiliates over
the interests of its client." Id. ¶ 203. SHIP alleges that
"Beechwood's cooperation and release of information to assist
SHIP's damage-control efforts has been, and remains,
intermittent and incomplete." Id.

On July 24, 2018, SHIP filed a 13-count complaint against Beechwood Re, BAM, BBIL, BRILLC, and Illumin (together, the "Beechwood Advisors"); Feuer, Taylor, Levy, and Narain (together, the "Individual Defendants"); and John Does 1-10, who "are unnamed and unknown individuals or entities who directly or indirectly acted in furtherance of and benefited from Beechwood's scheme." Id. ¶ 35. The complaint alleges breach of contract as to Beechwood Re, BBIL, BAM, and BRILLC, as well as the following non-contract claims: (1) breach of fiduciary duty; (2) fraudulent inducement; (3) fraud; (4) constructive fraud; (5) violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"); (6) civil conspiracy; (7) gross negligence; and (8) unjust enrichment. Each of the non-contract claims is brought against both the Beechwood Advisors and the Individual Defendants. The civil conspiracy and unjust enrichment claims are brought against John Does 1-10 as well.

All named defendants except for Levy move to dismiss SHIP's non-contract claims. ECF No. 61. Defendants also seek to either dismiss or strike SHIP's claims for punitive damages.

## Analysis

### I. Standard of Review

In order to survive a motion to dismiss, a plaintiff must "state a claim to relief that is plausible on its face."

8

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).[4] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. When adjudicating a motion to dismiss, the Court "accept[s] all factual allegations in the complaint and draw[s] all reasonable inferences in the plaintiff's favor." ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007).

## II. Breach of Fiduciary Duty

Under here applicable New York law, the elements of a breach of fiduciary duty claim are "(1) that a fiduciary duty existed between plaintiff and defendant, (2) that defendant breached that duty, and (3) damages as a result of the breach." Meisel v. Grunberg, 651 F. Supp. 2d 98, 114 (S.D.N.Y. 2009). Where, however, a valid contract governs the dispute between the parties, "[a] cause of action for breach of fiduciary duty which is merely duplicative of a breach of contract claim cannot stand." William Kaufman Org., Ltd. v. Graham & James LLP, 703 N.Y.S.2d 439, 442 (1st Dep't 2000).

---

[4] Unless otherwise indicated, in quoting cases, all internal quotation marks, alterations, footnotes, and citations are omitted.

9

Defendants argue that "SHIP has not alleged any facts apart from the terms of the IMAs to support its breach of fiduciary duty claims against the Beechwood companies." Memorandum of Law in Support of the Partial Motion to Dismiss by Defendants Beechwood Re (in Controllership) s/h/a Beechwood Re Ltd., B Asset Manager, L.P., Beechwood Bermuda International Ltd., Beechwood Re Investments, LLC, Illumin Capital Management, LP, Mark Feuer, Scott Taylor, and Dhruv Narain 11 ("MTD"), ECF No. 62. "To the contrary," defendants contend, "each of [SHIP's] fiduciary allegations references the terms of the IMAs or SHIP's Investment Policies incorporated therein," and should therefore be dismissed as duplicative. Id.

Furthermore, defendants argue, SHIP has not stated a claim for breach of fiduciary duty against any of the Individual Defendants. Id. Defendants argue that "SHIP's complaint rests simply on the individual Defendants' corporate positions," id., and has therefore "failed to indicate that there was anything about [each Individual Defendant's] role as a corporate official that created a personal relationship of trust and confidence," Krys v. Butt, 486 F. App'x 153, 156 (2d Cir. 2012).

Beginning with defendants' argument that SHIP's claims are duplicative, it is true that "causes of action for breach of fiduciary duty that merely restate contract claims must be

10

dismissed." Bullmore v. Ernst & Young Cayman Islands, 846
N.Y.S.2d 145, 148 (1st Dep't 2007). However, "conduct amounting
to breach of a contractual obligation may also constitute the
breach of a duty arising out of the relationship created by
contract which is nonetheless independent of such contract." Id.
In particular, New York courts have held that, where a
"defendant had discretionary authority to manage [plaintiff's]
investment accounts, it owed [plaintiff] a fiduciary duty of the
highest good faith and fair dealing." Assured Guar. (UK) Ltd. v.
J.P. Morgan Inv. Mgmt. Inc., 915 N.Y.S.2d 7, 16 (1st Dep't
2010), aff'd, 962 N.E.2d 765 (N.Y. 2011); see Snyder v. Wells
Fargo Bank, N.A., 594 F. App'x 710, 712 (2d Cir. 2014) ("The
contract at issue, an investment management agreement, afforded
[defendant] considerable discretion with respect to
[plaintiff's] portfolio. This gave rise to a duty of
care . . . .").

