UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------- x
In re PLATINUM-BEECHWOOD LITIGATION :        18-cv-6658 (JSR)
---------------------------------- x
SENIOR HEALTH INSURANCE COMPANY OF  :
PENNSYLVANIA,                       :
                                    :
          Plaintiff,                :
                                    :
          -v-                       :        OPINION
                                    :
BEECHWOOD RE LTD., B ASSET MANAGER, :
L.P., BEECHWOOD BERMUDA             :
INTERNATIONAL LTD., BEECHWOOD RE    :        ┌─────────────────────────┐
INVESTMENTS, LLC a/k/a BEECHWOOD RE :        │ USDC SDNY               │
INVESTORS, LLC, MOSHE M. FEUER      :        │ DOCUMENT                │
a/k/a MARK FEUER, SCOTT A. TAYLOR,  :        │ ELECTRONICALLY FILED    │
DAVID I. LEVY, and DHRUV NARAIN,    :        │ DOC #:_____ │
                                    :        │ DATE FILED: 4/23/19     │
          Defendants.               :        └─────────────────────────┘
---------------------------------- x

JED S. RAKOFF, U.S.D.J.

     Before the Court is the motion of defendants Beechwood Re

Ltd. ("Beechwood Re"), B Asset Manager, L.P. ("BAM"), Beechwood

Bermuda International Ltd. ("BBIL"), Beechwood Re Investments,

LLC ("BRILLC"), Mark Feuer, Scott Taylor, and Dhruv Narain to

dismiss the Second Amended Complaint ("SAC") of plaintiff Senior

Health Insurance Company of Pennsylvania ("SHIP"). ECF No. 87.

After receiving full briefing from each side, the Court held

oral argument on March 1, 2019. In a "bottom-line" Order issued

on March 15, 2019, ECF No. 184, the Court granted defendants'

motion in the following respects:

- SHIP's claims for civil violations of the Racketeer
  Influenced and Corrupt Organizations Act ("RICO") were
  dismissed as to all defendants.
- SHIP's fraud and constructive fraud claims were
  dismissed only as to Narain.
- SHIP's unjust enrichment claim was dismissed only as
  to Narain, Beechwood Re, BAM, BBIL, and BRILLC.

The Court denied defendants' motion in all other respects.
This Opinion sets forth the reasons for the Court's rulings.

## Background

The relevant background to this case is largely set forth
in the Court's Opinion and Order on defendants' partial motion
to dismiss SHIP's Complaint. See ECF No. 72, at 2-8. There, the
Court dismissed all claims against Narain without prejudice,
except for SHIP's fraudulent inducement claim, which the Court
dismissed with prejudice. As to the other moving defendants
(Beechwood Re, BAM, BBIL, BRILLC, Feuer, and Taylor), the claims
for fraud, constructive fraud, RICO violations, and unjust
enrichment were dismissed without prejudice. In all other
respects, defendants' motion was denied.[1]

---

[1] As discussed below, the Court initially dismissed SHIP's
conspiracy claim against all defendants with prejudice. However,

2

SHIP subsequently filed the SAC, ECF No. 84, and defendants again filed a partial motion to dismiss, ECF No. 87. Defendants' motion can be divided into three categories. First, defendants move to dismiss claims that the Court dismissed without prejudice and that SHIP has reinstated in the SAC. These include SHIP's claims for breach of fiduciary duty, fraud, and gross negligence against Narain; SHIP's claim for constructive fraud against Feuer, Taylor, and Narain; and SHIP's claims for RICO and unjust enrichment against all defendants. Second, defendants move to dismiss claims that the Court previously declined to dismiss. These include SHIP's claims for breach of fiduciary duty and gross negligence against Feuer and Taylor. Third, defendants move to limit the allegations on which SHIP can rely in bringing its fraud and fraudulent inducement claims against Beechwood Re, BAM, BBIL, BRILLC, Feuer, and Taylor.

