```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------- x
In re PLATINUM-BEECHWOOD LITIGATION :       18-cv-6658 (JSR)
-------------------------------- x
SENIOR HEALTH INSURANCE COMPANY OF  :
PENNSYLVANIA,                       :       18-cv-6658 (JSR)
                                    :
            Plaintiff,              :
                                    :
            -v-                     :
                                    :
BEECHWOOD RE LTD. et al.,           :
                                    :
            Defendants.             :
-------------------------------- x
DAVID LEVY,                         :
                                    :       19-cv-3211 (JSR)
            Plaintiff,              :
                                    :       OPINION AND ORDER
            -v-                     :
                                    :
SENIOR HEALTH INSURANCE COMPANY OF  :
PENNSYLVANIA,                       :
                                    :
            Defendant.              :
-------------------------------- x
```

<table>
<tr><td>USDC SDNY</td></tr>
<tr><td>DOCUMENT</td></tr>
<tr><td>ELECTRONICALLY FILED</td></tr>
<tr><td>DOC #:</td></tr>
<tr><td>DATE FILED: 5/17/19</td></tr>
</table>

JED S. RAKOFF, U.S.D.J.

Before the Court are two related motions: First is the

motion of Beechwood Re Ltd. ("BRE"), B Asset Manager, L.P.

("BAM"), Beechwood Bermuda International Ltd. ("BBIL"),

Beechwood Re Investments, LLC ("BRILLC"), Mark Feuer, Scott

Taylor, and Dhruv Narain (collectively, the "Beechwood

Defendants") for summary judgment on their counterclaim against

Senior Health Insurance Company of Pennsylvania ("SHIP") for the

immediate advancement of litigation expenses. 18-cv-6658, ECF

No. 191. Second is the motion of David Levy for a preliminary

injunction against SHIP for the immediate advancement of
litigation expenses. 19-cv-3211, ECF No. 5. For the reasons
discussed below, the Beechwood Defendants' motion for summary
judgment is denied, and Levy's motion for a preliminary
injunction is granted in part and denied in part.

## Background

The relevant background to this case has been set forth in
various Opinions and Orders of this Court. See Senior Health
Ins. Co. of Pennsylvania v. Beechwood Re Ltd., 345 F. Supp. 3d
515, 520-23 (S.D.N.Y. 2018); In re Platinum-Beechwood Litig.,
No. 18-cv-6658 (JSR), 2019 WL 1759925, at *1 (S.D.N.Y. Apr. 22,
2019); In re Platinum-Beechwood Litig., No. 18-cv-10936 (JSR),
2019 WL 1570808, at *2-7 (S.D.N.Y. Apr. 11, 2019).

On March 20, 2019, the Beechwood Defendants filed an Answer
to SHIP's Second Amended Complaint in which they asserted, inter
alia, a counterclaim for advancement of expenses incurred in
connection with Senior Health Insurance Company of Pennsylvania
v. Beechwood Re Ltd. et al., 18-cv-6658-JSR (S.D.N.Y.) (the
"SHIP action"). See 18-cv-6658, ECF No. 190, at ¶¶ 266-69. On
April 10, 2019, Levy filed a separate action against SHIP in
which he asserted, inter alia, a claim for advancement of
expenses incurred in connection with the SHIP action, and in
connection with Trott et al. v. Platinum Management (NY) LLC et

2

al., 18-cv-10936-JSR (S.D.N.Y.) (the "Trott action"); Schmidt v. Nordlicht et al., Case No. 2016-76291 (Dist. Ct., Harris Cty., Tex.) (the "Schmidt action"); United States v. Nordlicht et al., 16-cr-00640-BMC (E.D.N.Y.) (the "criminal action"); and SEC v. Platinum Management (NY) LLC et al., 16-cv-06848-BMC (E.D.N.Y.) (the "SEC action"). See 19-cv-3211, ECF No. 1, at ¶¶ 27-30.

