UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
------------------------------------ x
In re PLATINUM-BEECHWOOD LITIGATION :      18-cv-6658 (JSR)
------------------------------------ x
MARTIN TROTT and CHRISTOPER SMITH,  :
as Joint Official Liquidators and   :
Foreign Representatives of PLATINUM :
PARTNERS VALUE ARBITRAGE FUND L.P.  :       18-cv-10936 (JSR)
(in Official Liquidation), and      :
PLATINUM PARTNERS VALUE ARBITRAGE   :
FUND L.P. (in Official              :
Liquidation),                       :
                                    :
          Plaintiffs,               :
                                    :
          -v-                       :
                                    :
PLATINUM MANAGEMENT (NY) LLC et     :
al.,                                :
                                    :
          Defendants.               :
------------------------------------ x
MELANIE L. CYGANOWSKI, as Equity    :
Receiver for PLATINUM PARTNERS      :
CREDIT OPPORTUNITIES MASTER FUND    :
LP, PLATINUM PARTNERS CREDIT        :       18-cv-12018 (JSR)
OPPORTUNITIES FUND (TE) LLC,        :
PLATINUM PARTNERS CREDIT            :
OPPORTUNITIES FUND LLC, PLATINUM    :
PARTNERS CREDIT OPPORTUNITIES FUND  :
INTERNATIONAL LTD., PLATINUM        :
PARTNERS CREDIT OPPORTUNITIES FUND  :       MEMORANDUM ORDER
INTERNATIONAL (A) LTD., and         :
PLATINUM PARTNERS CREDIT            :
OPPORTUNITIES FUND (BL) LLC,        :
                                    :
          Plaintiff,                :
                                    :
          -v-                       :
                                    :
BEECHWOOD RE LTD. et al.,           :
                                    :
          Defendants.               :
------------------------------------ x
```



USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED:

JED S. RAKOFF, U.S.D.J.

Familiarity with the procedural background to Trott et al. v. Platinum Management (NY) LLC et al., 18-cv-10936 (JSR) (the "Trott action") and Cyganowski v. Beechwood Re Ltd. et al., 18-cv-12018 (JSR) (the "Cyganowski action") is here assumed. As relevant here, defendant Ezra Beren was belatedly served with a second amended complaint by plaintiffs Martin Trott and Christopher Smith, as Joint Official Liquidators and Foreign Representatives of Platinum Partners Value Arbitrage Fund L.P. (in Official Liquidation) ("PPVA") and with an amended third-party complaint by third-party plaintiff Senior Health Insurance Company of Pennsylvania ("SHIP") in the Cyganowski action. See Second Amended Complaint, 18-cv-10936, ECF No. 285 ("SAC"); Third-Party Complaint, 18-cv-12018, ECF No. 381 ("SHIP TPC").

Now before the Court is Beren's motion to dismiss all claims against him in the SAC and the SHIP TPC. 18-cv-10936, ECF No. 490; 18-cv-12018, ECF No. 472; 18-cv-6658, ECF No. 704. For the reasons set forth below, the Court grants the motion to dismiss the Sixteenth Count (civil conspiracy) and the Seventeenth Count (civil RICO) in the SAC and the Fifth Count (civil conspiracy) and the Seventh Count (unjust enrichment) in the SHIP TPC, but denies the motion in all other respects.

**The Second Amended Complaint in the Trott Action**

2

## I. Allegations in the Second Amended Complaint

The following allegations against Beren are taken from the SAC and are assumed true for the purposes of assessing the motion to dismiss the SAC claims against Beren in the Trott action:

Beren is part of the groups called the "Platinum Defendants" and the "Beechwood Defendants" in the SAC. SAC ¶ 3. Familiarity with the general allegations against the Platinum Defendants and the Beechwood Defendants is here assumed. See generally SAC. While Beren is implicated in certain instances of group pleading, the individualized allegations against Beren boil down to the following:[1]

---

[1] In their briefs, the parties have included various factual allegations that are neither in the pleadings nor in the exhibits incorporated by reference into the pleadings. For instance, Beren disputes various facts alleged in the SAC. See, e.g., Memorandum of Law in Support of Ezra Beren's Motion to Dismiss, 18-cv-10936 (JSR), ECF No. 491 ("Beren Mem.") at 3. Far more egregiously, a great deal of the Trott plaintiffs' opposition brief is dedicated to alleging facts nowhere found in the pleadings regarding Beren's role in the Agera transactions, the Black Elk scheme, the bribery to Norman Seabrook, etc. See, e.g., Plaintiffs' Memorandum of Law in Opposition to Ezra Beren's Motion to Dismiss, 18-cv-10936 (JSR), ECF No. 497 at 9-17.

