# EXHIBIT 6

# SECOND AMENDED AND RESTATED

## LIMITED PARTNERSHIP AGREEMENT

## OF

## PLATINUM PARTNERS VALUE ARBITRAGE FUND L.P.

Dated

July 1, 2008

# Table of Contents

Page #

**Article I General Provisions**..........................................................................................................**1**

Section 1.01.    Formation of Limited Partnership.................................................................1
Section 1.02.    Partnership Name..........................................................................................2
Section 1.03.    Filing of Additional Statements....................................................................2
Section 1.04.    Registered Office...........................................................................................2
Section 1.05.    Fiscal Year.....................................................................................................2
Section 1.06.    Purposes of Partnership.................................................................................2
Section 1.07.    Liability of Partners.......................................................................................4
Section 1.08.    Assignability of Interest................................................................................5
Section 1.09.    Business with the Public................................................................................5

**Article II Management of Partnership**..........................................................................................**5**

Section 2.01.    General Partner..............................................................................................5
Section 2.02.    Management Generally...................................................................................5
Section 2.03.    Authority of General Partner.........................................................................5
Section 2.04.    Reliance by Third Parties...............................................................................6
Section 2.05.    Activity of the General Partner......................................................................6
Section 2.06.    Exculpation....................................................................................................6
Section 2.07.    Indemnification of General Partner...............................................................7
Section 2.08.    Payment of Costs and Expenses....................................................................7
Section 2.09.    Salaries or Other Payments...........................................................................8

**Article III Capital Accounts of Partners and Operation Thereof**............................................**8**

Section 3.01.    Definitions.....................................................................................................8
Section 3.02.    Capital Contributions....................................................................................9
Section 3.03.    Capital Accounts............................................................................................9
Section 3.04.    Partnership Percentages...............................................................................10
Section 3.05.    Allocation of Net Capital Appreciation and Net Capital Depreciation........10
Section 3.06.    Net Asset Value...........................................................................................11
Section 3.07.    Liabilities.....................................................................................................13
Section 3.08.    Allocation for Tax Purposes........................................................................13
Section 3.09.    Determination by General Partner of Certain Matters.................................13
Section 3.10.    Adjustments to Take Account of Interim Year Events.................................13

**Article IV Withdrawals and Distributions of Capital**..............................................................**14**

Section 4.01.    Withdrawals and Distributions in General...................................................14
Section 4.02.    Withdrawals.................................................................................................14
Section 4.03.    Limitation on Withdrawals..........................................................................15
Section 4.04.    Distributions.................................................................................................15

**Article V Admission of New Partners**.........................................................................................**16**

Section 5.01.    New Partners................................................................................................16

**Article VI Death, Disability, Bankruptcy or Withdrawal of Partners** ................................... 16

Section 6.01.    Withdrawal, Death, etc. of General Partner ..................................................... 16
Section 6.02.    Withdrawal, Bankruptcy, etc. of Limited Partner ........................................... 17
Section 6.03.    Effective Date of Withdrawal ......................................................................... 17
Section 6.04.    Required Withdrawals ..................................................................................... 17
Section 6.05.    Limitations on Withdrawal of Capital Accounts ............................................ 17

**Article VII Duration and Dissolution of Partnership** .......................................................... 18

Section 7.01.    Duration ........................................................................................................... 18
Section 7.02.    Dissolution ....................................................................................................... 18
Section 7.03.    Extension of Term ........................................................................................... 19

**Article VIII Tax Returns; Reports to Partners** ................................................................... 19

Section 8.01.    Auditors ............................................................................................................ 19
Section 8.02.    Filing of Tax Returns ....................................................................................... 19
Section 8.03.    Reports to Partners .......................................................................................... 20
Section 8.04.    Reports to Partners and Former Partners ......................................................... 20
Section 8.05.    Tax Matters Partner ......................................................................................... 20

**Article IX Miscellaneous** ...................................................................................................... 21

Section 9.01.    General ............................................................................................................. 21
Section 9.02.    Power of Attorney ............................................................................................ 21
Section 9.03.    Amendments to Partnership Agreement ........................................................... 21
Section 9.04.    Adjustment of Basis of Partnership Property ................................................... 22
Section 9.05.    Choice of Law .................................................................................................. 22
Section 9.06.    Submission to Jurisdiction ............................................................................... 22
Section 9.07.    Notices ............................................................................................................. 22
Section 9.08.    Registers ........................................................................................................... 23
Section 9.09.    Goodwill .......................................................................................................... 23
Section 9.10.    Headings ........................................................................................................... 23
Section 9.11.    Waiver of Rights .............................................................................................. 23

## SECOND AMENDED AND RESTATED

## LIMITED PARTNERSHIP AGREEMENT

### OF

## PLATINUM PARTNERS VALUE ARBITRAGE FUND L.P.

**THIS SECOND AMENDED AND RESTATED LIMITED PARTNERSHIP AGREEMENT** (this "Agreement") of Platinum Partners Value Arbitrage Fund L.P., a Cayman Islands exempted limited partnership (the "Partnership") is entered into as of July 1, 2008 by and among Platinum Management (NY) LLC, a Delaware limited liability company and General Partner of the Partnership (the "General Partner"), Platinum Partners Value Arbitrage Fund (USA) L.P., a Delaware limited partnership ("Platinum USA"), and Platinum Partners Value Arbitrage Fund (International) Limited, a Cayman Islands exempted company ("Platinum International," and together with Platinum USA and all other parties who sign a limited partner signature page attached to this Agreement to become limited partners of the Partnership, the "Limited Partners"). The Limited Partners, the General Partner and any person hereafter admitted to the Partnership pursuant to Article V hereof, but excluding any person who ceases to be a Partner pursuant to Article VI hereof, are collectively referred to herein as the "Partners". The Partnership is and the terms of this Agreement are subject to the provisions of the Cayman Islands Exempted Limited Partnership Law (2001 Revision), as amended from time to time (the "Law").

## ARTICLE I

## GENERAL PROVISIONS

### Section 1.01.  Formation of Limited Partnership.

(a) The General Partner and the Limited Partners have heretofore associated themselves and agreed to become partners and have formed the Partnership as an exempted limited partnership under the Law upon the filing with the Cayman Islands Registrar of Exempted Limited Partnerships of a statement pursuant to Section 9 of the Law.

(b) In connection with the formation of the Partnership, the General Partner and Harry Adler (the "Withdrawing Partner") entered into a limited partnership agreement dated December 13, 2002, that was amended and restated on December 31, 2002 (in connection with the Withdrawing Partner's withdrawal from the Partnership), which the parties now wish to further amend and restate in its entirety as set forth below.

(c) In furtherance thereof, the parties hereto do hereby confirm their agreement that the Partners do hereby associate themselves and agree to become partners of the Partnership.

  
(d) Throughout the Partnership's term, the General Partner shall take all reasonable steps necessary to keep the Partnership in good standing and in compliance with the Law.

Section 1.02.  Partnership Name.  The name of the Partnership is Platinum Partners Value Arbitrage Fund L.P.

Section 1.03.  Filing of Additional Statements.  The General Partner shall cause to be prepared and filed any additional statements, any fictitious name certificates, and any other documents required by, or desirable to comply with, the laws of the Cayman Islands and any other jurisdiction in which the Partnership shall carry on its business or otherwise be required to preserve the limited liability of the Limited Partners.

Section 1.04.  Registered Office.  The registered office of the Partnership in the Cayman Islands shall be at the offices of Walkers SPV Limited, Walker House, Mary Street, P.O. Box 908, George Town, Grand Cayman, Cayman Islands, or at such other address as the General Partner may from time to time determine.

Section 1.05.  Fiscal Year.  The fiscal year of the Partnership (herein called the "fiscal year") shall end on December 31 of each year or on such other date as the General Partner shall determine.

Section 1.06.  Purposes of Partnership.

