# EXHIBIT 7


EXHIBIT
38
9-11-19

# FOURTH AMENDED AND RESTATED
## INVESTMENT MANAGEMENT AGREEMENT

This INVESTMENT MANAGEMENT AGREEMENT (this "Agreement"), dated as of March 9, 2007, as amended and restated as of April 27, 2007, July 1, 2010, September 1, 2010 and December 1, 2010, is by and among: Platinum Partners Value Arbitrage Fund (International) Limited, a Cayman Islands exempted company (the "Offshore Feeder Fund"); Platinum Partners Value Arbitrage Fund (USA) L.P., a Delaware, U.S.A. limited partnership (the "U.S. Feeder Fund"); Platinum Partners Value Arbitrage Intermediate Fund Ltd., a Cayman Islands exempted company (the "Intermediate Fund" and, collectively with the U.S. Feeder Fund and the Offshore Feeder Fund, the "Feeder Funds"); Platinum Partners Value Arbitrage Fund L.P., a Cayman Islands exempted limited partnership (the "Master Fund" and, together with the Feeder Funds, the "Funds"); and Platinum Management (NY) LLC, a Delaware, U.S.A. limited liability company (the "Investment Manager").

All capitalized terms used in this Agreement and not otherwise defined shall have the meanings ascribed to them in the Offshore Feeder Fund's Confidential Private Offering Memorandum (including, without limitation, all supplements thereto) and the Onshore Feeder Fund's Confidential Private Offering Memorandum (including, without limitation, all supplements thereto), as each may from time to time be amended, supplemented, revised or restated (each, a "Memorandum" and, together, the "Memoranda").

## W I T N E S S E T H:

WHEREAS, the Master Fund is an exempted limited partnership that was formed on December 17, 2002 for the purpose of investing the assets of certain investment vehicles investing in the Master Fund from time to time in an actively-managed portfolio of securities, currencies, commodity interests, derivatives and other financial instruments and investments (collectively, "Financial Instruments") as more fully described in the applicable Memorandum;

WHEREAS, each of the U.S. Feeder Fund and the Intermediate Fund invests all or substantially all of its capital in the Master Fund, and the Offshore Feeder Fund invests all or substantially all of its capital in the Intermediate Fund; and

WHEREAS, each of the Funds wishes to retain the Investment Manager to provide investment advice upon the terms and conditions of this Agreement.

NOW, THEREFORE, in consideration of the mutual covenants and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties hereby agree as follows:

1. Duties of the Investment Manager. The Investment Manager is hereby appointed as limited attorney-in-fact of each of the Funds to invest and reinvest the net assets of each of the U.S. Feeder Fund and the Intermediate Fund (the "U.S./Intermediate Fund Assets") in the Master Fund, to invest and reinvest the net assets of the Offshore Feeder Fund into the Intermediate Fund (the "Offshore Fund Assets" and together with the U.S./Intermediate Fund Assets, the "Feeder Fund Assets"), each as provided in the applicable Memorandum, and to invest and reinvest the net assets of the Master Fund (the "Assets") in Financial Instruments in accordance

PGROSSM27217.7 · 11/18/10

with the trading objectives and strategies set forth in the applicable Memorandum (the "Trading Strategy"). This limited power-of-attorney is a continuing power and shall continue in effect with respect to the Investment Manager until terminated pursuant to the terms of this Agreement. The Investment Manager shall act as the portfolio manager retained by the Funds with respect to the Assets and the Feeder Fund Assets and, specifically, shall exercise its discretion with respect to the Assets and the Feeder Fund Assets upon the terms and conditions, and for the purposes, set forth in this Agreement and in the applicable Memorandum, and shall have sole authority and responsibility for directing the investment and reinvestment of the Assets and the Feeder Fund Assets at such times, in such amounts and at such prices as the Investment Manager shall determine for the term of this Agreement pursuant to and in accordance with this Agreement and the Memoranda. The Funds shall have no authority to retain any additional portfolio managers to manage the investment and reinvestment of the Assets or to substitute the Investment Manager in such capacities without the prior consent of the Investment Manager.