Here SHIP has alleged that the "investment management
agreement[s] afforded [defendants] considerable discretion with
respect to [SHIP's] portfolio." Snyder, 594 F. App'x at 712; see
Compl. ¶ 81 ("Each of the IMAs granted Beechwood discretion over
the specific investments made."); id. ¶ 147 ("BAM exercised its
complete discretion under the IMA . . . ."). As such, defendants

11

"owed [SHIP] a fiduciary duty of the highest good faith and fair dealing." Assured Guar. (UK) Ltd., 915 N.Y.S.2d at 16.

Moreover, SHIP's breach of fiduciary duty claim does not "merely restate contract claims." Bullmore, 846 N.Y.S.2d at 148. The thrust of SHIP's contract claims is that defendants guaranteed a 5.85% return and then failed to deliver on the guarantee. Compl. ¶¶ 212-13, 224-25, 236-37. In addition, SHIP alleges that defendants breached a promise "to manage SHIP's assets in a manner 'consistent with the general investment policy, guidelines and restrictions' of [defendants] and SHIP." Id. ¶¶ 214, 226, 238.

SHIP's breach of fiduciary duty claim, by contrast, arises out of allegations "that Defendants did not reveal the true, self-interested nature of their scheme, deliberately withheld 'access to full and accurate information about the nature and performance of the investments,' and improperly invested SHIP's funds." SHIP's Opposition to Defendants' Partial Motion to Dismiss 15 ("Opp."), ECF No. 66. Specifically, SHIP alleges that its assets were used to acquire "investments tied to Platinum that were purposely structured by Beechwood, the Individual Defendants, and the co-conspirators to enrich themselves and their related parties at the expense of investors like SHIP." Compl. ¶ 130. Furthermore, SHIP alleges that "Beechwood's paid advisors and consultants submitted reports that contained inflated, and in some cases entirely

12

falsified, valuations that purported to show that the Platinum-related investments were performing well and that SHIP's investments were sound." Id. ¶ 132. These claims, far from duplicating assertions of unmet returns and risky investing, describe an independent pattern of self-enrichment and deceit.

Moving to whether SHIP has stated a claim for breach of fiduciary duty against any of the Individual Defendants, this Court has held that, "[i]n determining whether a fiduciary duty exists, the focus is on whether one person has reposed trust or confidence in another and whether the second person accepts the trust and confidence and thereby gains a resulting superiority or influence over the first." Indep. Asset Mgmt. LLC v. Zanger, 538 F. Supp. 2d 704, 709 (S.D.N.Y. 2008). Furthermore, the New York Court of Appeals has stated that "[a]ny one who knowingly participates with a fiduciary in a breach of trust is liable for the full amount of the damage caused thereby." Wechsler v. Bowman, 34 N.E.2d 322, 326 (N.Y. 1941); see Talansky v. Schulman, 770 N.Y.S.2d 48, 53 (1st Dep't 2003) ("This includes an officer of a corporation who knowingly participates in a breach of the corporation's fiduciary duties.").

As the discussion in the following section makes clear, SHIP has adequately alleged that Taylor, Feuer, and Levy personally induced SHIP to invest with Beechwood. This is enough

13

to establish that these defendants "knowingly participate[d] in a breach of [Beechwood's] fiduciary duties." Talansky, 770 N.Y.S.2d at 53. The complaint is less clear with respect to Narain. Although SHIP does allege that Narain managed SHIP's assets as CIO of BAM, it does not "indicate that there was anything about [Narain's] role as a corporate official that created a personal relationship of trust and confidence." Krys, 486 F. App'x at 156.

Given these considerations, the Court holds that SHIP has adequately pled breach of fiduciary duty as to the Beechwood defendants and Taylor, Feuer, and Levy, but it has failed to state such a claim against Narain. The Court will grant Narain's motion to dismiss without prejudice, however, as SHIP may be able to amend its complaint (on the schedule set below) to allege that it had "a personal relationship of trust and confidence" with Narain.[5]

---

[5] Defendants also argue that SHIP has failed to state a claim for breach of fiduciary duty against Illumin because "SHIP's complaint does not mention Illumin at all in this count, much less identify any alleged duty owed by Illumin to SHIP or how such duty was supposedly breached." MTD 10. SHIP does not contest this argument, and the Court does not see any ground on which it could. As such, SHIP's breach of fiduciary duty claim against Illumin is dismissed with prejudice.