## Analysis

### I. Standard of Review

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to

---

the Court subsequently stated in its Order on SHIP's motion to amend its First Amended Complaint that it had now concluded that "SHIP had made out a basis for this claim in its prior complaint," and the Court therefore permitted SHIP to reinstate the claim against all defendants. ECF No. 83, at 4.

relief that is plausible on its face." Ashcroft v. Iqbal, 556
U.S. 662, 678 (2009).[2] "A claim has facial plausibility when the
plaintiff pleads factual content that allows the court to draw
the reasonable inference that the defendant is liable for the
misconduct alleged." Id. When adjudicating a motion to dismiss,
the Court "accept[s] all factual allegations in the complaint
and draw[s] all reasonable inferences in the plaintiff's favor."
ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d
Cir. 2007).

## II.  Claims That the Court Previously Declined to Dismiss

As noted, defendants move to dismiss certain claims that
the Court declined to dismiss when ruling on defendants' partial
motion to dismiss SHIP's original Complaint. Specifically,
defendants move to dismiss SHIP's claims for breach of fiduciary
duty and gross negligence against Feuer and Taylor. Memorandum
of Law in Support of Partial Motion to Dismiss the Second
Amended Complaint by Defendants Beechwood Re (in Official
Liquidation) s/h/a Beechwood Re Ltd., B Asset Manager, L.P.,
Beechwood Bermuda International Ltd., Beechwood Re Investments,
LLC, Mark Feuer, Scott Taylor, and Dhruv Narain 2 ("MTD"), ECF

---

[2] Unless otherwise indicated, in quoting cases all internal
quotation marks, alterations, emphases, footnotes, and citations
are omitted.

4

No. 88; see ECF No. 72, at 14 ("SHIP has adequately pled breach of fiduciary duty as to . . . Taylor[ and] Feuer . . . ."); id. at 33 ("SHIP's gross negligence claim is dismissed only as to Narain and Illumin.").

The Court will not entertain what is, in effect, an untimely motion for reconsideration. As SHIP explains in its opposition brief, any "request for reconsideration is untimely under Local Rule 6.3, which requires motions for such relief to be filed within 14 days of a ruling." SHIP's Opposition to Defendants' Partial Motion to Dismiss the Second Amended Complaint 2 ("Opp."), ECF No. 93. Moreover, defendants "have not identified any purported newly discovered facts, a change in controlling law, or clear error by the Court, as required to justify the relief Defendants request." Id. Accordingly, the Court denied defendants' motion to dismiss SHIP's claims for breach of fiduciary duty and gross negligence against Feuer and Taylor.

**III.  Limitations on the Allegations SHIP Can Use to Support Its Fraud and Fraudulent Inducement Claims**

In addition to seeking dismissal of the above claims, defendants purport to seek dismissal of SHIP's fraudulent inducement claim "against: (a) the Beechwood companies, except as to the representations/omission in SAC ¶¶ 69-70, 77-78, and

5

87; (b) Feuer, except as to the representation/omission in SAC ¶¶ 77 and 87; and (c) Taylor, except as to the representations/omission in SAC ¶¶ 69-70 and 87." MTD 1. Defendants also purport to seek dismissal of SHIP's fraud claim "against: (a) the Beechwood companies, except as to the representations in SAC ¶¶ 165-68, 172-74, 178-80, 265, and 270; (b) Feuer, except as to the representations in SAC ¶¶ 265 and 270; [and] (c) Taylor, except as to the representations in SAC ¶¶ 172-74 and 178-80." Id.

With respect to the fraudulent inducement claim, the Court concludes, as above, that defendants are impermissibly seeking reconsideration of its prior decision. ECF No. 72, at 21 ("SHIP has stated a claim for fraudulent inducement (except . . . against Narain and Illumin)."). And with respect to both the fraud and fraudulent inducement claims, the Court agrees with SHIP that defendants cannot limit SHIP "solely to allegations discussed in the Court's December 6 Order or illustrative examples in the SAC." Opp. 16. As SHIP explains, "Defendants' argument to place SHIP's claims in a factual straitjacket at the pleading stage, and well before completion of discovery, is unsupported by law and contrary to settled principles of civil litigation." Id. If, later in this litigation, SHIP tries to prove fraud based on misstatements or omissions that SHIP should

have referenced in the SAC, then defendants can make an appropriate motion at that time. Until then, the Court denies the motion to limit the allegations on which SHIP can rely.