The Beechwood Defendants have moved for summary judgment on their advancement counterclaim, 18-cv-6658, ECF No. 191, and Levy has moved for a preliminary injunction on his advancement claim, 19-cv-3211, ECF No. 5. SHIP opposes both motions. 18-cv-6658, ECF No. 221; 19-cv-3211, ECF No. 18.

## Analysis

### I. The Beechwood Defendants' Motion for Summary Judgment

Under Rule 56(a) of the Federal Rules of Civil Procedure, a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "The movant bears the burden of demonstrating the absence of a genuine dispute of fact, and, to award summary judgment, the court must be able to find after drawing all reasonable inferences in favor of a non-movant that no reasonable trier of fact could find in

3

favor of that party." Palmer/Kane LLC v. Rosen Book Works LLC,
204 F. Supp. 3d 565, 568 (S.D.N.Y. 2016).[1]

The Beechwood Defendants argue that they are entitled to
advancement of litigation expenses under the investment
management agreements ("IMAs") that they executed with SHIP. See
Memorandum of Law in Support of the Beechwood Parties' Motion
for Partial Summary Judgment for Advancement of Litigation
Expenses 3, 18-cv-6658, ECF No. 192. Each of the IMAs contains
the following language in Paragraph 18:

(a) Except as required by applicable law, none of the
Adviser [i.e., defendant signatory] or its subsidiaries
or any sub-advisor engaged by the Adviser or any
director, officer, partner, member, stockholder,
controlling person, employee or agent of the Adviser or
its subsidiaries or any such sub-advisor, or any of their
affiliates (all of the foregoing persons and entities
being referred to collectively as "Indemnified Parties"
and individually as an "Indemnified Party") shall be
liable to the Account, any contributor of assets to the
Account, the Client [i.e., SHIP] or any of the Client's
shareholders for any act or omission suffered or taken
by such Indemnified Party in good faith in connection
with its or his performance of the Adviser's duties or
exercise of the Adviser's powers under this Agreement,
including, without limitation, any loss arising out of
any investment or act or omission in the execution of
transactions for the Account, that is not in material
violation of this Agreement and does not constitute
fraud, gross negligence or willful misconduct, and with
respect to any criminal action or proceeding, without
reasonable cause to believe that his or its conduct was
unlawful. None of the Client or any of the Client's

---

[1] Unless otherwise indicated, in quoting cases all internal
quotation marks, alterations, emphases, footnotes, and citations
are omitted.

4

shareholders (all of the foregoing persons and entities being referred to collectively as "Client Indemnified Parties" and individually as a "Client Indemnified Party") shall be liable for any liability or loss (including amounts paid in respect of judgments, fines, penalties or settlement of litigation, and legal fees and expenses reasonably incurred in connection with any pending or threatened litigation or proceeding) suffered by such Client Indemnified Party by reason of a material violation by Adviser of this Agreement which violation (i) is determined by a court of competent jurisdiction (in a final non-appealable decision) to constitute fraud, gross negligence or the willful misconduct of the Adviser or (ii) arises as a result of any criminal action or proceeding against the Adviser where it is reasonably demonstrated in such action or proceeding that the Adviser had reasonable cause to believe its conduct was unlawful. . . .

(c) To the maximum extent permitted by applicable law, each Indemnified Party shall be fully protected and indemnified by the Client, out of the assets of the Account, against all liabilities and losses (including amounts paid in respect of judgments, fines, penalties or settlement of litigation, and legal fees and expenses reasonably incurred in connection with any pending or threatened litigation or proceeding) suffered by virtue of its or his serving as an Indemnified Party with respect to any action or omission suffered or taken that is not in material violation of this Agreement and does not constitute fraud, gross negligence or willful misconduct, and with respect to any criminal action or proceeding, without reasonable cause to believe his or its conduct was unlawful. The Client shall, out of the assets of the Account, advance expenses, including legal fees, for which any Indemnified Party would be entitled by this Agreement to be indemnified upon receipt of an unsecured undertaking by such Indemnified Party to repay such advances if it is ultimately determined by a court of proper jurisdiction that indemnification for such expenses is not permitted by law or authorized by this Agreement. To the maximum extent permitted by applicable law, each Client Indemnified Party shall be fully protected and indemnified by Adviser against all liabilities and losses (including amounts paid in