"It is axiomatic that the Complaint cannot be amended by the briefs in opposition to a motion to dismiss." Red Fort Capital, Inc. v. Guardhouse Prods, LLC, 397 F. Supp. 3d 456, 476 (S.D.N.Y. 2019); see also Reyes v. Cty. of Suffolk, 995 F. Supp. 2d 215, 220 (E.D.N.Y. 2014). Accordingly, the Trott plaintiffs' counsel are hereby directed to file with the Court by no later than January 3, 2020, a statement, not to exceed 5 double-spaced pages, explaining (if they can) why monetary sanctions should not be imposed for this obvious misconduct.

3

From March 2007 until December 2015, Beren served as Vice President of Platinum Management. In January 2016, Beren was hired by BAM (defined below) as a credit analyst. [SAC ¶ 113.]

[Beren] until the end of 2015 was an investment manager with responsibility for overseeing and managing PPVA's subsidiary RJ Credit and its various investments (e.g., PEDEVCO), among other investments, as well as a required member of the valuation committee that had responsibility for valuing all of PPVA's assets and investments and was paid a salary plus incentive compensation based on the increased value of the investments he managed, whether realized or unrealized. In 2014, Beren also entered into an investment management agreement with BAM, for which he was paid based on the performance of the investments he managed, so he personally benefitted from the inflated asset values assigned to PPVA's assets by the Platinum Defendants and from the inflated distributions, fees and other payments made to Platinum Management by PPVA. Beren worked for BAM/the Beechwood Entities even when those parties ostensibly were on opposite sides of a transaction from PPVA. As of January 1, 2016, he worked at BAM full time. [SAC ¶ 12(xiii).]

Due to his management role with Platinum Management and Beechwood, Beren was involved in the acts that comprise the First and Second Schemes, including the misrepresentation of PPVA's NAV, the creation of Beechwood and the series of transactions between Beechwood Entities and PPVA that are included in the Second Scheme. [SAC ¶ 144.]

Beren was a portfolio manager for various PPVA investments and in that capacity participated in meetings of the valuation committee. As such, he personally benefitted from the inflated asset values assigned to PPVA's assets by the Platinum Defendants, and from the inflated distributions, fees and other payments made to Platinum Management by PPVA. [SAC ¶ 115.]

4

> The portfolio managers, such as Small, Beren, Levy
> and Steinberg also contributed to valuation and risk
> determinations. [SAC ¶ 256.]

> The Platinum Defendants aggressively exercised this
> power, through Nordlicht, as well as through Levy and
> Small who were the portfolio managers for Black Elk.
> However, the other individual Platinum Defendants,
> including Bodner, Huberfeld, Landesman, Saks, Manela,
> SanFilippo, Ottensoser, Beren and Fuchs were aware of
> and participated in the actions and transactions with
> respect to Black Elk and the Black Elk Scheme as set
> forth below.  [SAC ¶ 466.]

The SAC brings claims against Beren, in his capacity as
part of the Platinum Defendants, for breach of fiduciary duty
(First and Second Counts), aiding and abetting breach of
fiduciary duty (Third Count), fraud (Fourth Count), constructive
fraud (Fifth Count), aiding and abetting fraud (Sixth Count),
civil conspiracy (Sixteenth Count), and civil RICO (Seventeenth
Count). It also brings claims against him, in his capacity as
part of the Beechwood Defendants, for aiding and abetting breach
of fiduciary duty (Seventh Count), aiding and abetting fraud
(Eighth Count), unjust enrichment (Fourteenth Count), civil
conspiracy (Sixteenth Count), and civil RICO (Seventeenth
Count).

## II.  **Analysis**

In order to survive a motion to dismiss, a plaintiff must
"state a claim to relief that is plausible on its face."