(a) The Partnership is organized for the purposes of realizing capital appreciation by investing and trading in U.S. and non-U.S. Securities (as hereinafter defined) and to engage in all activities and transactions as the General Partner may deem necessary or advisable in connection therewith, including, without limitation:

(i)  to invest on margin, to engage in short sales and option writing, to enter into repurchase agreements and reverse repurchase agreements or to engage in such other investment techniques as the General Partner believes to be appropriate;

(ii)  to purchase, hold, sell, exchange, transfer and otherwise acquire and dispose of and exercise all rights, powers, privileges and other incidents of ownership or possession with respect to Securities and other property, funds or rights held or owned by the Partnership including, without limitation, such property, funds or rights which constitute non-traditional investment instruments;

(iii)  to allocate and invest discrete segments of the Partnership's assets to entities managed by others ("Portfolio Entities") and, pursuant to agreements granting trading authority over the segments of the Partnership's assets, to investment managers selected by the General Partner ("Managed Accounts"); provided, that the General Partner shall be responsible for monitoring the trading activities of the Partnership, the Portfolio Entities and the Managed Accounts;

(iv)  to borrow or raise moneys, and to issue, accept, endorse and execute promissory notes and other negotiable or non-negotiable instruments and evidences

of indebtedness, and to secure the payment of such or other obligations of the Partnership by hypothecation or pledge of all or part of the property of the Partnership, whether at the time owned or thereafter acquired:

           (v)    to engage personnel, including Affiliates (as defined in Section 2.05) of the General Partner, whether part-time or full-time, and do such other acts as the General Partner may deem necessary or advisable in connection with the maintenance and administration of the Partnership; and

           (vi)    to engage attorneys, independent accountants, consultants, investment managers, investment advisors, traders or such other persons as the General Partner may deem necessary or advisable.

    (b) The Partnership's arrangements with each Portfolio Entity or Managed Account in which the Partnership has invested shall be subject to such terms and conditions as shall be set forth in an agreement between the Partnership and the Portfolio Entity or the portfolio manager of the Managed Account, which may authorize the Portfolio Entity or the portfolio manager of the Managed Account to invest on margin, to engage in short sales and option writing, to enter into repurchase agreements or reverse repurchase agreements or to engage in such other investment techniques as the General Partner believes to be appropriate.

    (c) "<u>Security</u>" or "<u>Securities</u>" shall mean securities and other financial instruments of U.S. and non-U.S. entities, including, without limitation, capital stock; shares of beneficial interest; partnership interests and similar financial instruments; mortgage-backed securities; interests in real estate and real estate related assets; bonds, notes, debentures (whether subordinated, convertible, secured, unsecured or otherwise); currencies; commodities; interest rate, currency, commodity, equity and other derivative products, including, without limitation, (i) futures contracts (and options thereon) relating to stock indices, currencies, U.S. government securities and securities of non-U.S. governments, other financial instruments and all other commodities, (ii) swaps, options, warrants, caps, collars, floors and forward rate agreements, (iii) spot and forward currency transactions and (iv) agreements relating to or securing such transactions; equipment lease certificates; equipment trust certificates; loans; accounts and notes receivable and payable held by trade or other creditors; trade acceptances; contract and other claims; executory contracts; participations; mutual funds; money market funds; obligations of the U.S. or any state thereof, non-U.S. governments and instrumentalities of any of them; commercial paper; certificates of deposit; banker's acceptances; trust receipts; and other obligations and instruments or evidences of indebtedness of whatever kind or nature; in each case, of any person, corporation, government or other entity whatsoever, whether or not publicly traded or readily marketable.

Section 1.07. Liability of Partners. The names and addresses of all of the Partners and the amounts of their respective contributions to the Partnership are set forth in the schedule of Capital Contributions and Partnership Percentages which shall be filed with the books and records of the Partnership and is hereby incorporated by reference and made a part of this Agreement (herein called the "Schedule").

The General Partner and all other Partners who are designated in the books and records of the Partnership as general partners of the Partnership (and former general partners) shall have unlimited liability for the repayment and discharge of all debts and obligations of the Partnership attributable to any fiscal year during which they are or were general partners.

The Limited Partners and all other Partners who are designated in the books and records of the Partnership as limited partners of the Partnership (and former limited partners) shall be liable for the repayment and discharge of all debts and obligations of the Partnership to the extent provided in the Law. In addition, the Limited Partners and former limited partners shall be liable for the repayment and discharge of all debts and obligations of the Partnership attributable to any fiscal year (or relevant portion thereof) during which they are or were limited partners of the Partnership to the extent of their respective interests in the Partnership in the fiscal year (or relevant portion thereof) to which any such debts and obligations are attributable.

The Partners and all former partners shall share all losses, liabilities or expenses suffered or incurred by virtue of the operation of the preceding paragraphs of this Section 1.07 in the proportions of their respective Partnership Percentages (determined as provided in Section 3.04) for the fiscal year (or relevant portion thereof) to which any debts or obligations of the Partnership are attributable. A Limited Partner's or former limited partner's share of all losses, liabilities or expenses shall not be greater than its respective interest in the Partnership for such fiscal year (or relevant portion thereof). The General Partner and all former general partners shall be liable for the losses, liabilities or expenses in excess of the interests of the Limited Partners and former limited partners in such proportion as the General Partner shall determine.

As used in this Agreement, the terms "interests in the Partnership," "interest in the Partnership," "Partnership interests" and "Partnership interest" shall mean with respect to any fiscal year (or relevant portion thereof) and with respect to each Partner or former partner, the amount of the Capital Account (as defined in Section 3.03) that such Partner (or former partner) would have received, or in fact did receive, pursuant to the terms and provisions of Article VI upon withdrawal from the Partnership as of the end of such fiscal year (or relevant portion thereof).

Notwithstanding any other provision in this Agreement, in no event shall any Limited Partner or former limited partner be obligated to make any additional contribution or payment whatsoever to the Partnership, or have any liability for the repayment and discharge of the debts and obligations of the Partnership (apart from its interest in the Partnership), except that a Limited Partner or former limited partner (i) may be required to repay a payment made to it by the Partnership in the circumstances specified in Section 14(2) of the Law and (ii) shall, in the discretion of the General Partner, be required, for purposes of meeting its obligations under this Section 1.07, to make additional contributions or payments, respectively, up to, but in no event in

-4-

excess of, the aggregate amount of returns of capital and other amounts actually received by it from the Partnership during or after the fiscal year to which any debt or obligation is attributable.

As used in this Agreement, the terms "former general partners," "former limited partners" and "former partners" refer to such persons or entities as hereafter from time to time cease to be General Partner, Limited Partners or Partners, respectively, pursuant to the terms and provisions of this Agreement.

Section 1.08.  Assignability of Interest.  Without the prior written consent of the General Partner, which may be withheld in its sole and absolute discretion, a Partner may not (i) pledge, transfer or assign its interest in the Partnership in whole or in part to any person except by operation of law or (ii) substitute for itself as a Partner any other person.  Any attempted pledge, assignment or substitution not made in accordance with the preceding sentence shall be void.

Section 1.09.  Business with the Public.  The Partnership shall not undertake any business with the public of the Cayman Islands other than so far as may be necessary for the carrying on of the business of the Partnership exterior to the Cayman Islands.

## ARTICLE II

## MANAGEMENT OF PARTNERSHIP

Section 2.01.  General Partner.  The Partnership shall at all times have at least one general partner registered or incorporated in the Cayman Islands.

Section 2.02.  Management Generally.  The management of the Partnership shall be vested exclusively in the General Partner.  The Limited Partners shall have no part in the management of the Partnership, and shall have no authority or right to act on behalf of the Partnership in connection with any matter.