2.   Authority of Investment Manager. The Investment Manager is authorized, on behalf of each of the Funds, to:

(a)   trade, invest, re-invest and otherwise manage the Assets, both directly and indirectly, in accordance with the applicable Memorandum and the Trading Strategy, and to enter into any agreement and to do any and all acts and things for the preservation, protection, improvement and enhancement in value of the Assets and the Feeder Fund Assets in accordance with the Trading Strategy;

(b)   possess, purchase, sell, transfer, mortgage, pledge or otherwise deal in, and to exercise all rights, powers, privileges and other incidents of ownership or possession with respect to the Assets and the Feeder Fund Assets;

(c)   lend any of the Assets, as appropriate, provided, that, if appropriate, collateral at least equal in value to the market value of such Assets is deposited by the borrower thereof with the Master Fund;

(d)   trade on margin, borrow from banks, brokers or other institutions and pledge the Assets in connection therewith;

(e)   engage personnel, including affiliates of the Investment Manager, whether part-time or full-time, and attorneys, independent accountants or such other persons as the Investment Manager may deem necessary or advisable subject to the approval of the respective boards of directors, or general partners, as the case may be, of the Funds (collectively, the "Directors"); provided, however, that the Investment Manager may, in its reasonable discretion and without the approval of the Directors, engage professionals in connection with the implementation of the Trading Strategy, including, without limitation, portfolio managers and attorneys to represent the (i) Feeder Funds with respect to each of their acquisition and divestiture of Financial Instruments and interests in the Master Fund (and the Intermediate Fund with respect to the Offshore Feeder Fund) and (ii) Master Fund with respect to the acquisition and divestiture of Financial Instruments;

(f)     make all decisions relating to the manner, method and timing of trading transactions;

(g)     combine purchase or sale orders on behalf of each of the Funds with respect to the Assets and the Feeder Fund Assets together with other accounts to whom or to which the Investment Manager provides portfolio services or accounts of affiliates of the Investment Manager ("Other Accounts") and allocate equitably the assets so purchased or sold, among such accounts;

(h)     enter into arrangements with brokers to open "average price" accounts wherein orders placed during a trading day are placed on behalf of the Funds with respect to the Assets and Other Accounts and are allocated among such accounts using an average price;

(i)     issue orders and directions to any bank at which any of the Funds maintains a general account with respect to the disposition and application of the Assets and/or the Feeder Fund Assets from time to time held by such bank;

(j)     open, maintain, conduct and close accounts, including margin accounts, with any broker, dealer or investment concern, to issue orders and directions to any broker, dealer or investment concern at which any of the Funds maintains an account with respect to the disposition and application of the Assets from time to time held by such broker, dealer or investment concern; and

(k)     facilitate and assist the Funds with any necessary regulatory filings and audits.

3.     Policies of the Funds.  The activities engaged in by the Investment Manager on behalf of the Funds shall be subject to:

(a)     the Memoranda;

(b)     each of the Fund's organizational documents, as may from time to time be

amended, supplemented, revised or restated;

(c)     such policies as may be adopted from time to time by the Directors;

(d)     all applicable trading restrictions as may from time to time be set forth in the Memoranda; and

(e)     all provisions of applicable law.

Notwithstanding the foregoing, the Investment Manager shall not be bound by any amendment, supplement or revision to any of the documents and policies referenced in this Section 3, unless and until it has been given notice thereof in accordance with Section 18 hereof. The Investment Manager will submit such periodic reports to the Directors regarding the Investment Manager's activities hereunder as the Directors reasonably may request.