14

## III. **Fraudulent Inducement**

To state a claim for fraudulent inducement, a plaintiff
"must allege a misrepresentation or material omission on which
[it] relied that induced [it] to enter into an agreement."
Barron Partners, LP v. LAB123, Inc., 593 F. Supp. 2d 667, 670
(S.D.N.Y. 2009). A fraudulent inducement claim is subject to the
heightened pleading standards of Rule 9(b) of the Federal Rules
of Civil Procedure, which require a plaintiff to "(1) specify
the statements that the plaintiff contends were fraudulent, (2)
identify the speaker, (3) state where and when the statements
were made, and (4) explain why the statements were fraudulent."
Lerner v. Fleet Bank, N.A., 459 F.3d 273, 290 (2d Cir. 2006).
"In cases where the alleged fraud consists of an omission and
the plaintiff is unable to specify the time and place because no
act occurred, the complaint must still allege: (1) what the
omissions were; (2) the person responsible for the failure to
disclose; (3) the context of the omissions and the manner in
which they misled the plaintiff, and (4) what defendant obtained
through the fraud." Odyssey Re (London) Ltd. v. Stirling Cooke
Brown Holdings Ltd., 85 F. Supp. 2d 282, 293 (S.D.N.Y. 2000).

As relevant here, SHIP alleges the following: First, on
April 10, 2014, Taylor emailed SHIP's CEO, copying Levy and
Feuer, with "documents that provided information concerning

15

Beechwood's purported 'asset management capabilities, strategies, and platform' and advised that Beechwood's 'focus for SHIP will be in the Asset Backed Senior Secured Credit class of investments.'" Compl. ¶ 57. In the email, Taylor wrote that "those classes of investments [are] 'where we [Beechwood] are particularly strong, and can provide you [SHIP] some superior yield on a risk adjusted basis.'" Id. The email also included a "Discussion Document" that indicated that "Beechwood: (a) employs a '[c]redit-focused investment strategy which focuses on capital preservation'; (b) seeks '[s]uperior adjusted returns'; (c) has a '[s]trong culture of risk management and transparency'; and (d) uses '[b]est in class third party vendors.'" Id. ¶ 58.

Next, on May 13, 2014, SHIP alleges that "Feuer attended a SHIP Board meeting . . . and presented information on Beechwood, its experience in managing insurance business, and its plans for reinsuring blocks of long-term care business." Id. ¶ 65. SHIP alleges that "[t]he presentation discussed Beechwood's strategy as an investment manager, but did not review any specific investments or assets under management by Beechwood." Id.

Finally, in the months prior to the execution of the IMAs, SHIP alleges that "Levy led an oral and written presentation to SHIP officials . . . at Beechwood's New York office." Id. ¶ 66.

16

SHIP alleges that "Levy reiterated Beechwood's consistent themes of strong security and collateralization, conservative approach, and a guaranteed return for SHIP." Id.

SHIP alleges that defendants' affirmative representations about Beechwood's investment strategy were fraudulent because "they did not reflect Beechwood's true investment approach and scheme and did not account for the fact that Beechwood intended to and would use SHIP's assets to favor Beechwood, Platinum, and their related parties and affiliates." Id. ¶ 63. In addition, SHIP alleges that defendants' omissions were fraudulent because they "hid the reality that Beechwood intended, in essence, to convert SHIP's assets to the uses of Platinum and the individuals controlling Beechwood and Platinum in a manner fundamentally inconsistent with the safe and conservative portfolio they promised would result in a guaranteed return." Id. ¶ 73. Finally, SHIP alleges that, "[b]ased upon and in reliance on Defendants' false and misleading representations and the fraudulent or grossly negligent omission or concealment of material information, SHIP entered into the IMAs to its detriment." Id. ¶ 79.

Defendants respond with several arguments. As a preliminary matter, defendants argue that the fraudulent inducement claim should be dismissed as to Narain and Illumin because neither was

17

employed by Beechwood at the time the IMAs were executed. MTD
12. SHIP does not dispute this point, see Transcript dated
November 13, 2018 at 33:5-7, and the Court will therefore
dismiss the claim against Narain and Illumin with prejudice.

With respect to the remaining allegations, defendants argue
that SHIP has failed to plead any actionable statements or
omissions. MTD 12-16. Defendants argue, for example, that they
had no "affirmative duty to disclose . . . information to the
plaintiff," id. at 13, and they contend that SHIP has failed to
allege any omissions or misstatements with the specificity
required by Rule 9(b), id. at 13, 16-17. Defendants also argue
that SHIP's alleged misstatements or omissions are inactionable
because they relate to future performance or otherwise
constitute puffery. Id. at 13-14, 15-16. In addition, defendants
claim that SHIP has not alleged reasonable reliance, because
SHIP had an obligation as an accredited investor to conduct due
diligence, and because the IMAs contained provisions regarding
the risks of SHIP's investments. Id. at 14-15, 17-18.