## IV. Breach of Fiduciary Duty Claim Against Narain

Under here applicable New York law, "[t]he elements of a breach of fiduciary duty claim are (1) that a fiduciary duty existed between plaintiff and defendant, (2) that defendant breached that duty, and (3) damages as a result of the breach." Meisel v. Grunberg, 651 F. Supp. 2d 98, 114 (S.D.N.Y. 2009). "In determining whether a fiduciary duty exists, the focus is on whether one person has reposed trust or confidence in another and whether the second person accepts the trust and confidence and thereby gains a resulting superiority or influence over the first." Indep. Asset Mgmt. LLC v. Zanger, 538 F. Supp. 2d 704, 709 (S.D.N.Y. 2008). In particular, where a "defendant had discretionary authority to manage [a plaintiff's] investment accounts, it owed [the plaintiff] a fiduciary duty·of the highest good faith and fair dealing." Assured Guar. (UK) Ltd. v. J.P. Morgan Inv. Mgmt. Inc., 915 N.Y.S.2d 7, 16 (1st Dep't 2010), aff'd, 962 N.E.2d 765 (N.Y. 2011).

In its Opinion and Order on defendants' partial motion to dismiss SHIP's Complaint, the Court held that SHIP had failed to state a claim for breach of fiduciary duty against Narain

7

because "[a]lthough SHIP d[id] allege that Narain managed SHIP's assets as CIO of BAM, it d[id] not 'indicate that there was anything about [Narain's] role as a corporate official that created a personal relationship of trust and confidence.'" ECF No. 72, at 14 (quoting Krys v. Butt, 486 F. App'x 153, 156 (2d Cir. 2012)). The Court contrasted SHIP's allegations against Narain with its allegations against Taylor, Feuer, and Levy, who "personally induced SHIP to invest with Beechwood." Id. at 13.

Now, in the SAC, SHIP adds several allegations from which the Court may reasonably infer that Narain "created a personal relationship of trust and confidence" with SHIP. SHIP alleges, for example, that in May 2016, several months after Narain became CIO of BAM, "Narain and Feuer met with SHIP to personally solicit SHIP's participation in an investment outside of the IMAs." SAC ¶ 27. "During that meeting and afterwards," SHIP alleges, "Narain touted his personal expertise and experience as an investment advisor, particularly with respect to the energy sector and the particular entity (Agera Energy) in which Narain wanted SHIP to invest." Id. SHIP alleges that it "reasonably believed Narain's narrative and reposed substantial confidence and trust in him personally, relying on his asserted knowledge and skill in making additional investments through and with Beechwood." Id.

8

Further, SHIP alleges that Narain orchestrated a series of transactions in mid- to late 2016 in which Beechwood-related entities caused SHIP to repeatedly re-sell itself an interest in a convertible note that Agera had issued to another Platinum-owned entity, PGS. See id. ¶¶ 226-47. SHIP alleges that the prices at which it re-sold itself the note were "not supported by any third-party valuation of the Agera enterprise" and did not reflect its true value, but instead were "negotiated between Narain on Beechwood's behalf and related party Platinum based on the needs of Platinum for cash." Id. ¶ 230. Beechwood ultimately cashed out its own interest in Agera, but not SHIP's interest. Id. ¶ 262. As a result, SHIP alleges that it was left "with nearly $70 million of funds tied up in illiquid interests of questionable worth." Id.

These allegations are more than sufficient to establish – at least at the pleading stage - that Narain owed a fiduciary duty to SHIP and breached that duty through his role in the Agera scheme. Notwithstanding Narain's arguments to the contrary, see MTD 8-9, the Court can also reasonably infer that SHIP was damaged by Narain's breach, as the SAC alleges that Narain caused SHIP to overpay millions of dollars for an interest in Agera. For these reasons, the Court denied

defendants' motion to dismiss SHIP's breach of fiduciary duty claim as to Narain.

## V. Gross Negligence Against Narain

"Like ordinary negligence, gross negligence also involves the commission or omission of an act or duty owing by one to another. However, the act or omission must be of an aggravated character, as distinguished from the failure to exercise ordinary care. In other words, gross negligence is conduct that evinces a reckless disregard for the rights of others or smacks of intentional wrongdoing." Curley v. AMR Corp., 153 F.3d 5, 13 (2d Cir. 1998). Although "claims based on negligent or grossly negligent performance of a contract are not cognizable," Pacnet Network Ltd. v. KDDI Corp., 912 N.Y.S.2d 178, 180 (1st Dep't 2010), "[p]rofessionals such as investment advisors, who owe fiduciary duties to their clients, may be subject to tort liability for failure to exercise reasonable care," Bullmore v. Ernst & Young Cayman Islands, 846 N.Y.S.2d 145, 148 (1st Dep't 2007).