5

respect of judgments, fines, penalties or settlement of litigation, and legal fees and expenses reasonably incurred in connection with any pending or threatened litigation or proceeding) suffered by such Client Indemnified Party by reason of a material violation by Adviser of this Agreement which violation (i) is determined by a court of competent jurisdiction (in a final non-appealable decision) to constitute fraud, gross negligence or the willful misconduct of the Adviser or (ii) arises as a result of any criminal action or proceeding against the Adviser where it is reasonably demonstrated in such action or proceeding that the Adviser had reasonable cause to believe its conduct was unlawful.

18-cv-6658, ECF No. 193-1, Ex. 1, at 10-12 (BBIL IMA); ECF No. 193-1, Ex. 2, at 10-12 (BRE IMA); ECF No. 193-2, Ex. 3, at 10-12 (BAM IMA). The Beechwood Defendants argue that Paragraph 18's expansive language entitles them to advancement of expenses, even in connection with litigation with SHIP.

As a preliminary matter, there is no doubt that each of the Beechwood Defendants is an "Indemnified Party" under Paragraph 18(a). BBIL, BRE, and BAM are "Advisers," BRILLC is an "affiliate," and Feuer, Taylor, and Narain are current or former "officers." It is also clear that Paragraph 18(c) requires SHIP to advance litigation expenses "for which any Indemnified Party would be entitled by this Agreement to be indemnified." As such, if the Beechwood Defendants "would be entitled" to indemnification for expenses incurred in litigation with SHIP, then SHIP is required to advance those expenses.

6

The question, then, is whether the Beechwood Defendants "would be entitled" to indemnification for expenses incurred in litigation with SHIP. As defendants note, Paragraph 18(c) appears on its face to provide for broad coverage. It specifies that, "[t]o the maximum extent permitted by applicable law, each Indemnified Party shall be fully protected and indemnified by [SHIP] . . . against all liabilities and losses . . . suffered by virtue of its or his serving as an Indemnified Party," as long as those liabilities and losses did not result from the Indemnified Party's wrongful conduct. Based only on the plain meaning of its terms, this provision might be read to cover expenses incurred in litigation with SHIP.

New York law, however, imposes a strong presumption against reading indemnification provisions to cover expenses incurred in litigation between the parties. In Hooper Associates v. AGS Computers, Inc., the New York Court of Appeals explained that "a promise by one party to a contract to indemnify the other for attorney's fees incurred in litigation between them is contrary to the well-understood rule that parties are responsible for their own attorney's fees, [and] [a] court should not infer a party's intention to waive the benefit of the rule unless the intention to do so is unmistakably clear from the language of the promise." 548 N.E.2d 903, 905 (N.Y. 1989). And the Second

Circuit has further clarified that "the test is whether the intent to indemnify is unmistakably clear from the language of the promise, not whether the agreement could be read to provide for indemnification." PPI Enterprises (U.S.), Inc. v. Del Monte Foods Co., 2006 WL 3370698, at *1 (2d Cir. Nov. 20, 2006).

However, the requirement that parties express their intent with "unmistakable clarity" is not the same as a "magic words" test, and courts have interpreted indemnification provisions to cover litigation expenses between the parties even where that coverage was not explicitly mandated in such words but, nonetheless, the intent was clear. See Breed, Abbott & Morgan v. Hulko, 541 N.E.2d 402, 403 (N.Y. 1989) (inferring that the parties had "agreed to indemnify plaintiff for its legal expenses incurred resisting defendant's claims" where it would otherwise have been "difficult, if not impossible, to ascertain for what it was that the parties had agreed to indemnify" plaintiff); Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp., 418 F.3d 168, 178 (2d Cir. 2005) (inferring that the parties had intended to indemnify expenses incurred in litigation between them where the provision in question "swe[pt] more broadly" than an earlier provision that covered expenses incurred in litigation with third parties). For this reason, this Court has recognized that "unmistakable clarity" is

probably better interpreted as mandating "what amounts to a rebuttable presumption against a finding of indemnification of attorney fees in a suit between the contracting parties." In re Refco Sec. Litig., 890 F. Supp. 2d 332, 341 (S.D.N.Y. 2012).