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).[2] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. When adjudicating a motion to dismiss, the Court "accept[s] all factual allegations in the complaint and draw[s] all reasonable inferences in the plaintiff's favor." ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007). Any claim rooted in fraud is subject to the heighted pleading standard of Rule 9(b). See Fed. R. Civ. P. 9(b).

The relevant legal standards for each specific claim are set forth in the earlier Opinions and Orders of this Court disposing of other defendants' motions to dismiss the SAC and the SHIP TPC. See In re Platinum-Beechwood Litig., No. 18-cv-10936 (JSR), 2019 WL 1570808, at *8-10 (S.D.N.Y. Apr. 11, 2019) ("Trott FAC MTD Opinion"); In re Platinum-Beechwood Litig., No. 18-cv-10936 (JSR), 2019 WL 2569653, at *2-4 (S.D.N.Y. June 21, 2019) ("Trott SAC MTD Opinion"); In re Platinum-Beechwood Litig., No. 18-cv-12018 (JSR), 2019 WL 4934967, at *20-25 (S.D.N.Y. Oct. 7, 2019) ("Cyganowski MTD Opinion").

---

[2] Unless otherwise indicated, in quoting cases all internal quotation marks, alterations, emphases, footnotes, and citations are omitted.

## A. Fraud-Based Claims (First Through Eighth Counts)

### 1. Threshold Question: Whether the Group Pleading Doctrine Applies

Under Fed. R. Civ. P. 9(b), when bringing claims sounding in fraud, a plaintiff must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." Lerner v. Fleet Bank, N.A., 459 F.3d 273, 290 (2d Cir. 2006). Notwithstanding Rule 9(b)'s particularity requirement, however, a plaintiff is not always obligated to identify the misstatements or omissions made by each defendant. Instead, "[t]he group pleading doctrine allows particular statements or omissions to be attributed to individual defendants even when the exact source of those statements is unknown." Anwar v. Fairfield Greenwich Ltd., 728 F. Supp. 2d 372, 405 (S.D.N.Y. 2010). "In order to invoke the group pleading doctrine against a particular defendant the complaint must allege facts indicating that the defendant was a corporate insider, with direct involvement in day-to-day affairs, at the entity issuing the statement." In re Alstom SA, 406 F. Supp. 2d 433, 449 (S.D.N.Y. 2005).

For the purpose of these fraud-based Counts, the relevant "statements" at issue include the Platinum Defendants'

persistently inflated reports of PPVA's net asset value ("NAV"),
as discussed in the Trott FAC MTD Opinion. See 2019 WL 1570808,
at *15.

The parties dispute as to whether these statements are
attributable to Beren pursuant to the group pleading doctrine.
Although the Court recognizes that, as Beren argues, other
Platinum Defendants such as David Bodner, Murray Huberfeld,
David Ottensoser, and David Levy allegedly held more influential
positions than Beren, see Beren Mem. 8-9, Beren nonetheless
"held a high level position indicating that he was an insider,
with direct involvement in day-to-day affairs." In re Alstom SA,
406 F. Supp. 2d at 449. Beren is alleged to have been a Vice
President of the Platinum Management, portfolio manager for
various PPVA investments, and "required member of the valuation
committee," which had "responsibility for valuing all of PPVA's
assets and investments." SAC ¶ 12(xiii). A deep involvement in
the valuation committee is far from tangential to the SAC's key
allegations. Furthermore, Beren's involvement in the valuation
process, which lies at the core of the First Scheme and the
Second Scheme, is repeatedly emphasized in the SAC. See, e.g.,
SAC ¶¶ 12(xiii), 115, 256. In sum, these allegations are
sufficient to charge him with the alleged misstatements of
PPVA's NAV.

8

## 2. Claims for Fraud and Aiding and Abetting Fraud (Fourth, Sixth, and Eighth Counts)

Having determined that the SAC ties Beren to Platinum Management's misstatements, the Court next turns to the issue of scienter. A strong inference of fraudulent intent "may be established either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." Shields v. Citytrust Bancorp, Inc., 25 F.3d 1124, 1128 (2d Cir. 1994).