Section 2.03.  Authority of General Partner.  The General Partner shall have the power by itself on behalf and in the name of the Partnership to carry out any and all of the objects and purposes of the Partnership set forth in Section 1.06, and to perform all acts and enter into and perform all contracts and other undertakings which it may deem necessary or advisable or incidental thereto, including, without limitation, the power to:

(a) open, maintain and close accounts with broker-dealers and other clearing organizations and issue all instructions and authorizations to broker-dealers and other clearing organizations regarding the Securities and/or money therein;

(b) open, maintain and close bank accounts and draw checks or other orders for the payment of monies;

(c) lend, with or without security, any of the Securities, funds or other properties of the Partnership, including by entering into reverse repurchase agreements and, from time to time without limit as to amount, borrow or raise funds, including by entering into

repurchase agreements, and to secure the payment of obligations of the Partnership by mortgage upon, or pledge or hypothecation of, all or any part of the property of the Partnership;

(d) commit segments of the Partnership's assets from time to time for investment in Portfolio Entities and Managed Accounts and to enter into discretionary investment management agreements with portfolio managers relating to the Partnership's investments;

(e) do any and all acts on behalf of the Partnership, and exercise all rights of the Partnership, with respect to its interest in any person, firm, corporation or other entity, including, without limitation, the voting of Securities, participation in arrangements with creditors, the institution and settlement or compromise of suits and administrative proceedings and other like or similar matters;

(f) organize one or more corporations, partnerships or other subsidiary entities formed to hold record title, as nominee for the Partnership, of Securities or funds of the Partnership; and

(g) authorize any employee or other agent of the Partnership to act for and on behalf of the Partnership in all matters incidental to the foregoing.

Section 2.04. Reliance by Third Parties. Persons dealing with the Partnership are entitled to rely conclusively upon the power and authority of the General Partner as herein set forth.

Section 2.05. Activity of the General Partner. The General Partner and its Affiliates (as defined below) shall devote so much of their time to the affairs of the Partnership as in the judgment of the General Partner the conduct of its business shall reasonably require, and none of the General Partner or Affiliates shall be obligated to do or perform any act or thing in connection with the business of the Partnership not expressly set forth herein. Nothing herein contained shall be deemed to preclude the General Partner or Affiliates from exercising investment responsibility, engaging directly or indirectly in any other business, or from directly or indirectly purchasing, selling, holding or otherwise dealing with any Securities for the account of any such other business, for its or their own accounts, for any family members or for other clients. No Limited Partner shall, by reason of being a Partner in the Partnership, have any right to participate in any manner in any profits or income earned or derived by or accruing to the General Partner or any Affiliate from the conduct of any business other than the business of the Partnership (to the extent provided herein) or from any transaction in Securities effected by the General Partner or such Affiliate for any account other than that of the Partnership.

As used herein, "Affiliate" shall mean any person, corporation, partnership, limited liability company, or other entity who: (1) directly or indirectly controls, is controlled by, or is under common control with, such person; (2) directly or indirectly owns or controls 10% or more of the outstanding voting securities of such person; or (3) is a member, manager, director, officer, employee, broker or agent of such person.

Section 2.06. Exculpation. None of the General Partner or its Affiliates shall be liable to any Limited Partner or the Partnership for mistakes of judgment or for action or inaction

which said person reasonably believed to be in the best interests of the Partnership, or for losses due to such mistakes, action or inaction or to the negligence, dishonesty or bad faith of any employee, broker or other agent of the Partnership, provided that such employee, broker or agent was selected, engaged or retained by the Partnership with reasonable care. Each of the General Partner and its Affiliates may consult with counsel and accountants in respect of Partnership affairs and be fully protected and justified in any action or inaction which is taken in accordance with the advice or opinion of such counsel and/or accountants, provided that they shall have been selected with reasonable care.

Notwithstanding any of the foregoing to the contrary, the provisions of this Section 2.06 shall not be construed so as to provide for the exculpation of the General Partner or any of its Affiliates for any liability (including liability under U.S. securities laws which, under certain circumstances, impose liability even on persons that act in good faith), to the extent (but only to the extent) that such exculpation would be in violation of applicable law, but shall be construed so as to effectuate the provisions of this Section 2.06 to the fullest extent permitted by law.

Section 2.07. Indemnification of General Partner. To the fullest extent permitted by law, the Partnership shall indemnify and hold harmless the General Partner, each Affiliate of the General Partner, each direct or indirect general or limited partner, director, officer, employee, agent, member and shareholder of the General Partner, or of any Affiliate of the General Partner and each person who otherwise serves as an advisor, consultant or legal representative to the General Partner in respect of the Partnership's affairs (each an "Indemnified Party") from and against any loss or expense suffered or sustained by an Indemnified Party by reason of the fact that it is or was an Indemnified Party, including, without limitation, any judgment, settlement, reasonable attorney's fees and other costs or expenses incurred in connection with the defense of any actual or threatened action or proceeding, provided that such loss or expense resulted from a mistake of judgment on the part of an Indemnified Party, or from action or inaction that said Indemnified Party reasonably believed to be in the best interests of the Partnership. The Partnership shall, in the sole discretion of the General Partner, advance to any Indemnified Party, reasonable attorney's fees and other costs and expenses incurred in connection with the defense of any action or proceeding that arises out of such conduct. The Indemnified Parties shall agree that in the event an Indemnified Party receives any such advance, such Indemnified Party shall reimburse the Partnership for such fees, costs and expenses to the extent it shall be determined that it was not entitled to indemnification under this section. Notwithstanding any of the foregoing to the contrary, the provisions of this Section 2.07 shall not be construed so as to provide for the indemnification of the General Partner or its Affiliates for any liability (including liability under U.S. securities laws which, under certain circumstances, impose liability even on persons that act in good faith), to the extent (but only to the extent) that such indemnification would be in violation of applicable law, but shall be construed so as to effectuate the provisions of this Section 2.07 to the fullest extent permitted by law.

Section 2.08. Payment of Costs and Expenses. The Partnership shall bear all of its administrative, non-administrative, trading and operating expenses, including, but not limited to, rent, administrative services, Compensation (as defined below), all taxes, organizational and investment expenses (i.e., expenses which the General Partner reasonably determines to be directly or indirectly related to the investment of the Partnership's assets, such as brokerage

-7-

commissions and interest expense, etc.), legal expenses, compliance expenses, professional expenses (including, without limitation, expenses of consultants and experts), escrow expenses, internal and external accounting expenses, audit and tax preparation expenses and premiums for general partner liability insurance, custodial fees, costs incurred in forming the Partnership and any extraordinary expenses. On the date that the Limited Partners make their Initial Capital Contributions (as defined in Section 3.02(a)), the Partnership shall reimburse the General Partner for all expenses incurred by it or any of its Affiliates that are attributable to the organization of the Partnership. The Partnership may share office space, services and personnel with other businesses conducted by the General Partner or its Affiliates and, in such event, shall bear a proportionate share of the associated costs. If any of the above expenses are incurred jointly for the account of the Partnership and any other entity or business managed by the General Partner or its Affiliates, such expenses will be allocated among the Partnership and such other entities or businesses in such manner as the General Partner considers fair and reasonable. At the discretion of the General Partner, the organizational expenses of the Partnership shall be capitalized and amortized over a period of five years starting on the date of this Agreement.

Section 2.09. Salaries or Other Payments. The Partnership may pay a reasonable salary or other compensation to the General Partner or its members at an annual rate and in such installments as may be approved by the General Partner in its sole discretion and shall reimburse the General Partner for all expenses it incurs on behalf of the Partnership or the Master Partnership. The Partnership may also pay compensation, including fringe benefits, bonuses, fees, and incentive compensation to other persons who render services to the Partnership at an annual rate and in such installments as shall be approved by the General Partner. Any salary or compensation ("Compensation") paid pursuant to this Section 2.09 shall be treated as a Partnership expense.