4.    Liability.

(a)    Neither the Investment Manager, nor any of its members, managers, partners, officers, employees, consultants, independent contractors, agents and affiliates (collectively, the "Investment Manager and its Associated Persons") shall be liable to any of the Funds, or any of their investors, their respective principals, managers, members, officers, directors, employees, shareholders, partners or other applicable representatives or to third parties under this Agreement for, among other things, any and all losses, claims, damages, liabilities (joint and/or several), expenses, judgments, fines, settlements and other amounts (collectively, "Losses") sustained by any of the Funds, any of their investors or any of their respective equity owners, except to the extent those Losses arise from actions or failures found by a court of competent jurisdiction upon entry of a final judgment (or if no final judgment shall be entered, following an opinion of counsel rendered to the applicable Fund(s) by independent legal counsel retained by such Fund(s) and agreed to by the Investment Manager) to have been the result of the Investment Manager's gross negligence or a willful violation of law by the Investment Manager and/or an Associated Person with respect to the performance or non-performance of its duties under this Agreement. The Investment Manager shall not be liable to any of the Funds, or any of their respective investors for the acts of any agent of any of the Funds selected by the Investment Manager, provided that such agent was selected, engaged or retained by the Investment Manager with reasonable care. The Investment Manager may consult with counsel and accountants in respect of its obligations under this Agreement and be fully protected and justified in any action or inaction which is taken in accordance with the advice or opinion of such counsel or accountants. All trading activity concerning Financial Instruments shall be for the account and risk of the Master Fund or the Feeder Funds, as the case may be; and, except as otherwise provided herein, the Investment Manager shall not incur any liability for trading profits or losses resulting therefrom, or any expenses related thereto.

(b)    Neither the Investment Manager nor any of its affiliates nor any of its or their principals, managers, members, officers, directors, employees, shareholders, partners, or other applicable representatives shall be liable to any of the Funds, or any of their investors, their respective principals, managers, members, officers, directors, employees, shareholders, partners or other applicable representatives or to third parties for any taxes assessed upon or payable by any of them wheresoever the same may be assessed or imposed and whether directly or indirectly except for such taxation as shall be attributable to gross negligence, fraud or willful misconduct in the performance or non-performance by the Investment Manager of its obligations and duties under this Agreement.

(c)    Notwithstanding any of the foregoing to the contrary, the provisions of this Section 4 shall not be construed so as to relieve (or attempt to relieve) the Investment Manager of any liability to the extent (but only to the extent) that such liability may not be waived, modified or limited under applicable law, but shall be construed so as to effectuate the provisions of this Section 4 to the fullest extent permitted by law.

5.    Indemnification.

(a)    Investment Manager's Indemnity. The Investment Manager, and each of its members, managers, partners, officers, employees, consultants, independent contractors,

PGROSS\127217.7 - 11/13/10

agents and affiliates (each, an "Indemnified Person"), shall be indemnified and held harmless by the Master Fund, the Offshore Feeder Fund, the Intermediate Fund and the U.S. Feeder Fund, as the case may be, against any Losses sustained by any of the foregoing persons by reason of (i) the fact that the Investment Manager was or is a portfolio manager to the Master Fund, the Offshore Feeder Fund, the Intermediate Fund or the U.S. Feeder Fund, as the case may be, including, without limitation, all legal, professional and other expenses incurred by the Investment Manager, or persons designated by it, in the performance of its duties and obligations hereunder, all indemnity obligations owed by the Investment Manager to persons designated by it and any loss as a result of any misdelivery or error in any telexed, telefaxed or e-mailed transmission or as a result of acting upon any forged document or signature, and (ii) any taxes on profits and losses of the Master Fund, the Offshore Feeder Fund, the Intermediate Fund or the U.S. Feeder Fund, as the case may be, or any of their investors, provided that the Investment Manager and its affiliates and its and their principals, managers, members, officers, directors, employees, shareholders, partners or other applicable representatives acted in good faith and in a manner reasonably believed to be in, or not opposed to, the best interest of the Master Fund, the Offshore Feeder Fund, the Intermediate Fund or the U.S. Feeder Fund, as the case may be, and such Losses were not found by a court of competent jurisdiction upon entry of a final judgment (or if no final judgment shall be entered, following an opinion rendered to the Master Fund, the Offshore Feeder Fund, the Intermediate Fund or the U.S. Feeder Fund, as the case may be, by independent legal counsel retained by the Funds and agreed to by the Investment Manager) to have been the result of the actions or failures that constitute gross negligence or a willful violation of law by the Indemnified Person with respect to the performance or non-performance by the Investment Manager of its duties to the Master Fund, the Offshore Feeder Fund, the Intermediate Fund or the U.S. Feeder Fund, as the case may be, under this Agreement, and in the case of criminal proceedings, that the Investment Manager or its affiliates and its and their principals, managers, members, officers, directors, employees, shareholders or other applicable representatives had no reasonable cause to believe was unlawful.