Beginning with the argument that defendants had no
"affirmative duty to disclose . . . information to the
plaintiff," id. at 13, defendants overlook the "special facts
doctrine," which provides that a duty to disclose arises if "one
party possesses superior knowledge, not readily available to the

18

other, and knows that the other is acting on the basis of mistaken knowledge," Aetna Cas. & Sur. Co. v. Aniero Concrete Co., 404 F.3d 566, 582 (2d Cir. 2005). Here SHIP alleges that defendants intended from the outset "to lure institutional investors, such as insurers, into entrusting their funds to a seemingly legitimate, independent insurance company." Compl. ¶ 49. The creation of such a deceptive scheme clearly satisfies the requirements of the special facts doctrine, and thereby imposes a duty to disclose.

As for defendants' argument that SHIP has failed to meet Rule 9(b)'s heightened pleading requirements, the three allegations above are more than specific enough to ground a fraudulent inducement claim. SHIP alleges that Taylor falsely represented in his April 10 email "that Beechwood's 'focus for SHIP will be in the Asset Backed Senior Secured Credit class of investments,'" Compl. ¶ 57, and that Beechwood "employs a '[c]redit-focused investment strategy which focuses on capital preservation,'" Id. ¶ 58. SHIP also alleges that Levy, during his oral presentation in the months prior to the execution of the IMAs, falsely "reiterated Beechwood's consistent themes of strong security and collateralization, conservative approach, and a guaranteed return for SHIP." Id. ¶ 66. And SHIP alleges that Feuer, during his May 13 board meeting, "discussed

19

Beechwood's strategy as an investment manager, but did not review any specific investments or assets under management by Beechwood," id. ¶ 65, thereby falsely omitting defendants' true intention to "convert SHIP's assets to the uses of Platinum and the individuals controlling Beechwood and Platinum," id. ¶ 73. These allegations are specific, and they "give rise to a strong inference of fraudulent intent." Shields v. Citytrust Bancorp, Inc., 25 F.3d 1124, 1128 (2d Cir. 1994).

Defendants are also wrong to argue that their alleged statements and omissions are inactionable as puffery or forward-looking promises. While it is true that "a mere promissory statement as to what will be done in the future does not constitute a material misrepresentation of fact, a promise made with a preconceived and undisclosed intention of not performing it does." Spinelli v. Nat'l Football League, 903 F.3d 185, 210 (2d Cir. 2018). SHIP alleges that defendants never intended to manage SHIP's assets as represented, but that they planned all along to divert SHIP's funds to the benefit of Platinum and themselves. This allegation is supported by numerous factual assertions in the complaint, such as that defendants funneled over $35 million of SHIP's assets to a Platinum-owned fund only two weeks after the BAM IMA was executed. Compl. ¶ 141. To the extent that defendants misrepresented their present intention to

20

misappropriate SHIP's assets, they engaged in actionable fraudulent inducement.

Finally, defendants are incorrect that SHIP failed to allege reasonable reliance because of SHIP's accredited investor status, or because the IMAs expressly warned about the risky nature of the investments. MTD 17. The gravamen of SHIP's fraudulent inducement allegation is not that defendants engaged in riskier investments than they had promised SHIP. It is that defendants intended from the outset to use SHIP's assets to enrich themselves and their affiliates. By relying on defendants' representations that their business was legitimate, SHIP acted reasonably.

For the foregoing reasons, SHIP has stated a claim for fraudulent inducement (except, as discussed above, against Narain and Illumin).

## IV. Fraud

The elements of fraud are similar to those of fraudulent inducement. See Kaufman v. Cohen, 760 N.Y.S.2d 157, 165 (1st Dep't 2003) ("To state a cause of action for fraud, a plaintiff must allege a representation of material fact, the falsity of the representation, knowledge by the party making the representation that it was false when made, justifiable reliance by the plaintiff and resulting injury."). The heightened pleading standards of Rule 9(b) are also the same.

21

SHIP alleges that, over the course of their relationship, "Defendants knowingly made numerous false representations of material fact to SHIP . . . with the intent of causing SHIP not to terminate the IMAs or any investments after they were executed or otherwise interfere with Defendants' scheme." Compl. ¶ 265. SHIP also alleges that defendants "omitted and concealed material information from SHIP," id. ¶ 266, and that "SHIP justifiably relied upon such misrepresentations and omissions or concealments to its detriment by investing, by continuing to invest, and by not terminating the IMAs or any investments after they were executed, and by not attempting to interfere with or influence Defendants' actions," id. ¶ 267.