In its Opinion and Order on defendants' partial motion to dismiss SHIP's Complaint, the Court held that SHIP adequately pled gross negligence as to all defendants except Narain and Illumin because SHIP plausibly alleged that these defendants "owed SHIP a duty that was independent of defendants'

10

obligations under the IMAs" and because SHIP plausibly alleged
that these defendants engaged in conduct that "evince[d] a
reckless disregard for the rights of others or smack[ed] of
intentional wrongdoing." ECF No. 72, at 33. The Court dismissed
SHIP's gross negligence claim against Narain, however, for
substantially the same reasons that it dismissed SHIP's claim of
breach of fiduciary duty against him. See id. at 32-33. Because
the Court now concludes that the SAC adequately pleads breach of
fiduciary duty as to Narain, it also concludes that the SAC
plausibly charges Narain with gross negligence.

## VI.  Civil Conspiracy Claim Against Narain

As noted above, the Court initially dismissed SHIP's
conspiracy claim against all defendants. See ECF No. 72, at 37-
38. But in its Order on SHIP's motion for leave to amend its
First Amended Complaint, the Court, on further inquiry, now
concluded that "SHIP had made out a basis for this claim in its
prior complaint," and it permitted SHIP to reinstate the claim
against all defendants, including Narain. ECF No. 83, at 4.
Defendants did not timely move for reconsideration of the
Court's decision, and they have not raised any factual or legal
considerations that the Court previously overlooked. In any
event, after reviewing the matter de novo, the Court concludes
that the SAC adequately pleads civil conspiracy as to Narain.

11

## VII. Fraud Claim Against Narain

"To state a cause of action for fraud, a plaintiff must allege a representation of material fact, the falsity of the representation, knowledge by the party making the representation that it was false when made, justifiable reliance by the plaintiff and resulting injury." See Kaufman v. Cohen, 760 N.Y.S.2d 157, 165 (1st Dep't 2003). Under Rule 9(b), a plaintiff must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." Lerner v. Fleet Bank, N.A., 459 F.3d 273, 290 (2d Cir. 2006). "In cases where the alleged fraud consists of an omission and the plaintiff is unable to specify the time and place because no act occurred, the complaint must still allege: (1) what the omissions were; (2) the person responsible for the failure to disclose; (3) the context of the omissions and the manner in which they misled the plaintiff, and (4) what defendant obtained through the fraud." Odyssey Re (London) Ltd. v. Stirling Cooke Brown Holdings Ltd., 85 F. Supp. 2d 282, 293 (S.D.N.Y. 2000).

In its Opinion and Order on defendants' partial motion to dismiss SHIP's Complaint, the Court held that SHIP failed to state a claim for fraud against any of the defendants. ECF

No. 72, at 25. With respect to Narain in particular, the Court could not identify any misstatements or omissions that were pled with the specificity required by Rule 9(b). See id. at 23-24.

In the SAC, SHIP adds the allegations discussed above in the context of its breach of fiduciary duty claim, and it also adds the following allegations: In connection with the Agera investment, when Narain and Feuer met with SHIP on May 19, 2016, Narain described the investment "as a tremendous 'opportunity' for SHIP." SAC ¶ 232. Narain allegedly represented that the owners of Agera "were motivated to sell Agera Energy on favorable terms" and "that he had done extensive diligence on Agera Energy and had worked with Duff & Phelps to evaluate the value of Agera Energy, including its potential for growth and for sale within four to five years at a substantial profit." Id.

SHIP alleges that its executives flew to New York the next week to meet further regarding Agera and that Narain proposed that SHIP invest in Agera through a "strawman structure" that would comply with SHIP's investment guidelines and insurance industry standards. Id. ¶¶ 234, 236. SHIP decided to make the proposed investment in reliance on this information. Id. ¶ 237. SHIP also relied on Narain's assurance that Beechwood would not invest more of SHIP's assets in Agera without SHIP's approval, and that Beechwood would arrange for the purchase of $25 million

13

of SHIP's investment within a few months. Id. This purchase never occurred. Id. ¶ 251.