In determining whether a provision rebuts the presumption against indemnification of inter-party litigation expenses, courts look to several factors, including: (1) whether the provision "unequivocally indicate[s] that the parties intended to indemnify attorneys' fees in lawsuits between themselves," or whether it instead "contain[s] only broad language," id. at 343; and (2) whether "future third-party claims were possible at the time of the contract," or whether "it is apparent that no third party claims were contemplated by the parties," id. at 344. Where a provision "is subject to a reasonable interpretation one way or another, the agreement must be construed not to indemnify [one party's] legal expenses in defending against [another party's] claims." Id. at 343. Similarly, where "language may easily be read as limited to third party actions," an inter-party "award of fees cannot . . . be supported by the contract's indemnification clause." Bridgestone/Firestone, Inc. v. Recovery Credit Servs., 98 F.3d 13, 21 (2d Cir. 1996).

Applying these principles to the provision at issue here, the Court concludes that the language of Paragraph 18 does not

9

rebut the presumption against indemnification of inter-party litigation expenses. First, Paragraph 18(c) "contain[s] only broad language that does not unequivocally indicate that the parties intended to indemnify attorneys' fees in lawsuits between themselves." Refco, 890 F. Supp. 2d at 343. Indeed, if the provision were to be read to indemnify inter-party litigation expenses, then it would contemplate an unusual scheme: SHIP is required to advance defendants' litigation expenses as soon as it brings an action against them. And SHIP is ultimately required to indemnify defendants for their litigation expenses if defendants are not found to have engaged in wrongful conduct. However, if defendants are found to have engaged in wrongful conduct, then not only are defendants required to reimburse SHIP for the litigation expenses that SHIP advanced, but defendants are also required to indemnify SHIP for the litigation expenses that SHIP incurred in bringing the action against defendants.[2] It seems doubtful the parties intended such a bizarre approach.

_____

[2] See 18-cv-6658, ECF No. 193-1, Ex. 1, at 12 ("To the maximum extent permitted by applicable law, each Client Indemnified Party shall be fully protected and indemnified by Adviser against all liabilities and losses (including amounts paid in respect of judgments, fines, penalties or settlement of litigation, and legal fees and expenses reasonably incurred in connection with any pending or threatened litigation or

10

More importantly, it is clear from the terms of Paragraph 18 that "future third-party claims were possible at the time of the contract." Id. at 344. As SHIP notes, Paragraph 18(c) requires indemnification with respect to "judgments, fines, [and] penalties," as well as "with respect to any criminal action or proceeding." This language clearly contemplates third-party claims, and "in contexts in which contracting parties could have anticipated that they would be subject to third-party claims, courts apply a presumption against concluding that indemnification clauses cover litigation costs incurred in the course of resolving non-third party claims." Abakan, Inc. v. Uptick Capital, LLC, 943 F. Supp. 2d 410, 415 (S.D.N.Y. 2013); see Bridgestone/Firestone, 98 F.3d at 21.

The Beechwood Defendants argue that the phrase "all liabilities and losses" in Paragraph 18(c) must refer to liabilities incurred in litigation between the parties because Paragraph 18(a) contains similar language regarding liability for "any loss." Reply Memorandum of Law in Further Support of the Beechwood Parties' Motion for Partial Summary Judgment for

---

proceeding) suffered by such Client Indemnified Party by reason of a material violation by Adviser of this Agreement which violation (i) is determined by a court of competent jurisdiction (in a final non-appealable decision) to constitute fraud, gross negligence or the willful misconduct of the Adviser . . . .").