Beren argues that the allegations against Bodner, Huberfeld, Landesman, Levy, and Ottensoser regarding scienter are considerably more robust than the allegations against Beren, and that the allegations against Beren do not establish scienter. Beren Mem. 11-13. However, to the contrary, the SAC has alleged enough facts to give rise to a strong inference of fraudulent intent on Beren's part. In addition to being Vice President, portfolio manager, and required member of the valuation committee, Beren was allegedly paid a salary plus incentive compensation based on the increased value of the investments he managed, whether realized or unrealized. See SAC ¶¶ 12(xiii), 115. Furthermore, Beren is also alleged to have participated in the fraudulent valuation of PPVA's NAV and

9

worked for certain Beechwood entities, even when these Beechwood entities were on opposite sides of a transaction from PPVA. Id. These allegations sufficiently constitute "facts to show that [Beren] had both motive and opportunity to commit fraud," Shields, 25 F.3d at 1128, rather than just a "simple desire to make more money" as Beren claims, Beren Mem. 13. Therefore, the Court denies the motion to dismiss the Fourth Count (fraud).

In addition, the Court denies the motion to dismiss the Sixth Count (aiding and abetting fraud, against the Platinum Defendants), as it follows from the Trott plaintiffs' plausible allegations of primary actor liability in connection with the fraudulent inflation of PPVA's NAV that the Trott plaintiffs have plausibly alleged secondary liability as well. Accordingly, the Court also denies the motion to dismiss the Eighth Count (aiding and abetting fraud, against the Beechwood Defendants), as the Court did for other Platinum Defendants who were also Beechwood Defendants. See Trott FAC MTD Opinion, 2019 WL 1570808, at *17 n.10.

### 3. Claims for Breach of Fiduciary Duty, Aiding and Abetting Breach of Fiduciary Duty, and Constructive Trust (First, Second, Third, Fifth, and Seventh Counts)

In addition to the claims discussed above, the SAC also brings claims that require the Trott plaintiffs to allege that

10

Beren owed PPVA a fiduciary duty. "In determining whether a
fiduciary duty exists, the focus is on whether one person has
reposed trust or confidence in another and whether the second
person accepts the trust and confidence and thereby gains a
resulting superiority or influence over the first." Indep. Asset
Mgmt. LLC v. Zanger, 538 F. Supp. 2d 704, 709 (S.D.N.Y. 2008).

Here, it is plausibly alleged that such a personal
relationship of trust and confidence exists between Beren and
PPVA. Beren was "an investment manager with responsibility for
overseeing and managing PPVA's subsidiary RJ Credit and its
various investments (e.g., PEDEVCO), among other investments."
SAC ¶ 12(xiii). In particular, where a "defendant had
discretionary authority to manage [a plaintiff's] investment
accounts, it owed [the plaintiff] a fiduciary duty of the
highest good faith and fair dealing." Assured Guar. (UK) Ltd. v.
J.P. Morgan Inv. Mgmt. Inc., 915 N.Y.S.2d 7, 16 (1st Dep't
2010), aff'd, 962 N.E.2d 765 (N.Y. 2011). For this reason, the
Court denies Beren's motion to dismiss the First and Second
Counts (breach of fiduciary duty).

As with the claim for fraud, the SAC plausibly alleges the
claim for aiding and abetting breach of fiduciary duty, because
Beren's secondary actor liability follows from his primary actor
liability and because the Court has previously determined that

11

other Platinum Defendants owed fiduciary duty to PPVA.

Therefore, the Court denies Beren's motion to dismiss the Third
Count (aiding and abetting breach of fiduciary duty, against the
Platinum Defendants). Accordingly, the Court also denies the
motion to dismiss the Seventh Count (aiding and abetting breach
of fiduciary duty, against the Beechwood Defendants), as the
Court did for other Platinum Defendants who were also Beechwood
Defendants. See Trott FAC MTD Opinion, 2019 WL 1570808, at *18
n.11.

Lastly, because the Trott plaintiffs have plausibly alleged
Beren's fiduciary duty to PPVA, they have also stated a claim
for constructive fraud. See Brown v. Lockwood, 432 N.Y.S.2d 186,
193-94 (2d Dep't 1980) ("The elements of a cause of action to
recover for constructive fraud are the same as those to recover
for actual fraud with the crucial exception that the element of
scienter upon the part of the defendant . . . is replaced by a
requirement that the plaintiff prove the existence of a
fiduciary or confidential relationship . . . ."). Therefore, the
Court denies Beren's motion to dismiss the Fifth Count
(constructive fraud).