## ARTICLE III

## CAPITAL ACCOUNTS OF PARTNERS AND OPERATION THEREOF

Section 3.01. Definitions. For the purposes of this Agreement, unless the context otherwise requires:

(a) The term "Accounting Period" shall mean the following periods: The initial Accounting Period shall commence upon the initial commencement of the Partnership. Each subsequent Accounting Period shall commence immediately after the close of the preceding Accounting Period. Each Accounting Period hereunder shall close at the close of business on the first to occur of (i) the last day of the fiscal year, (ii) the date immediately prior to the effective date of the admission of a new Partner pursuant to Section 5.01, (iii) the date immediately prior to the effective date of a Partner's Capital Contribution pursuant to Section 3.03, (iv) the effective date of any withdrawal by a Partner of capital pursuant to Article IV or Article VI hereof, or (v) the date when the Partnership shall dissolve;

(b) The term "Beginning Value" shall mean, with respect to any Accounting Period, the Net Asset Value of the Partnership's assets at the beginning of such Accounting Period;

-8-

(c) The term "Ending Value" shall mean, with respect to any Accounting Period, the Net Asset Value of the Partnership's assets at the end of such Accounting Period (before giving effect to withdrawals);

(d) The term "Net Asset Value" shall mean the dollar amount derived by subtracting (i) the liabilities of the Partnership as determined in accordance with Section 3.07 (including accrued expenses through the date thereof) from (ii) the value of the Partnership's assets, as determined in accordance with Section 3.06;

(e) The term "Net Capital Appreciation" shall mean, with respect to any Accounting Period, the excess, if any, of the Ending Value over the Beginning Value;

(f) The term "Net Capital Contributions" of any Limited Partner at any date shall mean (i) the sum of all Capital Contributions (as defined in Section 3.02) theretofore made to the Partnership by such Limited Partner less (ii) the total amount of any withdrawals by or distributions to such Limited Partner; and

(g) The term "Net Capital Depreciation" shall mean, with respect to any Accounting Period, the excess, if any, of the Beginning Value over the Ending Value.

Section 3.02.    Capital Contributions.

(a) Each Partner has paid or conveyed by way of contribution to the Partnership cash and/or Securities having an aggregate value (a "Capital Contribution") equal to the amount set forth in the books and records of the Partnership.    Additional Capital Contributions may be made by Partners only in accordance with the provisions of Section 3.03. Whether Securities shall be accepted as a contribution to the Partnership shall be determined in the sole discretion of the General Partner.    The contribution made by a Partner upon its admission to the Partnership is referred to herein as such Partner's "Initial Capital Contribution."

(b) If a Partner fails to contribute on the first day of an Accounting Period (the "Due Date") any portion (the "Unpaid Portion") of the Capital Contribution (whether such Capital Contribution is an Initial Capital Contribution or an additional Capital Contribution) that such Partner agreed to contribute, then the corresponding Capital Account of such Partner shall be debited in an amount equal to the amount of interest expense that would have been saved by the Partnership on the Unpaid Portion from the Due Date to the date the Unpaid Portion is contributed by such Partner.    The amount so debited shall then be credited to the corresponding Capital Account of such Partner and the Capital Accounts of the other Partners pro rata in accordance with such Capital Accounts as of the Due Date.    The Unpaid Portion shall be deemed to have been contributed by such Partner to the Partnership as of the first business day of the month during which such Partner agreed to make the related Capital Contribution.    The General Partner will have the sole discretion whether to accept the Unpaid Portion.

Section 3.03.    Capital Accounts.    A capital account (herein called the "Capital Account") shall be established on the books of the Partnership for each Partner.    The Capital Account of each Partner shall be in an amount equal to such Partner's Initial Capital Contribution, adjusted as hereinafter provided.    At the beginning of each Accounting Period, the Capital Account of each Partner shall be increased by the amount of any Capital Contributions to

the Partnership made by such Partner as of the first day of such Accounting Period. At the end of each Accounting Period, the Capital Account of each Partner shall be (i) increased or decreased by the amount credited or debited to the Capital Account of such Partner pursuant to Section 3.05 and (ii) decreased by the amount of any withdrawals made by, or distributions made to, such Partner as of the end of such Accounting Period pursuant to Section 4.02 or Section 4.04. Additional Capital Contributions to the Partnership may be made by any Partner as of the first day of each quarter of a fiscal year, upon 10 days' prior written notice to the General Partner, subject to the sole discretion of the General Partner to determine a different date to accept additional Capital Contributions and to waive such notice period. The General Partner will have the sole discretion whether to accept such additional Capital Contributions, and may accept such additional Capital Contributions in whole or in part.

Section 3.04. <u>Partnership Percentages.</u> A "<u>Partnership Percentage</u>" shall be determined for each Partner for each Accounting Period by dividing the amount of each Partner's Capital Account at the beginning of such Accounting Period by the sum of all of the Capital Accounts at the beginning of such Accounting Period. The sum of all the Partnership Percentages shall equal 100 percent. The Partnership Percentages shall be set forth on the Schedule and in the books and records of the Partnership.

Section 3.05. <u>Allocation of Net Capital Appreciation and Net Capital Depreciation.</u>

(a) Subject to Section 3.05(d), at the end of each Accounting Period, the Capital Account of each Partner for such Accounting Period shall be adjusted by crediting (in the case of Net Capital Appreciation) or debiting (in the case of Net Capital Depreciation) all Net Capital Appreciation or Net Capital Depreciation, as the case may be, to the Capital Accounts of all the Partners in proportion to their respective Partnership Percentages.

(b) In the event that the General Partner imposes a charge on the Capital Account of a Partner pursuant to Section 4.03(c) or Section 6.02, the amount of such charge shall be allocated as a credit, as of the date which the withdrawal giving rise to such charge is effective, to the Capital Accounts of each of the other Partners pro rata in proportion to the ratio that each Partner's Capital Account bears to the Capital Accounts of all of the Partners excluding the Capital Account of the Partner being so charged.

(c) All matters concerning any allocation pursuant to this Section 3.05 shall be determined by the General Partner, whose determination shall be final and conclusive as to all of the Partners.

(d) In the event the General Partner determines that, based upon tax or regulatory reasons, or any other reasons as to which the General Partner determines, a Partner should not participate in the Net Capital Appreciation or Net Capital Depreciation, if any, attributable to trading in any Security or type of Security or to any other transaction, the General Partner may allocate such Net Capital Appreciation or Net Capital Depreciation only to the Capital Accounts of Partners to whom such reasons do not apply. In addition, if for any of the reasons described above, the General Partner determines that a Partner should have no interest whatsoever in a particular Security, type of Security or transaction, the interests in such Security,

-10-

type of Security or transaction may be set forth in a separate memorandum account in which only the Partners having an interest in such Security, type of Security or transaction shall have an interest and the Net Capital Appreciation and Net Capital Depreciation for each such memorandum account shall be separately calculated.

Section 3.06.  Net Asset Value.

(a)  The value of the Partnership's assets shall be determined as follows:

(i)  *Listed Securities.*  Freely marketable Securities listed or admitted to trading on any U.S. or non-U.S. stock exchange or the U.S. NASDAQ National Market System or comparable non-U.S. market system ("NMS") shall be valued (A) at the last reported sale price of the Security on the primary stock exchange or the NMS, as the case may be, on the date of determination, or in case there shall have been no sale of such security on such date, then (B) at the mean between representative "bid" and "asked" prices for such security on such exchange or the NMS at the close of business on the date of determination, or if no such "bid" and "asked" prices are reported on such date, then (C) at the last reported sale or mean between representative "bid" and "asked" price within the five-day period preceding such date; or, if neither such last sale price nor "bid" and "asked" prices are reported during such period, then (D) at such price as the General Partner deems to be fair market value.