(b)   Indemnity Procedure.   Promptly after receipt by an indemnified party under Section 5(a) hereof of notice of the commencement of an action or claim the indemnified party shall notify the indemnifying party in writing of the commencement of such action or claim, but the omission so to notify the indemnifying party shall not relieve the indemnifying party from any liability which the indemnifying party may have to the indemnified party (except where such omission shall have materially prejudiced the indemnifying party). In case any such action or claim shall be brought against an indemnified party and the indemnified party shall notify the indemnifying party of the commencement of such action or claim, the indemnifying party shall be entitled to participate in such action or claim and, to the extent that the indemnifying party may desire, to assume the defense of such action or claim with counsel selected by the indemnifying party and approved by the indemnified party. After notice from the indemnifying party to the indemnified party of the indemnifying party's election so to assume the defense of such action or claim, the indemnifying party shall not be liable to the indemnified party for any Losses subsequently incurred by the indemnified party in connection with the defense of such action or claim other than reasonable costs of investigation.

Notwithstanding any provision of this Section 5(b) to the contrary, if in any action or claim as to which indemnity is or may be available, an indemnified party shall determine that its interests are or may be adverse, in whole or in part, to the interests of the indemnifying party or

that there may be legal defenses available to the indemnified party which are or may be different from, in addition to, or inconsistent with the defenses available to the indemnifying party, the indemnified party may retain its own counsel in connection with such action or claim, in which case the indemnifying party shall be responsible for any legal, accounting, and other fees and expenses reasonably incurred by or on behalf of the indemnified party in connection with investigating or defending such action or claim. In no event shall an indemnifying party be liable for the fees and expenses of more than one counsel for all indemnified parties in connection with any one action or claim or in connection with separate but similar or related actions or claims in the same jurisdiction arising out of the same general allegations. An indemnifying party shall not be liable for a settlement of any such action or claim effected without its written consent.

(c)   Survival.   The indemnities set forth in this Section 5 shall survive the termination of this Agreement without limitation of time.

6.   Obligations of the Investment Manager.

(a)   Cooperation, Disclosures and Reports.   The Investment Manager agrees to cooperate and use its good faith best efforts in connection with the preparation of the Funds' respective Net Asset Values as requested by the Funds' NAV Calculation Agent or administrator, the preparation by the Funds of the applicable Memorandum, any agreements incidental thereto, and all supplements and amendments to the foregoing, during both the initial and the continuous offering of each of their Shares or Interests, as the case may be. The Investment Manager shall make all disclosures regarding itself and its principals, trading performance and the Trading Strategy, as may be required, in the reasonable judgment of the Funds, to be made in the Memoranda and all supplements and amendments thereto. The Investment Manager shall also prepare and deliver to each of the Funds such reports concerning the Investment Manager's investment and trading activities for such Fund as such Fund reasonably may request, including any reports set forth in the Memoranda or required by law.

(b)   Other Account Management.   The Investment Manager, as well as its affiliates and any of its or their principals, managers, members, officers, directors, employees, shareholders, partners and other applicable representative shall be free to manage and trade accounts for other investors, as well as itself and themselves, during the term of this Agreement and to use the same information and Trading Strategy used in the performance of services for each of the Funds for such other accounts and shall not by reason of such engagement of other businesses or rendering of services for others be deemed to be acting in conflict with the interests of any of the Funds.

(c)   Confidential Information.

(i)   Each of the Funds acknowledges and agrees that during the course of the Investment Manager's associations with such Fund, such Fund may receive and have access to certain information, data, notes, analyses, records and materials of the Investment Manager, including, without limitation, information concerning the business affairs, portfolios and investment strategies of the Investment Manager, or its clients, the Investment Manager's research, systems used by the Investment Manager or provided to

clients for the purposes of trading, portfolio evaluation and monitoring, pricing and valuing securities and other financial products, and accounting back-office functions (the "Confidential Information"). No Fund shall disclose, copy or permit the disclosure of the Confidential Information to third parties, including without limitation to its investors, without the Investment Manager's prior written consent, except as required by law, a court of competent jurisdiction or any self-regulatory organization. Immediately upon termination of this Agreement, each of the Funds promptly shall return to the Investment Manager any and all Confidential Information, including all copies and reproductions thereof, in each of the Funds' possession and control or in the possession or control of any employee or agent of such Fund.