Defendants argue – as they did in the context of SHIP's fraudulent inducement claim - that SHIP's fraud claim fails to meet Rule 9(b)'s pleading requirements. MTD 18. Furthermore, defendants argue, all of the alleged misstatements "relate to the Beechwood companies' investment of SHIP assets that, according to SHIP, were entrusted to the Beechwood companies through and related to the IMAs." Id. at 19. Accordingly, defendants conclude, "SHIP's entire fraud claim is legally deficient since it is duplicative of its breach of contract claims." Id.

Beginning with the argument that SHIP's fraud claim is duplicative, this argument parallels, in some respects, defendants' argument about the fiduciary duty claim discussed above. It is true that "[a] fraud claim should be dismissed as redundant when it merely restates a breach of contract claim, i.e., when the only fraud alleged is that the defendant was not sincere when it promised to perform under the contract." First Bank of Americas v. Motor Car Funding, Inc., 690 N.Y.S.2d 17, 20-21 (1st Dep't 1999). However, "a cause of action for fraud may be maintained where a plaintiff pleads a breach of duty separate from, or in addition to, a breach of the contract." Id. at 21. For example, "[u]nlike a misrepresentation of future intent to perform, a misrepresentation of present facts is collateral to the contract . . . and therefore involves a separate breach of duty." Id.

SHIP alleges several "misrepresentation[s] of present facts" that could qualify as independently actionable frauds. Two of these meet the pleading requirements of Rule 9(b): First, SHIP alleges that Beechwood used reports with inflated valuations to extract unearned performance fees from SHIP's accounts, and it cites as an example an April 9, 2015 Duff & Phelps Report that Elliot Feit at Beechwood emailed to SHIP's then-CFO on April 20, 2015. Compl. ¶ 136; ECF No. 63, Ex. G.

23

Second, SHIP alleges that, after the news broke about Platinum's connections with Beechwood, Beechwood sent a letter to SHIP's CEO on July 26, 2016 representing that there was "no reason to believe that either Beechwood or any of [SHIP's] related portfolios suffered financial harm," that Beechwood "continued to tout its 'appropriate risk management' and 'strong safeguards' for SHIP's investments," and that Beechwood "was in the process of, and was capable of, severing all ties with Platinum." Compl. ¶ 198.

While these misrepresentations are pled with specificity, however, SHIP has not adequately alleged reliance and injury. In the case of the Duff & Phelps Report, SHIP does not explain how the allegedly inflated valuations translated into unearned performance fees. Pleading such a connection should be straightforward. Under the IMAs, defendants guaranteed SHIP a 5.85% annual return, and defendants kept any excess return as performance fees. Id. ¶¶ 88, 104, 119. If defendants falsely overstated SHIP's returns (e.g., by misrepresenting that SHIP's funds had earned a 6.85% return in a given year), and if SHIP relied on this misrepresentation in paying defendants an (e.g., 1%) unearned performance fee, then SHIP should not have difficulty pleading the elements of fraud.

Similarly, while SHIP alleges with specificity that
Beechwood made various misrepresentations in its July 26 letter,
SHIP does not explain how it relied on these communications, or
how it was injured by that reliance. Even if it is true that
Beechwood misrepresented the nature of its ties to Platinum, or
its ability to sever those ties, SHIP does not allege that it
would have acted differently if Beechwood had told the truth.

For these reasons, the Court holds that SHIP has failed to
state a claim for fraud. However, the Court will grant
defendants' motion to dismiss without prejudice, as SHIP may be
able to amend its complaint (on the schedule set below) to
adequately plead reliance and injury with respect to the
misrepresentations above, or to satisfy Rule 9(b)'s pleading
requirements with respect to other misrepresentations that are
"collateral to the [IMAs] . . . and therefore involve[] a
separate breach of duty." First Bank of Americas, 690 N.Y.S.2d
at 21.

## V.  Constructive Fraud

Under New York law, a "constructive fraud claim modifies
the claim for actual fraud by replacing the scienter requirement
with the requirement that Defendants maintained either a
fiduciary or confidential relationship with Plaintiff." LBBW
Luxemburg S.A. v. Wells Fargo Sec. LLC, 10 F. Supp. 3d 504, 524

25

(S.D.N.Y. 2014); see Brown v. Lockwood, 432 N.Y.S.2d 186, 193-94 (2nd Dep't 1980) ("The elements of a cause of action to recover for constructive fraud are the same as those to recover for actual fraud with the crucial exception that the element of scienter upon the part of the defendant, his knowledge of the falsity of his representation, is dropped and is replaced by a requirement that the plaintiff prove the existence of a fiduciary or confidential relationship . . . .").