Furthermore, after Narain orchestrated one of the Agera transactions described above, he allegedly told SHIP: "You have our commitment that we will do everything in our power to make this the very (sic) investment for you that we can." Id. ¶ 250. And in August 2016, after SHIP became concerned about exposure to Platinum, "Narain made repeated efforts to placate [SHIP], agreeing to meet with SHIP's trustees to 'satisfy the board that [the Agera investments] are real assets.'" Id. ¶ 256. Narain also told SHIP in August 2016 "that Beechwood 'ha[s] taken and will continue to take aggressive action to reduce this exposure [to Platinum-controlled entities] as soon as practicable.'" Id. (alterations in original). And in October 2016, "Narain responded to an article forwarded by [SHIP], which stated that Platinum would be paying back a fraction of what it owed to its hedge fund clients, with the false assertion that 'no one will get paid anything until we are paid off.'" Id. ¶ 257.

Although these allegations describe Narain's conduct in greater detail than the Complaint did, the Court nevertheless dismissed the SAC's fraud claim against Narain. As noted above, in its Opinion and Order on defendants' partial motion to dismiss the Complaint, the Court dismissed SHIP's fraudulent

14

inducement claim as to Narain with prejudice. See ECF No. 72, at 17-18. SHIP had contended in its answering papers and at oral argument that Narain fraudulently induced SHIP to invest in Agera, see ECF No. 66, at 13-14; Transcript dated November 13, 2018 at 33:1-15, but these allegations did not appear in SHIP's Complaint. In its Order on SHIP's motion for leave to amend its First Amended Complaint, moreover, the Court explained that "SHIP ha[d] not established good cause for reinstating the fraudulent inducement claim against Narain," and that "SHIP had all the information necessary to support this claim at the time it filed its initial complaint." ECF No. 83, at 3.

Now, in the SAC, SHIP essentially tries to repackage its fraudulent inducement claim against Narain as a fraud claim. Because the Court held previously that SHIP did not establish good cause for reinstating its fraudulent inducement claim, the Court will not allow SHIP to base its fraud claim on allegations regarding misstatements and omissions that Narain made to induce SHIP to invest in Agera.

Stripped of these allegations, the only misrepresentations that the SAC attributes to Narain are those from August and October 2016 that are discussed immediately above. See SAC ¶¶ 256-57. SHIP does not explain, however, how it relied on these misrepresentations to its detriment. Instead, SHIP repeats

15

the allegation from its Complaint that "Defendants' actions
prevented SHIP, among other things, from discovering the true
nature and value of investments made with its assets, [and]
denied SHIP the ability to protect its assets from speculative
investments, depletion, and misuse by Defendants." SAC ¶ 263;
Compl. ¶ 196. The Court already held in its Opinion and Order on
defendants' partial motion to dismiss the Complaint that these
allegations were insufficient to establish reliance and injury,
see ECF No. 72, at 24-25, and it sees no reason to alter that
conclusion here. Accordingly, the Court dismissed the SAC's
fraud claim as to Narain.

**VIII. Constructive Fraud Claim Against Feuer, Taylor, and Narain**

Under New York law, a "constructive fraud claim modifies
the claim for actual fraud by replacing the scienter requirement
with the requirement that Defendants maintained either a
fiduciary or confidential relationship with Plaintiff." LBBW
Luxemburg S.A. v. Wells Fargo Sec. LLC, 10 F. Supp. 3d 504, 524
(S.D.N.Y. 2014); see Brown v. Lockwood, 432 N.Y.S.2d 186, 193-94
(2d Dep't 1980) ("The elements of a cause of action to recover
for constructive fraud are the same as those to recover for
actual fraud with the crucial exception that the element of
scienter upon the part of the defendant . . . is dropped and is

16

replaced by a requirement that the plaintiff prove the existence of a fiduciary or confidential relationship . . . .").