11

Advancement of Litigation Expenses 4 ("SJ Reply"), 18-cv-6658,
ECF No. 239. Because Paragraph 18(a) indisputably applies to
litigation between the parties, defendants argue, Paragraph
18(c) applies to litigation between the parties as well. Id.;
see Senior Health Insurance Company of Pennsylvania's Opposition
to the Beechwood Defendants' Motion for Partial Summary Judgment
5 n.8, 18-cv-6658, ECF No. 221 (acknowledging that "Paragraph
18(a) is a limitation of liability clause that purports to
exculpate the Indemnified Parties from liability to, inter alia,
SHIP").

The Court disagrees that Paragraph 18(a) helps the
Beechwood Defendants, and it finds that the language of the
provision actually cuts against them. As a reminder, Paragraph
18(a) provides that defendants will not:

> be liable to [SHIP] . . . for any act or omission
> suffered or taken . . . in good faith in connection with
> [the] performance of [defendants'] duties or exercise of
> [defendants'] powers under this Agreement, including,
> without limitation, any loss arising out of any
> investment or act or omission in the execution of
> transactions for the Account, that is not in material
> violation of this Agreement and does not constitute
> fraud, gross negligence or willful misconduct, and with
> respect to any criminal action or proceeding, without
> reasonable cause to believe that [defendants'] conduct
> was unlawful.

18-cv-6658, ECF No. 193-1, Ex. 1, at 10-11. Paragraph 18(a) also
provides, however, that SHIP will not:

12

be liable for any liability or loss (including amounts paid in respect of judgments, fines, penalties or settlement of litigation, and legal fees and expenses reasonably incurred in connection with any pending or threatened litigation or proceeding) suffered by [SHIP] by reason of a material violation by [defendants] of this Agreement which violation (i) is determined by a court of competent jurisdiction (in a final non-appealable decision) to constitute fraud, gross negligence or the willful misconduct of [defendants] or (ii) arises as a result of any criminal action or proceeding against [defendants] where it is reasonably demonstrated in such action or proceeding that [defendants] had reasonable cause to believe its conduct was unlawful.

Id. at 11.

Notably, the first part of Paragraph 18(a) – which, as just discussed, covers inter-party claims – does not provide for the indemnification of litigation expenses. The second part, by contrast – which clearly contemplates third-party claims – does provide for the indemnification of litigation expenses. If anything, it hurts the Beechwood Defendants' cause that the only provision in Paragraph 18 that indisputably applies to inter-party claims is also the only provision that does not provide for the indemnification of litigation expenses.

Based on these considerations, the Court concludes that the language of Paragraph 18 fails to rebut the presumption against indemnification of inter-party litigation expenses. Accordingly, the Court holds that Paragraph 18 does not indemnify expenses incurred in litigation with SHIP, and it denies the Beechwood

13

Defendants' motion for summary judgment on their counterclaim for advancement.[3]

## II. Levy's Motion for a Preliminary Injunction

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 20 (2008). "A preliminary injunction is an extraordinary remedy never awarded as of right. In each case, courts must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." Salinger v. Colting, 607 F.3d 68, 79 (2d Cir. 2010).

### A. Likelihood of Success on the Merits

---

[3] In so holding, the Court acknowledges that the Beechwood Defendants have raised several non-binding cases that point in the opposite direction. See Gramercy Advisors, LLC v. Coe, No. 13-cv-9069 (VEC), 2015 WL 13780603 (S.D.N.Y. Apr. 17, 2015); Happy Kids, Inc. v. Glasgow, No. 01 Civ. 6434 (GEL), 2002 WL 72937 (S.D.N.Y. Jan. 17, 2002); Crossroads ABL LLC v. Canaras Capital Mgmt., LLC, 963 N.Y.S.2d 645 (1st Dep't 2013). However, the Court finds that the indemnification provisions at issue in those cases are distinguishable from Paragraph 18 in relevant respects. And to the extent that the provisions overlap, the Court does not believe that the above cases provide reliable guidance in determining how the New York Court of Appeals would interpret Paragraph 18. See Travelers Ins. Co. v. 633 Third Assocs., 14 F.3d 114, 119 (2d Cir. 1994).