**B. Unjust Enrichment, Civil Conspiracy, and Civil RICO
Claims (Fourteenth, Sixteenth, and Seventeenth Counts)**

The Court denies the motion to dismiss the Fourteenth Count (unjust enrichment), because Beren has not set forth any reason in his briefs as to why the Court should grant the motion to dismiss this claim.

As to the Sixteenth Count alleging civil conspiracy, under New York law civil conspiracy is not an independent tort. Instead, "[a]ll that an allegation of conspiracy can accomplish is to connect nonactors, who otherwise might escape liability, with the acts of their co-conspirators." Burns Jackson Miller Summit & Spitzer v. Lindner, 452 N.Y.S.2d 80, 93-94 (2nd Dep't 1982), aff'd, 451 N.E.2d 459 (N.Y. 1983). Here, the civil conspiracy claim, just like the aiding and abetting claims, seeks to hold Beren secondarily liable for the underlying tort - primary fraud and breach of fiduciary duty - committed by other primary actors such as the Platinum Defendants, and the factual allegations of the Sixteenth Count are essentially identical to those set forth in the aiding and abetting claims. That is, the Trott plaintiffs' conspiracy claim is, on any scenario, entirely duplicative of their aiding and abetting claims, and thus the Court dismisses the conspiracy claim against Beren.[3] See SAC ¶¶

_____

[3] Each dismissal in this Memorandum Order is with prejudice. For most of the claims dismissed, the dismissal cannot be avoided simply by better pleading. And with discovery due to close on

13

960-67; see also Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo
Sec., LLC, No. 12-cv-3723 (RJS), 2016 WL 5719749, at *8
(S.D.N.Y. Sept. 29, 2016) ("In cases in which Plaintiffs' aiding
and abetting claims overlap with their conspiracy claims, New
York courts have allowed the aiding and abetting claims to
proceed, but have dismissed as duplicative the conspiracy
claims.").

Lastly, the civil RICO claim against Beren (the Seventeenth
Count) should be dismissed for the same reason that the claim
was dismissed against all moving defendants in the Trott SAC MTD
Opinion — i.e., the RICO claim is barred by the RICO amendment,
which provides that "no person may rely upon any conduct that
would have been actionable as fraud in the purchase or sale of
securities to establish a violation of section 1962." 18 U.S.C.
§ 1964(c).

## The SHIP Amended Third-Party Complaint in the Cyganowski Action

## I.    Allegations in the SHIP Amended Third-Party Complaint

The following allegations against Beren are taken from the
SHIP TPC and are assumed true for the purposes of assessing the
motion to dismiss the claims against him in the SHIP TPC.

---

December 31, 2019, it is far too late for the relevant
plaintiffs, who were late in serving Beren, to try to rectify
the scheduling problems that any such belated amendments would
create.

14

Beren is part of the groups called the "Co-Conspirator

Defendants," the "Platinum Insiders," and the "Beechwood

Insiders" in the SHIP TPC. SHIP TPC ¶¶ 1 n.4, 4 n.8, 29 n.17.