(ii)  *Unlisted Securities.*  Freely marketable Securities traded over-the-counter or on another dealer market shall be valued (A) at the "last sale" price as reported by the National Association of Securities Dealers Automated Quotation System ("NASDAQ") or other primary U.S. or non-U.S. quotation system as of the date of determination or, if no such price is reported for such date, then (B) at the mean between representative "bid" and "asked" prices at the close of business on the date of determination, as reported in NASDAQ or such other system (or, if not so reported, then as reported by a recognized quotation service); or, if no such price is reported on such date, then (C) at the "last sale" or mean between representative "bid" and "asked" prices so reported within the five-day period preceding such date; or, if neither such "last sale" price nor such "bid" and "asked" prices are reported during such period, then (D) at such price as the General Partner deems to be fair market value.

(iii)  *Restricted Securities.*  All Securities which are not freely marketable by reason of legal restrictions ("Restricted Securities"), if readily and immediately convertible into or exercisable for freely marketable Securities, shall be valued on the basis applicable to such underlying Securities, reduced by the applicable conversion or exercise price, as the case may be, and all other Restricted Securities will be valued at their fair value, on the basis of the last representative sale price of similarly restricted Securities, or if no such sale price is available, then at such price as the General Partner deems to be fair value.

(iv)  *Short Positions.*  Securities held short by the Partnership will be valued as respectively provided in (i), (ii) or (iii) hereof, as applicable. The value of Securities held short by the Partnership shall be treated as a liability of the Partnership and, together with the amount of any margin or other loans on account thereof, shall be subtracted from the Partnership's assets in determining net assets of the Partnership.

(v)   *Options.* Options for the purchase or sale of Securities will be valued as respectively provided in (i), (ii), (iii) or (iv) hereof, as applicable, except that options listed on an exchange will in any event be valued at the mean between the representative "bid" and "asked" prices at the close of business on the date of determination. Premiums from the sale of options written by the Partnership shall be included in the assets of the Partnership and the market value of such options shall be included as a liability of the Partnership.

(vi)   *Dividends.* Dividends declared but not yet received, and rights in respect of Securities which are quoted ex-dividend or ex-rights, shall be included at the fair value thereof, less any applicable taxes thereon, as determined by the General Partner, which may, but need not, be the fair market value so determined on the day the particular Securities are first quoted ex-dividend or ex-rights.

(vii)   *Commodity Interests.*   Positions in commodities, commodity futures contracts, options on such futures contracts or other interests in commodities traded on an exchange, through a clearing firm or a bank or other financial institution shall be valued at their most recent settlement price, or closing market quotation, as appropriate, on the applicable exchange or with such firm or institution on the applicable determination date. If such contract cannot be liquidated, due to the operation of daily limits or otherwise, as of such determination date, the liquidating value on the first subsequent day on which the contract would be liquidated may be used or such other value as the General Partner may deem fair and reasonable.

(viii)   *Cash Items.*   Short-term money market instruments and bank deposits shall be valued at cost (together with accrued and unpaid interest) or market, depending on the type of investment, as the General Partner shall deem appropriate.

(ix)   *Assets Allocated to Portfolio Managers.*   All assets of the Partnership that are allocated to an independent portfolio manager (through a Portfolio Entity or Managed Account) for management shall be valued by the portfolio manager at their market value.

(x)   *Other Assets.*   The value of any other assets of the Partnership (or the value of the assets mentioned in this subsection (a) in situations not covered thereby, or in the event of any other happening determined by the General Partner in its discretion to make another method of valuation advisable) shall be their fair value, determined in such manner as may be selected from time to time by the General Partner in its discretion. All values assigned to assets by the General Partner pursuant to this Article III shall be final and conclusive as to all of the Partners.

(b) The General Partner may suspend the calculation of the value of the Partnership's assets and Net Asset Value of the Partnership during the following circumstances: (i) one or more U.S. or non-U.S. stock exchanges or other markets on which a significant amount of the Partnership's investments are listed or quoted and which constitute the primary markets for such investments, are closed for any reason other than that of an ordinary holiday, or transactions at these exchanges are restricted or suspended; (ii) the existence of a war, natural catastrophe or any like state of affairs which constitutes an emergency as a result of which

disposal of Securities by the Partnership is not possible in an orderly manner; (iii) any means of communications necessary to determine the price or value of any of the Partnership's investments do not function; or (iv) the transfer of funds involved in the realization or acquisition of any investments is, in the judgment of the General Partner, not possible at normal rates of exchange.

(c) The foregoing notwithstanding, if the General Partner determines that the valuation of any Securities or other property in accordance with subsection (a) does not fairly represent market value, the General Partner shall value such Securities or other property as it reasonably determines and shall set forth the basis of such valuation in writing in the Partnership's records.

Section 3.07. Liabilities. Except as otherwise provided in this Agreement, liabilities shall be determined in accordance with generally accepted accounting principles in the U.S., applied on a consistent basis; provided, however, that the General Partner in its discretion may provide reserves for contingencies, including general reserves for unspecified contingencies, even if such reserves are not required by generally accepted accounting principles, which shall be reserved against each Partner's Capital Account in proportion to the respective Partnership Percentages of the Partners for the period(s) in respect of which the General Partner deems such contingencies to be attributable.

Section 3.08. Allocation for Tax Purposes. For each fiscal year, items of income, deduction, gain, loss or credit shall be allocated for income tax purposes among the Partners in such manner as to reflect equitably amounts credited or debited to each Partner's Capital Account for the current and prior fiscal years. Such allocations shall be made pursuant to the principles of Sections 704(b) and 704(c) of the U.S. Internal Revenue Code of 1986, as amended (the "Code"), and in conformity with Regulations §§ 1.704-1(b)(2)(iv)(f), 1.704-1(b)(4)(i) and 1.704-3(e) promulgated thereunder, or the successor provisions to such Section and Regulations. Notwithstanding anything to the contrary in this Agreement, there shall be allocated to the Partners such gains or income as shall be necessary to satisfy the "qualified income offset" requirements of Regulations § 1.704-1(b)(2)(ii)(d).

Section 3.09. Determination by General Partner of Certain Matters. All matters concerning the valuation of assets of the Partnership, the allocation of profits, gains and losses among the Partners including taxes thereon, and accounting procedures not expressly provided for by the terms of this Agreement shall be determined by the General Partner, whose determination shall be final and conclusive as to all of the Partners.

Section 3.10. Adjustments to Take Account of Interim Year Events. If a Partner shall make additional Capital Contributions to the Partnership, withdraw from the Partnership or make a withdrawal from its Capital Account as of a date other than the last day of a fiscal year, the General Partner shall make such adjustments in the determination and allocation among the Partners of Net Capital Appreciation, Net Capital Depreciation, Capital Accounts, Partnership Percentages, Incentive Allocation, items of income, deduction, gain, loss or credit for tax purposes and accounting procedures as shall equitably take into account such interim year event and applicable provisions of law, and the determination thereof by the General Partner shall be final and conclusive as to all of the Partners.

-13-

## ARTICLE IV

## WITHDRAWALS AND DISTRIBUTIONS OF CAPITAL

Section 4.01. Withdrawals and Distributions in General. No Partner shall be entitled (i) to receive distributions from the Partnership, except as provided in Section 4.04 and Section 7.02, or (ii) to withdraw any amount from its Capital Account other than upon its withdrawal from the Partnership, except as provided in Section 4.02 and Section 6.01.

Section 4.02. Withdrawals.

(a) A Limited Partner may withdraw amounts from its Capital Account, subject to the prior written consent of the General Partner, which may be withheld or granted in its absolute and sole discretion, and subject to the terms and conditions as may be established by the General Partner. No Limited Partner may request to withdraw amounts from its Capital Account before March 31, 2003.

(b) If the General Partner consents to a withdrawal of amounts from the Capital Account of a Limited Partner, the General Partner shall pay 90% of the requested amount (computed on the basis of unaudited data) to the Limited Partner within 30 days following the date of such consent. The unpaid balance on the amount requested to be withdrawn, subject to audit adjustments, shall be paid with interest at the end of the fiscal year at the average (calculated weekly) per annum short term (13 weeks) U.S. Treasury Bill rate.