(ii)   For the purpose of this Section 6(c), notwithstanding Section 23 hereof, the parties hereby submit to the non-exclusive jurisdiction of the Supreme Court of the State of New York, New York County, or the United States District Court for the Southern District of New York. The parties agree that money damages would be an inadequate remedy for a breach of this Section 6(c) and in the event of a breach or threatened breach of this Section 6(c) by any of the Funds, the Investment Manager or its successors or assigns may, in addition to other rights and remedies existing in their favor, apply for specific performance and/or injunctive or other relief in order to enforce, or prevent any violations of, such provisions, without posting a bond or other security.

(iii)   This Section 6(c) shall survive the termination of this Agreement without limitation of time.

(d)   Access to Information.  At the request of any of the Funds, the Investment Manager shall give to such Fund's auditors or other designees reasonable access to documents pertaining to the relevant Fund's activities during customary business hours and shall permit such auditors to make copies thereof or extracts therefrom at the expense of the requesting party.

7.   Transaction Confirmations and Reports.  The Master Fund shall make available to the Investment Manager copies of all transaction confirmations, equity runs, and trading statements relating to the Assets, as well as any other reports which the Investment Manager may request. The Feeder Funds shall make available to the Investment Manager copies of all statements relating to the Feeder Fund Assets, as well as any other reports which the Investment Manager may request. The Investment Manager shall maintain records of all open and closed positions taken on the Master Fund's and/or the Feeder Funds' behalf and shall monitor all open positions. Each Fund shall furnish the Investment Manager with a copy of all reports sent to its respective investors. Upon request, each of the Funds shall provide the Investment Manager with accurate information with respect to such Fund's then-current Net Asset Value, as well as such other information as the Investment Manager reasonably may request including, but not limited to, access to each of the Fund's registry and/or other books and records of any of the Funds. Such information provided to the Investment Manager may be disclosed by the Investment Manager to such persons and authorities, for the purpose of satisfying its business obligations hereunder, fiduciary, reporting, filing or other obligations hereunder, or if any of the Funds is requested to disclose such information by regulatory officials, or required by judicial process or regulatory action.

PGROSS\127217.7 - 11/18/10

8.   Independent Contractor.   For all purposes of this Agreement, the Investment Manager shall be an independent contractor and not an agent, employee, partner or joint venturer of any of the Funds, and shall, unless otherwise expressly authorized, have no authority to act for or to represent any of the Funds in any way.  Nothing in this Agreement shall be construed as making any of the Funds an employee, agent, partner or joint venturer with the Investment Manager or any of its affiliates.

9.   Transaction Services.   All transactions for the benefit of the Funds shall be effected by the Investment Manager through such entities or persons as the Funds may direct from time to time.

10.   Management Fee.   Class A Shares, Class B Shares, Class AN Shares, Class I Shares, Class IN Shares, Class J Shares, Class J-E Shares, Class K Shares, Class KN Shares, Class L Shares, Class O Shares, Class A Interests, Class B Interests, Class I Interests, Class IN Interests, Class J Interests, Class K Interests and Class L Interests will be charged a monthly management fee (the "Management Fee") equal to 1/12th of 2.0% of the month-end Net Asset Value of such Shares or Interests, as the case may be, before deduction of any Incentive Allocation and any distributions or withdrawals made during the month (2% per annum), and after giving effect to other expenses as provided in the applicable Memorandum.  The Management Fee may be waived, reduced or changed by the Investment Manager with the agreement of the affected investor, through use of a rebate, separate class, or otherwise, in the sole discretion of the Investment Manager and without notice to the other Shareholders or Limited Partners, as the case may be.