SHIP's constructive fraud claim is more or less duplicative of its actual fraud claim. Compare Compl. ¶ 265 ("During as well as before performance under the IMAs or in connection with any investment, Defendants knowingly made numerous false representations of material fact to SHIP, as detailed in this Complaint, with the intent of causing SHIP not to terminate the IMAs or any investments after they were executed or otherwise interfere with Defendants' scheme."), with id. ¶ 273 ("During as well as before performance under the IMAs, Defendants made numerous false representations of material fact to SHIP, as detailed in this Complaint, with the intent of causing SHIP not to terminate the IMAs or any investments after they were executed and to continue investing through Beechwood."). The distinction between the two claims – that one alleges knowledge as to falsity, while the other does not – would become relevant

26

only if the Court had held that SHIP's actual fraud claim was deficient for failure to plead scienter.

As discussed above, however, SHIP's actual fraud claim is deficient for its failure to plead reliance and injury. These defects apply equally to SHIP's constructive fraud claim. Underlying the Court's analysis is the issue of whether constructive fraud claims are subject to Rule 9(b)'s heightened pleading requirements. Courts in the Second Circuit appear to be divided on this question. See Marketxt Holdings Corp. v. Engel & Reiman, P.C., 693 F. Supp. 2d 387, 397 n.75 (S.D.N.Y. 2010) (speculating that this disagreement "may be attributed to problems of language," and that constructive fraud claims like the one presented here are subject to Rule 9(b)'s requirements, while "constructive fraudulent transfer claims" are not). Given that one of the core purposes of Rule 9(b) is "to provide a defendant with fair notice of a plaintiff's claim," O'Brien v. Nat'l Prop. Analysts Partners, 936 F.2d 674, 676 (2d Cir. 1991), this Court holds at a minimum that misstatements and omissions in a constructive fraud claim must be pled with the same specificity as those in an actual fraud claim. The Court will therefore grant defendants' motion to dismiss SHIP's constructive fraud claim, without prejudice to re-pleading on the schedule set below.

27

## VI. Violations of RICO

SHIP alleges RICO violations under 18 U.S.C. §§ 1962(c), 1962(a), 1962(d). Section 1962(c) makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." Section 1962(a) makes it "unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity . . . to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce." And section 1962(d) makes it "unlawful for any person to conspire to violate," inter alia, sections 1962(c) and 1962(a).

To plead a RICO violation, a plaintiff must allege that the defendant engaged in at least two predicate acts of "racketeering activity," where "racketeering activity" is defined to include a host of state and federal offenses. 18 U.S.C. §§ 1961(1),(5). In the instant action, SHIP alleges that defendants engaged in the predicate acts of mail and wire fraud

28

under sections 1341 and 1343 of title 18, based on the fraudulent conduct described above. Compl. ¶ 289.

In addition to alleging two predicate acts, a RICO plaintiff must plead continuity to establish that the racketeering activity constitutes a "pattern." Continuity, in turn, "is both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." H.J. Inc. v. Nw. Bell Tel. Co., 492 U.S. 229, 241 (1989). Where, as here, the pattern is closed-ended, the Second Circuit has held that "predicate acts occurring over less than a two-year period may not be deemed a pattern." First Capital Asset Mgmt., Inc. v. Satinwood, Inc., 385 F.3d 159, 168 (2d Cir. 2004).

Given the Court's decision above to dismiss SHIP's fraud claim, the only conduct that would qualify as predicate acts are defendants' alleged acts of fraudulent inducement. However, these alleged acts did not occur over a two-year period, but instead took place during several months preceding the execution of the IMAs. At oral argument, counsel for SHIP acknowledged that the alleged acts of fraudulent inducement did not by themselves cover a sufficient time period to qualify as a "pattern" under RICO. See Transcript dated November 13, 2018 at

29

8:13, 9:5-7. Accordingly, the Court will grant defendants'
motion to dismiss SHIP's RICO claims, but - as in the case of
the fraud claim - it will do so without prejudice to re-pleading
on the schedule set below.

## VII. Civil Conspiracy

Under New York law, civil conspiracy is not an independent
tort. Instead, "[a]ll that an allegation of conspiracy can
accomplish is to connect nonactors, who otherwise might escape
liability, with the acts of their co-conspirators." Burns
Jackson Miller Summit & Spitzer v. Lindner, 452 N.Y.S.2d 80, 93-
94 (2nd Dep't 1982), aff'd, 451 N.E.2d 459 (N.Y. 1983). "Where
there is an underlying tort, the elements of civil conspiracy
are: (1) the corrupt agreement between two or more persons, (2)
an overt act, (3) their intentional participation in the
furtherance of a plan or purpose, and (4) the resulting damage."
Pope v. Rice, No. 04 Civ. 4171 (DLC), 2005 WL 613085, at *13
(S.D.N.Y. Mar. 14, 2005).