In their partial motion to dismiss the SAC, defendants argue that SHIP's constructive fraud claim should be dismissed as to Feuer, Taylor, and Narain because the SAC fails to allege that these defendants owed SHIP a fiduciary duty. MTD 10. Defendants also argue that the constructive fraud claim should be dismissed as to Narain for the additional reasons discussed above in the context of SHIP's fraud claim.

As explained above, the Court has already held that SHIP adequately pled the existence of a fiduciary duty as to Feuer and Taylor, see ECF No. 72, at 14, and it will not revisit that conclusion here. With respect to Narain, however, the Court concludes - for the same reasons just discussed in the context of SHIP's fraud claim - that the SAC fails to allege reliance and injury. Accordingly, the Court denied defendants' motion to dismiss the constructive fraud claim as to Feuer and Taylor, but granted the motion as to Narain.

## IX. RICO Claim Against All Defendants

SHIP alleges RICO violations under 18 U.S.C. §§ 1962(c), 1962(a), 1962(d). Section 1962(c) makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign

17

commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." Section 1962(a) makes it "unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity . . . to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce." And section 1962(d) makes it "unlawful for any person to conspire to violate," inter alia, sections 1962(c) and 1962(a).

To plead a RICO violation, a plaintiff must allege that the defendant engaged in at least two predicate acts of "racketeering activity," where "racketeering activity" is defined to include a host of state and federal offenses. 18 U.S.C. §§ 1961(1), (5). In the instant action, SHIP alleges that defendants engaged in the predicate acts of mail and wire fraud under sections 1341 and 1343 of title 18. SAC ¶ 361.

In addition to alleging two predicate acts, a RICO plaintiff must plead, among other things, continuity to establish that the racketeering activity constitutes a "pattern." Continuity, in turn, "is both a closed- and open-

18

ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." H.J. Inc. v. Nw. Bell Tel. Co., 492 U.S. 229, 241 (1989). Where, as here, the pattern is closed-ended, the Second Circuit has held that "predicate acts occurring over less than a two-year period may not be deemed a pattern." First Capital Asset Mgmt., Inc. v. Satinwood, Inc., 385 F.3d 159, 168 (2d Cir. 2004).

In its Opinion and Order on defendants' partial motion to dismiss SHIP's Complaint, the Court held that SHIP failed to allege predicate acts occurring over a two-year period because the only predicate acts SHIP plausibly alleged were the initial acts of fraudulent inducement that took place over the course of several months. ECF No. 72, at 29. In the SAC, SHIP adds multiple allegations of fraud, including allegations regarding defendants' misrepresentations of the market value of SHIP's assets in connection with defendants' regular withdrawal of performance fees. See SAC ¶¶ 163, 170, 176. These withdrawals are alleged to have taken place over a 22-month period, compare id. ¶ 170 (withdrawal on October 2, 2014), with id. ¶ 176 (withdrawal on August 2, 2016), and the last withdrawal is alleged to have taken place more than two years after SHIP was

19

induced to enter into the IMAs, see, e.g., id. ¶ 69 (email sent
by Taylor on April 10, 2014).

Notwithstanding these new allegations, the Court concludes
that SHIP's RICO claims are barred by Section 107 of the Private
Securities Litigation Reform Act ("PSLRA") - also referred to as
the "RICO Amendment" - which provides that "no person may rely
upon any conduct that would have been actionable as fraud in the
purchase or sale of securities to establish a violation of
section 1962." 18 U.S.C. § 1964(c). For the RICO Amendment to
apply, "the fraud itself must be integral to the purchase and
sale of the securities in question." Leykin v. AT & T Corp., 423
F. Supp. 2d 229, 241 (S.D.N.Y. 2006). "Conduct that is merely
incidental or tangentially related to the sale of securities
will not meet [this] requirement." Id.

As an illustration of what it means for conduct to be
"merely incidental or tangentially related," Leykin involved
allegations that AT & T had engaged in a fraudulent scheme to
misappropriate the technology of a company called At Home,
thereby "diminish[ing] [At Home's] profits and impair[ing] its
ability to raise capital." Id. at 240. The court rejected
plaintiffs' argument that "At Home's proprietary technology was
the key to the value of its stock and the undisclosed scheme
clearly related to (and destroyed) the investment value of and

20

price of At Home Stock." Id. at 241. Instead, the court concluded, plaintiffs' claims "represent[ed] charges of corporate mismanagement and abuse rather than of securities fraud." Id. at 242.