14

Like the Beechwood Defendants, Levy argues that he is

entitled to advancement under Paragraph 18(c) of the IMAs. See

Memorandum of Law in Support of Plaintiff David Levy's Motion

for Preliminary Injunction 11 ("PI Mem."), 19-cv-3211, ECF

No. 6. For the reasons just discussed, the Court concludes that

Paragraph 18(c) does not indemnify expenses incurred in

litigation with SHIP, and Levy is therefore unlikely to succeed

on the merits of his advancement claim in connection with the

SHIP action. Unlike the Beechwood Defendants, however, Levy also

seeks advancement in connection with the Trott action, the

Schmidt action, the criminal action, and the SEC action

(collectively, the "third-party actions"). To assess whether

Levy is likely to succeed on the merits of his advancement claim

in connection with these actions, the Court must look past the

issue of inter-party indemnification.

SHIP offers several reasons why Levy is unlikely to succeed

on his advancement claim in connection with the third-party

actions. See Senior Health Insurance Company of Pennsylvania's

Opposition to David Levy's Motion for Preliminary Injunction 10-

19 ("PI Opp."), 19-cv-3211, ECF No. 18. As relevant here, SHIP

argues that advancement of expenses is required under the IMAs

only if Levy "would be entitled . . . to be indemnified" for

those expenses, and Levy would be entitled to be indemnified

15

only "with respect to any action or omission suffered or taken that is not in material violation of [the IMAs] and does not constitute fraud, gross negligence or willful misconduct, and with respect to any criminal action or proceeding, without reasonable cause to believe his . . . conduct was unlawful." Because "[e]very claim for which Levy now seeks advancement falls within that bar to indemnity," SHIP argues, indemnification is unwarranted. Id. at 15.

Moreover, SHIP argues, the Court should draw an adverse inference from Levy's assertion of his Fifth Amendment rights in the actions for which he now seeks indemnification. Id. at 17-18. For example, SHIP argues, Levy's invocation of the Fifth Amendment in response to allegations about his misconduct should form the basis of an "adverse inference that he has engaged in fraud, willful misconduct, and gross negligence, which are not covered by the IMAs." Id. at 18.

As a final point, SHIP argues, Paragraph 18(c) provides for advancement only "out of the assets of the Account." Id. at 19. Because there are no longer any liquid assets in its accounts, SHIP contends that it should not be required to advance any of Levy's expenses. Id. SHIP also argues that Levy should not be able to recover litigation expenses incurred "before his attempt at tendering of responsibility for his expenses." Id.

16

The Court finds each of these arguments unpersuasive. SHIP maintains that Levy cannot seek advancement in connection with the third-party actions because the conduct alleged in those actions, if proven, would not be indemnifiable under the IMAs. But this position renders meaningless the requirement in Paragraph 18 that Levy "repay [SHIP's] advances if it is ultimately determined by a court of proper jurisdiction that indemnification for such expenses is not permitted by law or authorized by [the IMAs]." Cf. Empire Merchants, LLC v. Merinoff, No. 16-cv-9590 (JMF), 2018 WL 317848, at *3 (S.D.N.Y. Jan. 5, 2018) ("It is true that the parties continue to litigate whether the bad faith 'carve out' applies to defeat Defendants' claim for indemnification, but that dispute . . . does not affect the right to advancement . . . . Indeed, were it otherwise, the language in the contract that requires Defendants to repay any amounts they are advanced if it is ultimately determined that they are not entitled to indemnification would be superfluous."). Moreover, if SHIP's reading were correct, then SHIP would be relieved of its advancement obligation any time misconduct was alleged in a third-party action.

Moving to SHIP's argument that the Court should draw adverse inferences from Levy's assertion of his Fifth Amendment rights, the Court acknowledges that such inferences are

17

permissible in a civil case. See Baxter v. Palmigiano, 425 U.S. 308, 318 (1976). But the Court does not infer much from Levy's assertion of his rights, given that he is currently facing criminal prosecution. In such circumstances, even if Levy properly performed his role under the IMAs, it is highly likely that, so long as the criminal action was pending, he would assert his Fifth Amendment rights in connection with the actions - even the civil actions - for which he seeks indemnification. The Court thus declines to draw the adverse inferences that SHIP requests.