Familiarity with the general allegations against the Co-

Conspirator Defendants, the Platinum Insiders, and the Beechwood

Insiders is here assumed. See generally SHIP TPC. Other than

those instances of group pleading, individualized allegations

against Beren include:

> From March 2007 until December 2015, Beren served as
> Vice President of Platinum Management. In January
> 2016, Beren was hired by BAM. According to the New
> York Department of Financial Services, "[i]n a letter
> to the Indiana Department of Insurance, Beechwood
> described Ezra Beren, Murray Huberfeld's son-in-law,
> as a 'junior credit analyst on [its] fixed income
> team' with no 'decision-making ability regarding
> investments' or 'managerial control within the
> investment team.'" To the contrary, Beren's public
> LinkedIn profile stated that he was a "Portfolio
> Manager at B Asset Manager" starting in January of
> 2016, prior to which he listed his employment with
> Platinum Management starting in March 2011. Beren's
> LinkedIn profile was a clear attempt to maintain the
> illusion that the Beechwood Entities and Platinum
> Management were separate entities. As Feuer revealed
> to lawyers in an August 2, 2016 interview, Beren had
> been working out of the Beechwood Entities' offices
> "for years." In fact, Beren was engaged as a
> portfolio manager for BAM beginning in 2014, at the
> same time as he was working as a portfolio manager
> for PPVA. As a portfolio manager for various PPVA
> investments, Beren participated in meetings of the
> Platinum Management valuation committee and helped
> set the inflated PPVA valuations, which he personally
> benefited from in the form of performance fees based
> on those valuations. Due to his management roles with
> Platinum Management and BAM, Beren was heavily

15

> involved in numerous aspects of the conspiracy,
> including the misrepresentation of PPVA's NAV, the
> creation of the Beechwood Entities, and the series of
> transactions between the Beechwood Entities and PPVA,
> including the Pedevco investments. [SHIP TPC § 42.]

> As portfolio managers, Small, Beren, Levy and
> Steinberg also contributed to the valuation
> committees [sic] valuation assessments. [SHIP TPC §
> 327.]

> As portfolio managers, Small, Beren, Levy and
> Steinberg also contributed to risk determinations.
> [SHIP TPC § 328.]

The SHIP TPC brings claims against Beren for aiding and abetting fraud (First Count), aiding and abetting breach of fiduciary duty (Second Count), civil conspiracy (Fifth Count), and unjust enrichment (Seventh Count).

## II. Analysis

Here, SHIP did not file any opposition brief to Beren's instant motion. In deciding an unopposed motion to dismiss, the Court "assume[s] the truth of a pleading's factual allegations and test[s] only its legal sufficiency. Thus, although a party is of course to be given a reasonable opportunity to respond to an opponent's motion, the sufficiency of a complaint is a matter of law that the court is capable of determining based on its own reading of the pleading and knowledge of the law." McCall v. Pataki, 232 F.3d 322 (2d Cir.2000).

### A. Aiding and Abetting Claims (First and Second Counts)

16

The First and Second Counts allege, inter alia, that Beren "served in dual roles at Platinum and Beechwood and were directly involved in the valuation of, or transactions related to, various Platinum investments into which SHIP's funds ultimately were invested." SHIP TPC ¶¶ 415, 424. For substantially the same reason as stated above in the case of the SAC in the Trott action, various statements regarding overvaluation of the Platinum assets are attributable to Beren pursuant to the group pleading doctrine. Therefore, the Court denies the motion to dismiss the aiding and abetting claims against Beren.

## B. Claims for Civil Conspiracy and Unjust Enrichment (Fifth and Seventh Counts)

The Court dismisses the Fifth Count (civil conspiracy) and the Seventh Count (unjust enrichment) against Beren for the same reasons that those claims against other moving defendants were dismissed in the Cyganowski MTD Opinion. 2019 WL 4934967, at *51-53. In particular, the civil conspiracy claim is dismissed as it is largely duplicative of the aiding and abetting claims. See SHIP TPC ¶¶ 445-53. The unjust enrichment claim is dismissed, because "[t]he existence of a valid and enforceable written contract governing a particular subject matter" — i.e., three investment management agreements between SHIP and the

17

relevant Beechwood Parties — "precludes recovery in quasi contract for events arising out of the same subject matter," the Fifth Count against Beren should be dismissed. Clark-Fitzpatrick, Inc. v. Long Island R. Co., 516 N.E.2d 190, 193 (N.Y. 1987).

## **Conclusion**

For the foregoing reasons, the Court grants Beren's motion to dismiss, with prejudice, the claims for civil conspiracy and civil RICO in the SAC and the claims for civil conspiracy and unjust enrichment in the SHIP TPC, but denies the motion in all other respects.

The Clerk of the Court is directed to close the entries at docket numbers 490 in 18-cv-10936, 472 in 18-cv-12018, and 704 in 18-cv-6658.

SO ORDERED.

Dated:    New York, NY
          December 24, 2019        JED S. RAKOFF, U.S.D.J.