(c) With respect to the Capital Account of any non-U.S. Limited Partner, and notwithstanding any provision of this Agreement to the contrary, the General Partner shall withhold and pay over to the Internal Revenue Service, pursuant to Sections 1441, 1442, 1445 or 1446 of the Code any successor provisions or any other provision as may be enacted into law, at such times as required by such provisions, such amounts as the Partnership is required to withhold under such provisions, as from time to time in effect, on account of such non-U.S. Limited Partner's distributive share of the Partnership's items of gross income, income or gain which are subject to withholding tax pursuant to such provisions. To the extent that a non-U.S. Limited Partner claims to be entitled to a reduced rate of, or exemption from, U.S. withholding tax pursuant to an applicable income tax treaty, or otherwise, the non-U.S. Limited Partner shall furnish the General Partner with such information and forms as it may require and are necessary to comply with the regulations governing the obligations of withholding tax agents. Each non-U.S. Limited Partner represents and warrants that any such information and forms furnished by it shall be true and accurate and agrees to indemnify the Partnership and each of the Partners from any and all damages, costs and expenses resulting from the filing of inaccurate or incomplete information or forms relating to such withholding taxes. Any amount of withholding taxes withheld and paid over by the General Partner with respect to a non-U.S. Limited Partner's distributive share of the Partnership's gross income shall be treated as a distribution to such non-U.S. Limited Partner and shall be charged against the Capital Account of such non-U.S. Limited Partner.

(d) Subject to Section 3.02(b), the General Partner may at any time withdraw any amount from its Capital Account.

-14-

Section 4.03.   Limitation on Withdrawals.

(a)  The withdrawal by a Partner of any amount from its Capital Account pursuant to the provisions of Section 4.02 is subject to the provision by the General Partner for all Partnership liabilities in accordance with the Law and for reserves for contingencies, all in accordance with Section 3.07.

(b)  If at any time the payment of any amount withdrawn pursuant to this Article IV would violate the rules or regulations of the U.S. Securities and Exchange Commission, any exchange or any self-regulatory agency, or would cause any affiliate of the Partnership to violate such rules or regulations, the payment of such amount shall be deferred until such time as such payment is permitted under such rules or regulations.

(c)  If a withdrawal is permitted to be made in the discretion of the General Partner pursuant to Section 4.02, the Partnership, in the General Partner's discretion, may charge the withdrawing Partner's Capital Account an amount to offset the estimated cost of effecting such withdrawal, including any costs of selling securities in order to effect payment of such Partner's withdrawal amount, and such amount shall be reallocated pro rata among the Capital Accounts of the Partners excluding the Capital Account of the Partner being so charged.

(d)  The General Partner shall not, on dissolution or otherwise, make a payment to a Partner which represents a return of any or all of its Capital Contribution to the Partnership unless, at the time of and immediately following such payment, the Partnership will be solvent.

(e)  In the event of the Partnership becoming insolvent within a period of six months following the return of any or all of the Capital Contribution to a Partner, such Partner may be required to repay such amount in accordance with the Law together with interest of ten percent (10%) per annum to the Partnership to discharge a debt or obligation of the Partnership incurred during the period the contribution was an asset of the Partnership.

Section 4.04.   Distributions.

(a)  The General Partner may, in its discretion, make distributions in cash or in kind (i) in connection with a withdrawal of funds from the Partnership by a Partner and (ii) at any time to all of the Partners on a pro rata basis in accordance with the Partners' Partnership Percentages.

(b)  If a distribution is made in kind, immediately prior to such distribution, the General Partner shall determine the fair market value of the property distributed and adjust the Capital Account of all Partners upwards or downwards to reflect the difference between the book value and the fair market value thereof, as if such gain or loss had been recognized upon an actual sale of such property and allocated pursuant to Section 3.05. Each such distribution shall reduce the Capital Account of the distributee Partner by the fair market value thereof.

(c)  The General Partner may withhold taxes from any distribution to any Partner to the extent required by the Code or any other applicable law.  For purposes of this

Agreement, any taxes so withheld by the Partnership with respect to any amount distributed by the Partnership to any Partner shall be deemed to be a distribution or payment to such Partner, reduce the amount otherwise distributable to such Partner pursuant to this Agreement and reduce the Capital Account of such Partner.

## ARTICLE V

### ADMISSION OF NEW PARTNERS

Section 5.01. New Partners. The General Partner in its discretion may admit one or more new general or limited partners, subject only to the conditions that each such new Partner shall execute an appropriate supplement to this Agreement pursuant to which it agrees to be bound by the terms and provisions hereof. A new Partner may only be admitted to the Partnership with effect on the first day of each quarter of a fiscal year, subject to the discretion of the General Partner to determine a different date for the admission of a new Partner. Admission of a new Partner shall not be a cause for dissolution of the Partnership.

## ARTICLE VI

### DEATH, DISABILITY, BANKRUPTCY OR WITHDRAWAL OF PARTNERS

Section 6.01. Withdrawal, Death, etc. of General Partner.

(a) The General Partner may, upon 30 days' prior notice, withdraw from the Partnership at the end of any fiscal quarter of the Partnership, so long as at least one other general partner, incorporated or registered in the Cayman Islands, shall continue to act as general partner of the Partnership after such withdrawal. The withdrawal, death, disability, incompetency, bankruptcy, insolvency, termination or dissolution of the last remaining general partner, shall dissolve the Partnership unless within 90 days of such event the Limited Partners unanimously agree to continue the Partnership and appoint a successor general partner of the Partnership.

(b) In the event of the withdrawal, bankruptcy, insolvency, termination or dissolution of the General Partner, the General Partner or its legal representatives shall be entitled to receive, within 30 days of the end of such withdrawal date, 90% of the estimated Capital Account of the General Partner as of the date of such withdrawal (computed on the basis of unaudited data), subject to the provisions of Section 6.05. The Partnership shall pay the General Partner interest on the balance of its Capital Account at the average (calculated weekly) per annum short term (13 weeks) Treasury Bill rate and such balance, together with all interest earned thereon, shall be paid (subject to audit adjustments) within 30 days after completion of the audit of the Partnership's books for the year of determination pursuant to Section 8.01. Neither the General Partner nor its legal representatives shall have the right to take part in the management of the business of the Partnership upon the withdrawal, death, disability, incompetency, bankruptcy, insolvency, termination or dissolution of the General Partner, and the interest of the General Partner shall not be included in calculating the interests of the Partners required to take action under any provisions of this Agreement.

-16-

Section 6.02.  Withdrawal, Bankruptcy, etc. of Limited Partner.

(a) No Limited Partner shall have the right to withdraw from the Partnership without the prior written consent of the General Partner, which may be withheld or granted in its sole discretion. The withdrawal, bankruptcy, insolvency, termination or dissolution of a Limited Partner shall not dissolve the Partnership.

(b) In the event of the death, disability, incompetency, bankruptcy, insolvency, termination or dissolution of a Limited Partner or the consent by the General Partner to withdrawal by a Limited Partner in accordance with Section 6.02(a), the interest of such Limited Partner shall continue at the risk of the Partnership business until the last day of the fiscal year in which such event takes place (herein called the "Year of Determination") or earlier termination of the Partnership. Such Limited Partner or its legal representatives shall be entitled to receive, within 30 days of the end of the Year of Determination, 90% of the estimated Capital Account of such Limited Partner as of the date of such withdrawal (computed on the basis of unaudited data), subject to the provisions of Section 6.05. The Partnership shall pay such Limited Partner interest on the balance of its Capital Account at the average (calculated weekly) per annum short term (13 weeks) Treasury Bill rate and such balance, together with all interest earned thereon, shall be paid (subject to audit adjustments) within 30 days after completion of the audit of the Partnership's books for the Year of Determination pursuant to Section 8.01. The General Partner may withhold from such balance an amount equal to the legal, accounting and administrative costs associated with the Limited Partner's withdrawal, and reserves for contingencies established pursuant to Section 3.07, if it determines that such costs should not be borne by the Partnership. To the extent permitted by the Law, the interest of a Limited Partner who withdraws, dies, becomes disabled, incompetent, bankrupt, insolvent or is terminated or dissolved, or such Limited Partner's legal representatives, shall not be included in calculating the Partnership Percentages of the Limited Partners required to take any action under this Agreement.