11.   Expenses.   In addition to the Management Fee, the Class A Shares, Class B Shares, Class AN Shares, Class I Shares, Class IN Shares, Class J Shares, Class J-E Shares, Class K Shares, Class KN Shares, Class L Shares, Class O Shares, Class A Interests, Class B Interests, Class I Interests, Class IN Interests, Class J Interests, Class K Interests and Class L Interests will bear their pro rata share of the Feeder Funds' ordinary and extraordinary expenses as well as their pro rata share of the Intermediate Fund's and the Master Fund's ordinary and extraordinary expenses.  Ordinary operating expenses may include, but are not limited to, fees for administrative services, taxes, investment expenses (e.g., brokerage commissions, interest expense and due diligence-related expenses including, without limitation, travel costs), legal expenses, compliance expenses, professional expenses (including, without limitation, consultants and experts), escrow expenses, insurance expenses (including, without limitation, director and officer liability insurance and error and omission liability insurance with respect to the activities of the Master Fund and the Investment Manager), accounting expenses, audit and tax preparation expenses, custodial fees, and any extraordinary expenses, such as indemnification of the General Partner and the Investment Manager.  The Class A Shares, Class B Shares, Class AN Shares, Class I Shares, Class IN Shares, Class J Shares, Class J-E Shares, Class K Shares, Class KN Shares, Class L Shares, Class O Shares, Class A Interests, Class B Interests, Class I Interests, Class IN Interests, Class J Interests, Class K Interests and Class L Interests will also bear their pro rata share of the performance fees and/or allocations paid to Portfolio Managers and other persons who render services to the Master Fund or the Investment Manager.  Class A Shares, Class B Shares, Class AN Shares, Class I Shares, Class IN Shares, Class J Shares, Class J-E Shares, Class K Shares, Class KN Shares, Class L Shares, Class O Shares, Class A Interests, Class B Interests, Class I Interests, Class IN Interests, Class J Interests, Class K Interests and

8

Class L Interests shall reimburse the Investment Manager for all legal and other costs incurred with the formation and organization of such Interests and Shares.

Notwithstanding any of the foregoing, neither the Class L Shares, the Class O Shares nor the Class L Interests shall participate in any expenses related to the Banyon Investment, including, without limitation, the expenses of any litigations or other actions relating to the Banyon Investment.

12.   Term and Termination.

(a)   Term.   The initial term of this Agreement shall commence as of the date hereof and shall continue until December 31, 2017, unless terminated earlier in accordance with this Section 12. Thereafter, this Agreement shall automatically renew for successive one (1) year periods.

(b)   Automatic Termination.   This Agreement shall terminate automatically in the event that any Fund is dissolved and wound-up in accordance with such Fund's organizational documents, but only with respect to such Fund.

(c)   Optional Termination Right of each Fund or the Investment Manager. Any Fund, on the one hand, or the Investment Manager, on the other hand, may terminate this Agreement upon at least thirty (30) days' prior written notice, prior to the end of any year, or immediately in the event of the bankruptcy or insolvency of the other.

(d)   Termination Obligations.   If the Investment Manager receives notice of termination pursuant to subparagraphs (b) or (c), it shall endeavor to follow any instructions received concerning the liquidation of the terminating Fund's then-current positions and otherwise shall cooperate with such Fund in terminating the Investment Manager's relationship with such Fund.

13.   Representations and Warranties of the Investment Manager.   The Investment Manager represents and warrants to each of the Funds that:

(a)   All references in the Memoranda to (i) itself and its affiliates and each of its managers, members, officers, directors, employees, shareholders and other applicable representatives; and (ii) the Trading Strategy, are and shall be accurate in all material respects, and do not contain an untrue statement of a material fact or omit to state a material fact required to be stated therein or necessary to make the statements therein not misleading.

(b)   It has full capacity and authority to enter into this Agreement.

(c)   It shall not by entering into this Agreement (i) be required to take any action contrary to its formation documents or any applicable statute, law or regulation of any jurisdiction or (ii) breach or cause to be breached any undertaking, agreement, contract, statute, rule or regulation to which it, or any of its members, officers, directors, employees, shareholders, partners and other applicable representatives, is a party or by which it or they are/is bound which, in the case of (i) or (ii), would materially limit or materially adversely affect its or its affiliates

9

and each of its and their managers, members, officers, directors, employees, shareholders, partners and other applicable representatives ability to perform its duties under this Agreement.