Given the Court's decision above to dismiss SHIP's fraud
claim, the only remaining torts that defendants could have
conspired to commit are fraudulent inducement and breach of
fiduciary duty. Furthermore, the only "nonactors" that a civil
conspiracy claim could connect to those torts are Narain and
Illumin, as the other defendants' motions to dismiss those

30

claims were denied. With respect to fraudulent inducement, SHIP cannot plead conspiracy against Narain or Illumin, because their involvement postdates the execution of the IMAs. As for breach of fiduciary duty, "all members of the alleged conspiracy must independently owe a fiduciary duty to the plaintiff." Marino v. Grupo Mundial Tenedora, S.A., 810 F. Supp. 2d 601, 611 (S.D.N.Y. 2011). Because SHIP has not plausibly alleged that Narain or Illumin owed SHIP a fiduciary duty (for the reasons discussed above), it has not plausibly alleged conspiracy to commit fiduciary duty against them either.

Accordingly, defendants' motion to dismiss SHIP's conspiracy claim is granted, with prejudice.[6]

## VIII. **Gross Negligence**

"Like ordinary negligence, gross negligence also involves the commission or omission of an act or duty owing by one to another. However, the act or omission must be of an aggravated character, as distinguished from the failure to exercise ordinary care. In other words, gross negligence is conduct that evinces a reckless disregard for the rights of others or smacks

---

[6] The claim is dismissed with prejudice as to Illumin for the reasons discussed above. It is dismissed with prejudice as to Narain because Narain will likely cease to be a "nonactor" if SHIP adequately pleads that Narain owed SHIP a fiduciary duty.

31

of intentional wrongdoing." Curley v. AMR Corp., 153 F.3d 5, 13 (2d Cir. 1998).

SHIP pleads gross negligence in the alternative to its fraud claim. Compl. ¶ 321. It alleges that "Defendants owed SHIP a duty to act with reasonable care in connection with managing SHIP's assets," and that "Defendants breached that duty of care by, among other things, making imprudent investments to benefit Platinum, failing to advise SHIP of the reasons for such investments, and improperly valuing such assets." Id. ¶¶ 322-23.

Defendants argue that SHIP's gross negligence claims are duplicative of its breach of contract claims and that "claims based on negligent or grossly negligent performance of a contract are not cognizable." MTD 9 (quoting Pacnet Network Ltd. v. KDDI Corp., 912 N.Y.S.2d 178, 180 (1st Dep't 2010)). SHIP responds that "an investment advisor[] 'may be subject to tort liability for failure to exercise reasonable care, irrespective of their contractual duties,'" Opp. 22 (quoting Bullmore, 846 N.Y.S.2d at 148), and it argues that "Defendants owed SHIP a duty independent of any contractual obligations to act with reasonable care as investment professionals in connection with managing SHIP's assets," id.

For reasons substantially similar to those discussed in the context of SHIP's breach of fiduciary duty claim, the Court

32

holds that SHIP has plausibly alleged that defendants – with the
exception of Narain and Illumin – owed SHIP a duty that was
independent of defendants' obligations under the IMAs.
Furthermore, the Court has no difficulty concluding that SHIP
has alleged "conduct that evinces a reckless disregard for the
rights of others or smacks of intentional wrongdoing." Curley,
153 F.3d at 13. Accordingly, SHIP's gross negligence claim is
dismissed only as to Narain and Illumin. As above, the claim
against Narain is dismissed without prejudice to re-pleading on
the schedule set below, and the claim against Illumin is
dismissed with prejudice. Defendants' motion to dismiss is
otherwise denied.

## IX.  Unjust Enrichment

In addition to pleading gross negligence in the alternative
to its fraud claim, SHIP pleads unjust enrichment in the
alternative to its breach of contract claims. SHIP alleges that
defendants "were unjustly enriched, at SHIP's expense, when
[they] received and enjoyed the use of SHIP's invested assets as
well as when they collected Performance Fees in connection with
investments that did not comply with SHIP's investment
guidelines and had not in truth earned the requisite return to
merit Performance Fees." Compl. ¶ 330.

To state a claim for unjust enrichment under New York law, a plaintiff must allege that "(1) defendant was enriched, (2) at plaintiff's expense, and (3) equity and good conscience militate against permitting defendant to retain what plaintiff is seeking to recover." Briarpatch Ltd., L.P v. Phoenix Pictures, Inc., 373 F.3d 296, 306 (2d Cir. 2004). Relief for unjust enrichment is "available only in unusual situations when, though the defendant has not breached a contract nor committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff." Corsello v. Verizon New York, Inc., 967 N.E.2d 1177, 1185 (N.Y. 2012). Accordingly, "[a]n unjust enrichment claim is not available where it simply duplicates, or replaces, a conventional contract or tort claim." Id.