In the instant case, by contrast, the SAC alleges that defendants funneled SHIP's assets into Platinum-related securities. The Supreme Court considered a similar situation in S.E.C. v. Zandford, in which it held that respondent had engaged in securities fraud "by selling his customer's securities and using the proceeds for his own benefit without the customer's knowledge or consent." 535 U.S. 813, 815 (2002). The Court rejected respondent's argument that the sale of the securities had been lawful, "and that the subsequent misappropriation of the proceeds, though fraudulent, is not properly viewed as having the requisite connection with the sales." Id. at 820. Instead the Court reasoned: "This is not a case in which, after a lawful transaction had been consummated, a broker decided to steal the proceeds and did so. Nor is it a case in which a thief simply invested the proceeds of a routine conversion in the stock market. Rather, respondent's fraud coincided with the sales themselves." Id.

Zandford is instructive here, if not dispositive. According to SHIP, the "object of the criminal enterprise was to entice

21

SHIP to part with its money," and the fact that "Defendants further betrayed SHIP's confidence by funneling those funds to Platinum through what appeared on their face to be 'otherwise legitimate [securities] transaction[s]' does not transform the underlying predicate acts into violations of the federal securities laws." Opp. 20. But Zandford suggests otherwise. This is not "a case in which a thief simply invested the proceeds of a routine conversion in the stock market." 535 U.S. at 820. It is a case in which the funds were obtained precisely for the purpose of acquiring the securities. As a result, the "fraud coincided" with the securities transactions, and the RICO Amendment applies.

This Court considered a similar issue in Picard v. Kohn, in which the trustee for the estate of Bernard L. Madoff Investment Securities LLC ("Madoff Securities") brought RICO claims against multiple defendants for "attracting investors to supposedly diversified investment funds that, in reality, did nothing more than feed money into Madoff Securities." 907 F. Supp. 2d 392, 396 (S.D.N.Y. 2012). This Court dismissed the RICO claims for lack of standing, but it also held in the alternative that the RICO claims were precluded by the RICO Amendment. Id. at 398. The Court cited the Second Circuit's then-recent decision in MLSMK Investment Co. v. JP Morgan Chase & Co. for the

22

proposition that "conduct undertaken to keep a securities fraud Ponzi scheme alive is conduct undertaken in connection with the purchase and sale of securities," id. (quoting 651 F.3d 268, 277 n.11 (2d Cir. 2011)), and it held that the RICO Amendment barred plaintiff's claims because plaintiff alleged not only that defendants "kept Madoff Securities' Ponzi scheme alive, but also that they did so by 'conspir[ing] to conceal' the fact that their funds' only fed into Madoff Securities, engaging in 'deception' in order to attract investors — who could have invested with Madoff Securities directly — to . . . feeder funds," id.

Based on these cases, the Court concludes that SHIP's allegations are barred by the RICO Amendment insofar as the gravamen of SHIP's mail and wire fraud claims is that Beechwood funneled SHIP's assets to Platinum.[3] The only allegations to

---

[3] That the SAC pleads mail and wire fraud as predicate acts does not preclude application of the RICO Amendment. See MLSMK, 651 F.3d at 278-79 ("Congress intended that the [RICO Amendment] would eliminate securities fraud as a predicate offense in a civil RICO action, and would bar a plaintiff from pleading other specified offenses, such as mail or wire fraud, as predicate acts under civil RICO if such offenses are based on conduct that would have been actionable as securities fraud."); Blythe v. Deutsche Bank AG, 399 F. Supp. 2d 274, 278 (S.D.N.Y. 2005) ("[A] plaintiff cannot avoid the RICO Amendment's bar by pleading mail . . . [and] wire fraud . . . as predicate offenses in a civil RICO action if the conduct giving rise to those predicate offenses amounts to securities fraud.").

23

which this bar arguably does not apply are the allegations that
defendants misrepresented the market value of SHIP's assets in
connection with defendants' regular withdrawal of performance
fees. However, as noted above, defendants' withdrawals are
alleged to have taken place over only 22 months, which is less
than the two years required to constitute a "pattern" for RICO
purposes. See First Capital Asset Mgmt., 385 F.3d at 168. For
these reasons, the Court dismissed SHIP's RICO claims as to all
defendants.