The Court also declines to adopt SHIP's position that it can avoid its advancement obligations because advancement must be made "out of the assets of the Account." First, this interpretation would allow SHIP to avoid its advancement obligations simply by transferring assets out of its accounts. Second, as the Beechwood Defendants explain in their summary judgment papers, SHIP still places a significant value on its remaining illiquid assets. See SJ Reply 10 n.8.

Finally, there is no basis for SHIP's argument that Levy's recovery should be limited to expenses incurred after he made his demand to SHIP. SHIP is required to advance expenses "for which any Indemnified Party would be entitled . . . to be indemnified," and an Indemnified Party is entitled to be

indemnified "against all liabilities and losses . . . suffered
by virtue of its or his serving as an Indemnified Party," as
long as those liabilities and losses did not result from the
Indemnified Party's wrongful conduct. Nowhere does Paragraph
18(c) contemplate a limitation based on the timing of an
Indemnified Party's demand, and the one decision that SHIP cites
to the contrary is an inapposite case involving two insurance
companies. See PI Opp. 19 (citing Liberty Ins. Underwriters,
Inc. v. Arch Ins. Co., 877 N.Y.S.2d 44 (1st Dep't 2009)).

However, notwithstanding its skepticism about the arguments
above, the Court agrees with SHIP that "the IMAs can only
provide indemnification (and therefore advancement) with respect
to actions that are premised on conduct by Levy in the
performance of his duties to SHIP 'under' the IMAs." Id. at 12-
13. There is no question, for example, that Levy cannot recover
expenses incurred in connection with allegations that precede or
follow his tenure at Beechwood. Even Levy largely concedes this
point, explaining in his reply brief that he "seeks advancement
for fees and expenses associated with defending only against
those allegations that relate to SHIP's Black Elk and Platinum
Partners investments and thus fall fairly within the scope of
the IMAs." Reply Memorandum of Law in Further Support of

19

Plaintiff David Levy's Motion for Preliminary Injunction 5 n.7 ("PI Reply"), 19-cv-3211, ECF No. 22.

It will undoubtedly be difficult to determine which of Levy's litigation expenses have been incurred "by virtue of . . . his serving as an Indemnified Party." As just noted, Levy is entitled to advancement only of expenses incurred in connection with allegations about his role as a Beechwood officer. And even then, Levy can recover only a subset of those expenses, as his general role as a Beechwood officer swept more broadly than his specific role as SHIP's investment manager. Beyond this guidance, the Court leaves it to the parties to try to determine in the first instance what portion of Levy's expenses are eligible for advancement, failing which the Court will hold a hearing to determine the issue. With respect to this portion, however – whatever it ends up being – the Court holds that Levy is likely to succeed on his advancement claim.

## B. Irreparable Harm

Having determined that Levy is likely to succeed on his advancement claim with respect to at least some of his litigation expenses, the Court now turns to the issue of irreparable harm. SHIP argues that Levy has failed to establish irreparable harm because his injury is "remote [and] speculative," rather than "actual and imminent." PI Opp. 19

20

(quoting Tucker Anthony Realty Corp. v. Schlesinger, 888 F.2d 969, 975 (2d Cir. 1989)). SHIP contends that Levy "now seeks advancement for legal fees and costs in actions that have been pending for over two and a half years," and that he "gives no justification for this sudden urgency, other than asserting that Beechwood's Insurance policies may be near exhaustion." Id. at 20. Because "Levy does not allege he is unable to continue paying counsel . . . [or] that he will lose his existing counsel," SHIP argues that Levy cannot show "irreparable harm absent an injunction." Id. at 20-21.