Section 6.03.  Effective Date of Withdrawal.  The Capital Account of a withdrawing Partner shall be determined as of the effective date of its withdrawal. For purposes of this Section 6.03, the effective date of a Partner's withdrawal shall mean (as the case may be): (i) the last day of the fiscal year in which such Partner shall cease to be a Partner pursuant to Section 6.01 or Section 6.02, or (ii) the date determined by the General Partner in connection with the withdrawal of a Limited Partner pursuant to Section 6.02.

Section 6.04.  Required Withdrawals.  The General Partner may at any time and for any reason compel the withdrawal of any Partner upon at least five days' prior written notice. A notice of termination pursuant to this Section 6.04 shall have the same effect as the granting by the General Partner of its consent to a notice of withdrawal by such Partner pursuant to Section 6.02, and the Partner receiving such notice shall be treated for all purposes and in all respects as a Partner who has had its notice of withdrawal consented to by the General Partner.

Section 6.05.  Limitations on Withdrawal of Capital Accounts.

(a) The distribution to a withdrawn Partner or its legal representatives from its Capital Account pursuant to this Article VI is subject to the provision by the General

-17-

WD2000-NY-494369.5

Partner for all Partnership liabilities in accordance with the Law and for reserves for contingencies pursuant to Section 3.07. The unused portion of any reserve shall be distributed, with interest at the prevailing Treasury Bill rate for short-term Treasury Bills from time to time in effect, as determined by the General Partner, after the General Partner shall have determined that the need therefor shall have ceased.

(b) If at any time the payment of any amount withdrawn pursuant to this Article VI would violate the rules or regulations of the U.S. Securities and Exchange Commission, any exchange or any self-regulatory agency, or would cause any affiliate of the Partnership to violate such rules or regulations, the payment of such amount shall be deferred until such time as such payment is permitted under such rules or regulations.

## ARTICLE VII

### DURATION AND DISSOLUTION OF PARTNERSHIP

Section 7.01.  Duration.  The Partnership shall continue until December 31, 2023, unless extended as provided in Section 7.03, until dissolved under the Law, or unless sooner dissolved pursuant to Section 6.01(a) or at any time by decision of the General Partner.

Section 7.02.  Dissolution.

(a) On dissolution of the Partnership, no further business shall be done in the Partnership's name except the completion of incomplete transactions and the taking of such action as shall be necessary for the winding up of the affairs of the Partnership and the distribution of its assets. The maintenance of offices to effectuate or facilitate the winding up or liquidation of the Partnership's affairs shall not be construed to be a continuance of the Partnership. Upon the completion of the winding up and liquidation of the Partnership, a final statement with respect thereto shall be prepared and submitted to each Partner.

(b) Subject to the terms of the Law, the Partnership shall not be dissolved until a Notice of Dissolution signed by a General Partner has been filed with the Registrar.

(c) In the event of a dissolution of the Partnership, the General Partner may appoint one or more liquidators, including one or more general partners, who shall have full authority to wind up and liquidate the business of the Partnership and to make final distributions as provided in this Section. The appointment of any liquidator may be revoked, or a successor or additional liquidator or liquidators may be appointed, at any time by an instrument in writing signed by the General Partner. Any such liquidator may receive such compensation as shall be fixed, from time to time, by the General Partner.

(d) The liquidator shall, within no more than 30 days after completion of a final audit of the Partnership's books and records (which shall be performed within 90 days of such termination) and subject to the provisions of Section 7.02(e), make distributions out of Partnership assets, either in cash or in kind, in the following manner and order:

(i)     to payment and discharge of the claims of all creditors of the Partnership who are not Partners;

(ii)     to payment and discharge of the claims of all creditors of the Partnership who are Partners pro rata based on such Partners' Partnership Percentages; and

(iii)     to the Partners in the proportion of their respective Capital Accounts.

(e) In connection with the dissolution of the Partnership, the General Partner or the liquidator (as applicable) may provide for liabilities in accordance with the Law and may establish reserves for contingencies pursuant to Section 3.07. Such reserves may be established, in the discretion of the General Partner or the liquidator (as applicable), for any contingency, including, but not limited to, costs and expenses which may or will be incurred in downsizing personnel or terminating advisory arrangements, contracts or leases. The unused portion of any reserves shall be distributed to the Partners after the General Partner or the liquidator (as applicable) shall have determined that the need therefor shall have ceased.

(f) In the event that the Partnership is dissolved on the date other than the last day of a fiscal year, the effective date of dissolution, as determined under the Law, shall be deemed to be the last day of a fiscal year for purposes of adjusting the Capital Accounts of the Partners pursuant to Section 3.05 and any expenses incurred in connection with such dissolution shall not affect such adjustment pursuant to Section 3.05. For purposes of distributing the assets of the Partnership upon termination, the General Partner shall be entitled to a return, on a pari passu basis with the Limited Partners, of the amount standing to its credit in its Capital Account.

Section 7.03. Extension of Term. It is contemplated by the Partners that the term of the Partnership shall terminate on December 31, 2023, unless sooner terminated pursuant to Section 6.01(a), until dissolved under the Law, or at any time by decision of the General Partner. Notwithstanding the foregoing, the term of the Partnership may be extended for up to two additional two-year periods by action of the General Partner with the consent of a majority in Partnership interest of the Limited Partners. Any such extension shall be subject to the rights of the Partners to dissolve the Partnership as provided in Section 6.01(a).

## ARTICLE VIII

## TAX RETURNS; REPORTS TO PARTNERS

Section 8.01. Auditors. The books and records of the Partnership shall be audited by an independent certified public accountant selected by decision of the General Partner, as of the end of each fiscal year of the Partnership and as of any date deemed appropriate by the General Partner.

Section 8.02. Filing of Tax Returns. The General Partner shall prepare and file, or cause the accountants of the Partnership to prepare and file a U.S. federal information tax return in compliance with Section 6031 of the Code and any required Cayman Islands or U.S. state or local income tax and information returns for each tax year of the Partnership.

WD2000: NY 494369.5

Section 8.03. Reports to Partners.

(a) Within 90 days after the end of each fiscal year, the Partnership shall prepare and mail to each Partner, together with the report thereon of the accountants selected by the General Partner, a financial report setting forth, as of the end of such fiscal year:

(i)　a balance sheet of the Partnership;

(ii)　a statement showing the Net Capital Appreciation or Net Capital Depreciation of the Partnership for such year; and

(iii)　such Partner's Capital Account as of the end of such fiscal year and the manner of its calculation.

(b) Within 60 days following the end of each of the first three fiscal quarters in each fiscal year, the Partnership shall prepare and mail to each Partner an unaudited report setting forth, as of the end of such fiscal quarter, the information described in subparagraphs (a)(i) and (a)(ii) above for such Accounting Period.

Section 8.04.　Reports to Partners and Former Partners.　Within 105 days after the end of each fiscal year, the Partnership shall cause its independent certified public accountants to prepare and mail, to each Partner and, to the extent necessary, to each former Partner (or its legal representatives), a report setting forth in sufficient detail such information as shall enable such Partner or former Partner (or its legal representatives) to prepare their respective U.S. federal income tax returns in accordance with the laws, rules and regulations then prevailing.