(d)    The Investment Manager has complied and will continue to comply with all laws, rules, and regulations having application to its business, properties, and assets. Except to the extent otherwise disclosed to each of the Funds, there are no actions, suits, proceedings, or investigations pending or threatened against the Investment Manager or its principals, at law or in equity or before or by any federal, state, municipal, or other governmental department, commission, board, bureau, agency, or instrumentality, any self-regulatory organization, or any exchange that might be material to an investor investing in any of the Funds.

The foregoing representations and warranties shall be continuing during the term of this Agreement, and if, at any time any of the foregoing representations or warranties become untrue or inaccurate, the Investment Manager shall promptly notify each of the Funds in writing of that fact.

14.    _Representations and Warranties of the Funds_. Each of the Funds represents and warrants to the Investment Manager that:

(a)    The Memoranda, excluding all references therein to the Investment Manager as specified in Section 13(a) hereof, are and shall be accurate in all material respects and do not contain an untrue statement of a material fact or omit to state a material fact required to be stated therein or necessary to make the statements therein not misleading.

(b)    It has full capacity and authority to enter into this Agreement.

(c)    It shall not by entering into this Agreement (i) be required to take any action contrary to its incorporating or other formation documents or any applicable statute, law or regulation of any jurisdiction or (ii) breach or cause to be breached any undertaking, agreement, contract, statute, rule or regulation to which any of them is a party or by which any of them is bound which, in the case of (c) or (c), would materially limit or materially adversely affect its ability to perform its duties under this Agreement.

(d)    Each of the U.S. Feeder Fund and the Offshore Feeder Fund has complied and shall comply in all material respects with applicable rules and regulations having application to its business, properties, and assets and relating to the solicitation of persons residing in each jurisdiction in which each such Fund solicits subscriptions for Shares or Interests, as the case may be.

The foregoing representations and warranties shall be continuing during the term of this Agreement and, if at any time any of the foregoing representations or warranties become untrue or inaccurate, the Fund shall promptly notify the Investment Manager in writing of that fact.

15.    _Assignment_. This Agreement may not be assigned by any of the parties hereto to any other person without the express prior written consent of the other parties; _provided, however,_ that the Investment Manager may transfer its management responsibilities to any of its qualified affiliates, successors or assigns upon notice to each of the Funds and subject to the requirements of the Advisers Act.

16.   Successors.  This Agreement shall be binding upon and inure to the benefit of the parties hereto and the successors and permitted assigns of each of them, and no other person (except as otherwise provided herein) shall have any right or obligation under this Agreement. The terms "successors" and "assigns" shall not include any purchasers, as such, of Shares or Interests.

17.   Amendment or Modification.  This Agreement may not be amended or modified except by the written consent of the parties hereto.

18.   Notices.  Except as otherwise provided herein, all notices required to be delivered under this Agreement shall be effective only if in writing and shall be deemed given by the party required to provide notice when received by the party to whom notice is required to be given and shall be delivered personally, by courier service, or by registered mail, postage prepaid, return receipt requested, or by facsimile, as follows (or to such other address as the party entitled to notice shall hereafter designate by written notice to the other parties):

(a)   If to the U.S. Feeder Fund:

152 West 57th Street, 4th Floor
New York, New York 10019-3310
U.S.A.
Telephone:      +1(212) 582-2222
Facsimile:      +1(212) 582-2424

(b)   If to the Offshore Feeder Fund, the Intermediate Fund or the Master Fund:

c/o Walkers Corporate Services Limited
Walker House
87 Mary Street
George Town Grand Cayman KY1-9002
Cayman Islands
Telephone:    +1(345) 914-9457
Facsimile:    +1(345) 949-4068

(c)   If to the Investment Manager:

Platinum Management (NY) LLC
152 West 57th Street, 4th Floor
New York, New York 10019-3310
U.S.A.
Telephone:    +1(212) 582-2222
Facsimile:    +1(212) 582-2424

19.   Survival.  The provisions of this Agreement shall survive the termination of this Agreement with respect to any events occurring or matter arising while this Agreement was in effect.