Defendants argue that SHIP cannot plead unjust enrichment in the alternative "when, as is the case here, an express agreement (i.e., the IMAs) governs the plaintiff's claim." MTD 9. Defendants also contend that SHIP has violated "the group pleading doctrine as it refers generally to 'Defendants' receiving and enjoying the use of SHIP's assets, but fails to explain how any specific Defendant, particularly the individual Defendants, received or utilized SHIP's assets." Id.

SHIP responds that "Rule 8(d) permits the pleading of alternative and even inconsistent theories," Opp. 23, and that

34

"[a] court may allow a breach of contract and an unjust enrichment claim to proceed past the motion to dismiss stage when the validity or scope of the contract is difficult to determine," id. (quoting Nat'l Convention Servs., L.L.C. v. Applied Underwriters Captive Risk Assurance Co., Inc., 239 F. Supp. 3d 761, 795 (S.D.N.Y. 2017)). SHIP also argues that its "unjust enrichment claim reaches not only the IMA counterparties but all Defendants, including the Individual Defendants," and that "[a]ny Defendant who financially benefited, directly or indirectly, from the scheme has been unjustly enriched." Id. at 23-24.

Although SHIP is correct that plaintiffs may plead unjust enrichment in the alternative where "the validity or scope of the contract is difficult to determine," Nat'l Convention Servs., L.L.C., 239 F. Supp. 3d at 795, there is no indication in the instant case that the parties dispute the validity or scope of the IMAs. SHIP argues in its opposition brief that its unjust enrichment claim is grounded both in the IMAs and in "$50 million invested outside the IMAs," Opp. 23, but it did not make this allegation in its complaint. Furthermore, while SHIP alleges throughout its complaint that the Individual Defendants were enriched, see, e.g., Compl. ¶¶ 96, 112, 127, 130, these

35

allegations are entirely conclusory, and they are therefore "not entitled to be assumed true." Iqbal, 556 U.S. at 681.

Accordingly, the Court grants defendants' motion to dismiss SHIP's unjust enrichment claim. However, the claim is dismissed without prejudice, as SHIP may be able to amend its complaint (on the schedule set below) to plead unjust enrichment based on funds invested outside of the IMAs or to plead in a nonconclusory fashion that the Individual Defendants were enriched.

## X. Punitive Damages

Punitive damages "are not intended to compensate the injured party but to punish the tort-feasor for his conduct and to deter him and others like him from similar action in the future" Sharapata v. Town of Islip, 437 N.E.2d 1104, 1105 (N.Y. 1982). Under New York law, punitive damages "may only be awarded for exceptional misconduct which transgresses mere negligence, as when the wrongdoer has acted maliciously, wantonly, or with a recklessness that betokens an improper motive or vindictiveness or has engaged in outrageous or oppressive intentional misconduct or with reckless or wanton disregard of safety or rights." Id. at 1106.

Defendants argue that "SHIP's claim for punitive damages . . . should be dismissed or stricken under Rules

36

12(b)(6) or 12(f)." MTD 24. They contend that "[p]unitive
damages are not recoverable for an ordinary breach of contract
as their purpose is not to remedy private wrongs but to
vindicate public rights." Id. (quoting Rocanova v. Equitable
Life Assur. Soc. of U.S., 634 N.E.2d 940, 943 (N.Y. 1994)).

Given the Court's determination above that SHIP has
plausibly alleged several tort claims – and given the Court's
assessment, more generally, that the alleged conduct can rightly
be described as "outrageous or oppressive," Sharapata, 437
N.E.2d at 1106 – defendants' motion is denied. Even if the
decision were less clear cut, the question of whether to award
punitive damages is "an intensely factual one," and is ill
suited for dismissal this early in the litigation. George v.
Ford Motor Co., No. 03 Civ. 7643 (GEL), 2007 WL 2398806, at *5
(S.D.N.Y. Aug. 17, 2007).

## Conclusion

In sum, defendants' partial motion to dismiss is granted in
part and denied in part. The motion is granted in the following
respects: As to Illumin, all claims are dismissed with
prejudice. As to Narain, all claims are dismissed without
prejudice, except for the fraudulent inducement and conspiracy
claims, which are dismissed with prejudice. As to the other
moving defendants (Beechwood Re, BAM, BBIL, BRILLC, Feuer, and

37

Taylor), the claims for fraud, constructive fraud, RICO violations, and unjust enrichment are dismissed without prejudice, and the civil conspiracy claim is dismissed with prejudice. Defendants' motion is denied in all other respects.

For those claims that the Court has dismissed without prejudice, SHIP is permitted to file an amended complaint, but it must do so by no later than December 14, 2018.

SO ORDERED.

Dated:   New York, NY,
          12/6/, 2018

          JED S. RAKOFF, U.S.D.J.