## X. Unjust Enrichment Claim Against All Defendants

To state a claim for unjust enrichment under New York law,
a plaintiff must allege that "(1) defendant was enriched, (2) at
plaintiff's expense, and (3) equity and good conscience militate
against permitting defendant to retain what plaintiff is seeking
to recover." Briarpatch Ltd. v. Phoenix Pictures, Inc., 373 F.3d
296, 306 (2d Cir. 2004). Relief for unjust enrichment is
"available only in unusual situations when, though the defendant
has not breached a contract nor committed a recognized tort,
circumstances create an equitable obligation running from the
defendant to the plaintiff." Corsello v. Verizon New York, Inc.,
967 N.E.2d 1177, 1185 (N.Y. 2012). Accordingly, "[a]n unjust
enrichment claim is not available where it simply duplicates, or
replaces, a conventional contract or tort claim." Id.

24

In its Opinion and Order on defendants' partial motion to dismiss SHIP's Complaint, the Court held that SHIP failed to plead unjust enrichment outside of its contracts with defendants and that SHIP failed to plead unjust enrichment with particularity as to any of the individual defendants. ECF No. 72, at 35-36. However, the Court stated that "SHIP may be able to amend its complaint . . . to plead unjust enrichment based on funds invested outside of the IMAs or to plead in a nonconclusory fashion that the Individual Defendants were enriched." Id. at 36.

In the SAC, SHIP adds two main allegations to its claim for unjust enrichment. First, SHIP alleges that Feuer, Taylor, and Levy personally profited from the payment of performance fees to Beechwood. SAC ¶ 401. Second, SHIP alleges that all defendants improperly benefitted from the $50 million that SHIP invested directly in Agera, outside of the IMAs or any other contractual agreement. Id. ¶ 402.

Beginning with SHIP's first allegation, the Court concludes that SHIP cannot state a claim for unjust enrichment based on the payment of contractually owed performance fees. As noted above, "[a]n unjust enrichment claim is not available where it simply duplicates, or replaces, a conventional contract or tort claim," Corsello, 967 N.E.2d at 1185, and "courts in New York

25

state and in this District have found that the existence of a valid and binding contract governing the subject matter at issue in a particular case . . . preclude[s] a claim for unjust enrichment even against a third party non-signatory to the agreement," Law Debenture v. Maverick Tube Corp., No. 06 Civ. 14320 (RJS), 2008 WL 4615896, at *12 (S.D.N.Y. Oct. 15, 2008), aff'd sub nom. Law Debenture Tr. Co. of New York v. Maverick Tube Corp., 595 F.3d 458 (2d Cir. 2010).

Moving to SHIP's second allegation, however, the Court concludes that SHIP is not barred from grounding its unjust enrichment claim in the $50 million invested directly in Agera because the SAC alleges that no contractual agreement governed this investment. SAC ¶ 402. The SAC alleges, moreover, that Taylor and Feuer had "significant ownership positions in" Agera, id. ¶ 214, such that the Court can reasonably infer that these defendants improperly benefitted from SHIP's investment. The Court cannot reasonably infer, by contrast, that other defendants improperly benefitted from SHIP's direct investment in Agera. Although the SAC alleges that SHIP's direct investment allowed "Beechwood, its insiders, and certain Platinum insiders to cash out interests in the Agera enterprise," id. ¶ 262, SHIP does not specify who was enriched. Accordingly, the Court denied defendants' motion to dismiss the unjust enrichment claim as to

26

Taylor and Feuer, but granted the motion as to the other moving defendants.

## Conclusion

This Opinion has set forth the reasons for the Court's "bottom-line" Order issued on March 15, 2019. In sum, the Court granted defendants' motion in the following respects: First, SHIP's RICO claims were dismissed as to all defendants. Second, SHIP's fraud and constructive fraud claims were dismissed only as to Narain. And third, SHIP's unjust enrichment claim was dismissed only as to Narain, Beechwood Re, BAM, BBIL, and BRILLC. Defendants' motion was denied in all other respects.

Dated:   New York, NY

April 2, 2019                    JED S. RAKOFF, U.S.D.J.