The Court disagrees. As Levy explains, "when an individual has a contractual right to receive 'advance payments covering defense costs,' a failure to provide those payments as costs are incurred 'constitutes a direct, immediate and irreparable injury' meriting injunctive relief." PI Mem. 15 (quoting Dupree v. Scottsdale Ins. Co., 947 N.Y.S.2d 428, 429 (1st Dep't 2012)). This is particularly true where the individual is defending against criminal prosecution, and where the actions for which the individual seeks advancement - whether criminal or civil - are complicated and costly. See XL Specialty Ins. Co. v. Level Glob. Inv'rs, L.P., 874 F. Supp. 2d 263, 273-75 (S.D.N.Y. 2012). Here, Levy seeks advancement in connection with a criminal action, an SEC action, and two private civil actions. And the

21

trial in the criminal action alone is expected to take months.
See Transcript dated May 3, 2019, at 3:21-4:4.

Given these circumstances, the Court has no trouble
concluding that Levy has shown a likelihood of irreparable harm.
It is irrelevant, moreover, that Levy sought advancement only
after exhausting his insurance coverage; if his insurance
coverage is exhausted, then it makes sense that he needs the
money now.[4] The Court also rejects SHIP's argument that Levy has
failed to allege that he would be unable to pay his counsel
absent advancement. Not only is the Court skeptical that such a
showing is necessary, but the Court also finds that Levy's pro
se status during much the Trott action is powerful evidence in
support of his need for advancement.

## C. Balance of Equities and the Public Interest

For similar reasons to those just discussed, the Court
finds that the balance of equities weighs in Levy's favor. As he
explains in his moving papers, "Levy stands to lose not only
money, but also his liberty," while SHIP "faces at most a
monetary loss." PI Mem. 17. The Court is sympathetic to SHIP's
response that it is an insurer in runoff, and that any money
advanced to Levy will come at the expense of SHIP's

---

[4] For similar reasons, the Court rejects SHIP's argument that
Levy has waived his right to advancement. See PI Opp. 22-23.

policyholders. PI Opp. 24. But as Levy explains, any amounts that SHIP is required to advance him will constitute only a fraction of SHIP's assets. See PI Reply 10 n.16. And for what it is worth, SHIP will be entitled to reimbursement from Levy if he is found not to be entitled to indemnification.

Finally, with respect to the public interest, the Court finds that public policy favors the enforcement of Levy's advancement rights. The Court acknowledges SHIP's position that New York law disallows indemnification for intentional wrongdoing. See PI Opp. 23-24. But this argument again conflates advancement and indemnification. As this Court has explained, advancement "is a right whereby a potential indemnitee has the ability to force the [indemnitor] to pay his litigation expenses as they are incurred regardless of whether he will ultimately be entitled to indemnification." Suk Joon Ryu v. Hope Bancorp, Inc., No. 18 Civ. 1236 (JSR), 2018 WL 1989591, at *3 (S.D.N.Y. Apr. 26, 2018). And the public policy favoring advancement "will only be achieved if the promissory terms of advancement contracts are enforced by courts even when [potential indemnitees] are accused of serious misconduct." Homestore, Inc. v. Tafeen, 888 A.2d 204, 218 (Del. 2005). If Levy is found to have engaged in intentional wrongdoing, then indemnification for

his conduct will of course be forbidden. At present, however, concerns for public policy support Levy's claim for advancement.

## **Conclusion**

Because Levy has satisfied each of the factors above, the Court hereby grants his preliminary injunction motion to the extent that Levy seeks advancement of expenses incurred in the third-party actions "by virtue of . . . his serving as an Indemnified Party." The parties are directed to confer and determine in the first instance what portion of Levy's expenses are eligible for advancement. If the parties reach a mutually agreeable resolution, they should so notify the Court in writing. If within 10 days from the date hereof, the parties are unable to reach such a resolution, they are directed to convene a joint conference call to chambers to schedule an in-court hearing on this issue.

To the extent that Levy seeks advancement of expenses incurred in connection with the SHIP action, his preliminary injunction motion is hereby denied. For the same reasons, the Beechwood Defendants' motion for summary judgment on their advancement counterclaim is denied.

The Clerk is directed to close the entries at docket number 191 in 18-cv-6658, and at docket number 5 in 19-cv-3211.

SO ORDERED.

24

Dated:    New York, NY

         May 13 2019

JED S. RAKOFF, U.S.D.J.