Section 8.05.　Tax Matters Partner.　The General Partner shall at all times constitute, and have full powers and responsibilities as, the "Tax Matters Partner" of the Partnership with respect to the annual U.S. federal income tax return for purposes of Section 6231(a)(7) of the Code. Each person (herein called a "Pass-Through Partner") that holds or controls an interest as a Partner on behalf of, or for the benefit of another person or persons, or which Pass-Through Partner is beneficially owned (directly or indirectly) by another person or persons shall, within 30 days following receipt from the Tax Matters Partner of any notice, demand, request for information or similar document, convey such notice or other document in writing to all holders of beneficial interests in the Partnership holding such interests through such Pass-Through Partner. In the event the Partnership shall be the subject of an income tax audit by any U.S. federal, state or local authority, to the extent the Partnership is treated as an entity for purposes of such audit, including administrative settlement and judicial review, the Tax Matters Partner shall be authorized to act for, and its decision shall be final and binding upon, the Partnership and each Partner thereof. All expenses incurred in connection with any such audit, investigation, settlement or review shall be borne by the Partnership.

## ARTICLE IX

## MISCELLANEOUS

Section 9.01. General. This Agreement (i) shall be binding on the legal successors and representatives of the Partners, and (ii) may be executed, through the use of separate signature pages or in any number of counterparts with the same effect as if the parties executing such counterparts had all executed one counterpart; provided, however, that each such counterpart shall have been executed by the General Partner and that the counterparts, in the aggregate, shall have been signed by all of the Partners.

Section 9.02. Power of Attorney. Each of the Limited Partners hereby appoints the General Partner as its true and lawful representative and attorney-in-fact, in its name, place and stead to make, execute, sign, acknowledge, swear to and file:

(a) all amendments or modifications to the Partnership Agreement to the extent provided in the last paragraph of this Section 9.02;

(b) any and all instruments, certificates, and other documents which may be deemed necessary or desirable to effect the winding-up and termination of the Partnership; and

(c) any business certificate, amendment thereto, or other similar instrument or document of any kind necessary or desirable to accomplish the business purpose and objectives of the Partnership, or required by any applicable law.

The power of attorney hereby granted by each of the Limited Partners is coupled with an interest, is irrevocable, and shall survive, and shall not be affected by, the subsequent death, disability, incapacity, incompetency, termination, bankruptcy, insolvency or dissolution of such Limited Partner.

Such representative and attorney-in-fact shall not have any right, power or authority to amend or modify this Agreement when acting in such capacity, except in the case of an amendment or modification permitted without the approval of the Limited Partners pursuant to Section 9.03 or approved by the requisite Partnership Percentages of the Limited Partners.

Section 9.03. Amendments to Partnership Agreement. The terms and provisions of this Agreement may be modified or amended at any time and from time to time with the written approval of Limited Partners having in excess of 50% of the Partnership Percentages of the Limited Partners and the written approval of the General Partner, insofar as is consistent with the laws governing this Agreement; provided, however, that without the approval of the Partners the General Partner may amend the Agreement to (i) reflect changes validly made in the membership of the Partnership and the Capital Contributions and Partnership Percentages of the Partners; (ii) reflect a change in the name of the Partnership or the effective date of the Partnership; (iii) make a change that is necessary or, in the opinion of the General Partner, advisable to qualify the Partnership as a limited partnership or a partnership in which the Limited Partners have limited liability under the laws of any state, or ensure that the Partnership will not be treated as an association or publicly traded partnership taxable as a corporation for U.S.

-21-

federal income tax purposes; (iv) make a change that does not adversely affect the Limited Partners in any material respect; that is necessary or desirable to cure any ambiguity, to correct or supplement any provision in this Agreement that would be inconsistent with any other provision in this Agreement, or to make any other provision with respect to matters or questions arising under this Agreement that will not be inconsistent with the provisions of this Agreement, in each case so long as such change does not adversely affect the Limited Partners; that is necessary or desirable to satisfy any requirements, conditions or guidelines contained in any opinion, directive, order, ruling or regulation of any Cayman Islands or U.S. federal or state statute, so long as such change is made in a manner which minimizes any adverse effect on the Limited Partners; or that is required or contemplated by this Agreement; (v) make a change in any provision of this Agreement that requires any action to be taken by or on behalf of the General Partner or the Partnership pursuant to the requirements of the Law if the provisions of the Law are amended, modified or revoked so that the taking of such action is no longer required; (vi) prevent the Partnership or the General Partner from in any manner being deemed an "Investment Company" subject to the provisions of the U.S. Investment Company Act of 1940, as amended; or (vii) make any other amendments similar to the foregoing. Each Partner, however, must approve of any amendment which would (a) reduce its Capital Account or rights of contribution or withdrawal, or (b) amend the provisions of this Agreement relating to amendments.

Section 9.04. <u>Adjustment of Basis of Partnership Property</u>. In the event of a distribution of Partnership property to a Partner or an assignment or other transfer (including by reason of death) of all or part of the interest of a Limited Partner in the Partnership, the General Partner, in its discretion, may cause the Partnership to elect, pursuant to Section 754 of the Code, or the corresponding provision of subsequent law, to adjust the basis of the Partnership property as provided by Sections 734 and 743 of the Code.

Section 9.05. <u>Choice of Law</u>. Notwithstanding the place where this Agreement may be executed by any of the parties hereto, the parties expressly agree that all the terms and provisions hereof shall be construed under the laws of the Cayman Islands and, without limitation thereof, that the Law as amended from time to time shall govern the partnership aspects of this Agreement.

Section 9.06. <u>Submission to Jurisdiction</u>. Each party hereto hereby irrevocably submits to the non-exclusive jurisdiction of the courts of the Cayman Islands and the courts located in the State of New York with respect to any suit, action or proceeding relating to this Agreement and any or all transactions relating hereto and agrees and consents that service of process as provided by Cayman Islands law and New York law, as the case may be, may be made upon such party in any such suit, action or proceeding brought in any of said courts, and may not claim that any such suit, action or proceeding has been brought in an inconvenient forum. Each party hereby further irrevocably consents to the service of process out of any of the aforesaid courts, in any such suit, action or proceeding, by the mailing of copies thereof in the manner provided in Section 9.07 hereof.

Section 9.07. <u>Notices</u>. Each notice relating to this Agreement shall be in writing and delivered in person or by registered or certified mail. All notices to the Partnership shall be addressed to its registered office, with a copy addressed to the General Partner (or any other

person then serving as general partner). All notices addressed to a Partner shall be addressed to such Partner at the address set forth in the Schedule. Any Partner may designate a new address by notice to that effect given to the Partnership. Unless otherwise specifically provided in this Agreement, a notice shall be deemed to have been effectively given when mailed by registered or certified mail to the proper address or delivered in person.

Section 9.08. Registers. The General Partner shall keep or cause to be kept at the registered office of the Partnership a full and accurate register of Partnership interests and other books and records of the Partnership.

Section 9.09. Goodwill. No value shall be placed on the name or goodwill of the Partnership, which shall belong exclusively to the General Partner.

Section 9.10. Headings. The titles of the Articles and the headings of the Sections of this Agreement are for convenience of reference only, and are not to be considered in construing the terms and provisions of this Agreement.

Section 9.11. Waiver of Rights. One year from the date a Partner receives the report to which it is entitled pursuant to Section 8.03, such Partner shall be deemed to have irrevocably waived and released all rights, at law or in equity or by provision of any statute or otherwise, to challenge the contents of such report unless such challenge has previously been initiated.

*[Signature page follows]*

IN WITNESS WHEREOF, the undersigned have executed this Agreement as a deed as of the date first set forth above.

PLATINUM MANAGEMENT (NY) LLC

By: _____

Name: Ari Glass
Title: Manager

Witness:

By: _____

Name: Greg Zaffino

**LIMITED PARTNERS:**

Each person who shall sign a Limited Partner Signature attached hereto and who shall be accepted by the General Partner to the Partnership as a Limited Partner.