PGROSS\127217.7 - 11/18/10

20.  Severability.  If any provision of this Agreement, or the application of any provision to any person or circumstance, shall be held to be inconsistent with any present or future law, ruling, rule, or regulation of any court or governmental or regulatory authority having jurisdiction over the subject matter hereof, such provision shall be deemed to be rescinded or modified in accordance with such law, ruling, rule, or regulation, and the remainder of this Agreement, or the application of such provision to persons or circumstances other than those as to which it shall be held inconsistent, shall not be affected thereby.

21.  No Waiver.  No failure or delay on the part of any party hereto in exercising any right, power or remedy hereunder shall operate as a waiver thereof; nor shall any single or partial exercise of any such right, power or remedy preclude any other or further exercise thereof or the exercise of any other right, power or remedy.  Any waiver granted hereunder must be in writing and shall be valid only in the specific instance in which given.

22.  Governing Law.  The parties agree that this Agreement shall be governed by and construed in accordance with the laws of the State of Delaware, U.S.A., without regard to conflict of laws principles.

23.  Arbitration.  The parties waive their right to seek remedies in court, including any right to a jury trial provided, however, that nothing in this Section 23 will constitute a waiver of any right, a party to this Agreement may have to choose a judicial forum to the extent such waiver would violate applicable law.  Except as set forth in Section 6(c) hereof, to the fullest extent permitted by law, the parties to this Agreement agree that in the event of any dispute between the parties arising out of, relating to or in connection with this Agreement, such dispute shall be resolved exclusively by arbitration to be conducted only in the city, county and State of New York in accordance with the rules of JAMS/Endispute ("JAMS") applying the laws of the State of Delaware.  Disputes shall not be resolved in any other forum or venue.  The parties agree that such arbitration shall be conducted by a retired judge who is experienced in resolving disputes regarding the securities business, that discovery shall not be permitted except as required by the rules of JAMS, that the arbitration award shall not include factual findings or conclusions of law, and that no punitive damages shall be awarded.  The parties understand that any party's right to appeal or to seek modification of any ruling or award of the arbitrator is severely limited.  Any award rendered by the arbitrator shall be final and binding, and judgment may be entered on it in any court of competent jurisdiction in the city, county and State of New York or as otherwise provided by law.

24.  Headings.  Headings to Sections herein are for the convenience of the parties only, and are not intended to be or to affect the meaning or interpretation of this Agreement.

25.  Complete Agreement.  Except as otherwise provided herein, this Agreement constitutes the entire agreement between the parties with respect to the matters referred to herein, and no other agreement, verbal or otherwise, shall be binding upon the parties hereto.

26.  Sales Literature and Reports.  No sales literature or reports to investors describing the Investment Manager, its trading strategies, personnel, or performance (other than the performance of the Fund) will be distributed by any of the Funds or any of their agents without the prior written approval of the Investment Manager.

PGROSS\127217.7 - 11/18/10

27.     Counterparts.  This Agreement may be executed in one or more counterparts, each of which shall be deemed an original and all of which, when taken together, shall constitute one original instrument.

28.     No Third-Party Beneficiaries.  This Agreement is not intended to and shall not convey any rights to persons not a party to this Agreement.

*[Signature page follows]*

13

IN WITNESS WHEREOF, this Agreement has been executed for and on behalf of the undersigned as of the date first above written.

PLATINUM PARTNERS VALUE ARBITRAGE
FUND (USA) L.P.

BY:   PLATINUM PARTNERS VALUE
ARBITRAGE, LP, its general partner

BY:   PLATINUM PARTNERS VALUE
ARBITRAGE (GP) CORP., its general
partner

By: _____
Name:   Uri Landesman
Title:   Managing Member

PLATINUM PARTNERS VALUE ARBITRAGE
FUND (INTERNATIONAL) LIMITED

By: _____
Name: Uri Landesman
Title: Director

PLATINUM PARTNERS VALUE ARBITRAGE
INTERMEDIATE FUND LTD.

By: _____
Name: Uri Landesman
Title: Director

PLATINUM PARTNERS VALUE ARBITRAGE
FUND, L.P.

BY:   PLATINUM MANAGEMENT (NY) LLC,
its general partner

By: _____
Name:   Uri Landesman
Title:   President

14

PLATINUM MANAGEMENT (NY) LLC

By: _____
     Name: Uri Landesman
     Title:   President

15