UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE PLATINUM-BEECHWOOD LITIGATION | Master Docket No. 1:18-cv-06658-JSR |
| MARTIN TROTT and CHRISTOPHER SMITH, as Joint Official Liquidators and Foreign Representatives of PLATINUM PARTNERS VALUE ARBITRAGE FUND L.P. (in Official Liquidation) and PLATINUM PARTNERS VALUE ARBITRAGE FUND L.P. (in Official Liquidation),<br><br>     Plaintiffs,<br><br>      -v-<br><br>PLATINUM MANAGEMENT (NY) LLC, et al.,<br><br>     Defendants. | Case No. 1:18-cv-10936-JSR |

## MEMORANDUM OF LAW OF DEFENDANT
## MURRAY HUBERFELD IN SUPPORT OF SUMMARY JUDGMENT

HOROWITZ AND RUBENSTEIN, LLC
4 Carren Circle
Huntington, NY 11743
(516) 745-5430

*Attorneys for Defendant Murray Huberfeld.*

## <u>TABLE OF CONTENTS</u>

**Page**

TABLE OF AUTHORITIES ...................................................................................................... ii

PRELIMINARY STATEMENT ................................................................................................ 1

RELEVANT FACTS ................................................................................................................. 2

    A.   General Background ........................................................................................................ 2

    B.   PPVA's Organization and Management ......................................................................... 2

    C.   PPVA's Broad Release Of All Claims Against Huberfeld ............................................. 3

    D.   Procedural History .......................................................................................................... 6

STANDARD OF REVIEW ....................................................................................................... 7

ARGUMENT .............................................................................................................................. 8

    Plaintiffs' Claims Are Barred By A Valid Release .................................................................. 8

    I.   The General Release Bars PPVA's Claims ................................................................... 8

        A.  The Release Agreement Is Valid And Binding on PPVA ........................................... 8

        B.  The Release Encompasses All of PPVA's Claims Against Huberfeld ...................... 10

CONCLUSION ......................................................................................................................... 12

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Arcadia Biosciences, Inc. v. Vilmorin & Cie*,
  356 F. Supp. 3d 379 (S.D.N.Y. 2019) .......................................................................9

*Arneberg v. Georges Berges Galleries, LLC*,
  Nos. 16-cv-8955 & 17-cv-4973 (AJN), 2018 U.S. Dist. LEXIS 47876
  (S.D.N.Y. Mar. 22, 2018) ..........................................................................................7

*Beaumont Capital Corp. v. Bear, Stearns & Co.*,
  704 F. Supp. 362 (S.D.N.Y. 1988) .............................................................................7

*Carter v. Ponte*,
  No. 17-cv-1830 (VSB), 2018 U.S. Dist. LEXIS 168206 (S.D.N.Y. Sep. 28, 2018) ................8

*Consorcio Prodipe, S.A. de. C.V. v. Vinci, S.A.*,
  544 F. Supp. 2d 178 (S.D.N.Y. 2008) ...............................................................9, 10

*Corines v. Charter One Bank*,
  365 Fed. Appx. 237 (2d Cir. 2010) ..................................................................10, 11

*D'Amico v. City of New York*,
  132 F.3d 145 (2d Cir. 1998) ......................................................................................7

*Davis & Assocs. v. Health Mgmt. Servs.*,
  168 F. Supp. 2d 109 (S.D.N.Y. 2001) ..................................................................8, 10

*DuFort v. Aetna Life Ins. Co.*,
  818 F. Supp. 578 (S.D.N.Y. 1993) .............................................................................8

*Fay v. Petersen Publ'g Co.*,
  No. 88 Civ. 6499 (MBM), 1990 U.S. Dist. LEXIS 5917 (S.D.N.Y. May 17, 1990) .............11

*Global Entm't, Inc. v. New York Telephone Co.*,
  No. 00 Civ. 2959 (SHS), 2000 U.S. Dist. LEXIS 16038 (S.D.N.Y. Oct. 31, 2000) ................9

*Golden Pac. Bancorp v. FDIC*,
  273 F.3d 509 (2d Cir. 2001) ....................................................................................10

*Holtz v. Rockefeller & Co. Inc.*,
  258 F.3d 62 (2d Cir. 2001) ........................................................................................7

*Krumme v. Westpoint Stevens Inc.*,
  238 F.3d 133 (2d Cir. 2000) ....................................................................................10

*Locafrance U.S. Corp. v. Intermodal Sys. Leasing, Inc.*,
    558 F.2d 1113 (2d Cir. 1977) ............................................................................9, 10

*Mandal v. City of New York*,
    No. 02 Civ. 1234 (WHP)(FM), 2008 U.S. Dist. LEXIS 24903
    (S.D.N.Y. Mar. 17, 2008) ....................................................................................11

*Mortg. Resolution Servicing, LLC v. JPMorgan Chase Bank, N.A.*,
    No. 15-cv-293, 2019 U.S. Dist. LEXIS 167845 (S.D.N.Y. Sep. 27, 2019).............................7

*Pampillonia v. RJR Nabisco, Inc.*,
    138 F.3d 459 (2d Cir. 1998)...............................................................................8, 11

*In re Platinum-Beechwood Litig.*,
    No. 18-cv-06658 (JSR), 2019 U.S. Dist. LEXIS 62745 (S.D.N.Y. Apr. 11, 2019) .................6

*Skluth v. United Merchants & Mfrs., Inc.*,
    163 A.D.2d 104 (1st Dep't 1990) ........................................................................11

*Smickle v. City of New York*,
    No. 16-cv-3333 (VSB), 2018 U.S. Dist. LEXIS 53553 (S.D.N.Y., Mar. 29, 2018) ..............11

*Trott v. Platinum Mgmt. (NY) LLC*,
    Nos. 18-cv-06658 & 18-cv-10936 (JSR), 2019 U.S. Dist. LEXIS 104562
    (S.D.N.Y. June 21, 2019).......................................................................................6

*United States SBA v. Coqui Capital Mgmt., LLC*,
    No. 08 Civ. 0978 (LTS), 2008 U.S. Dist. LEXIS 86772 (S.D.N.Y. Oct. 27, 2008)...............10

*Volk v. Liggett Grp.*,
    96 Civ. 1921 (SS), 1997 U.S. Dist. LEXIS 2600 (S.D.N.Y. Mar. 10, 1997) ........................11

*W.P. Carey, Inc. v. Bigler*,
    No. 18 Civ. 585 (KPF), 2019 U.S. Dist. LEXIS 51975 (S.D.N.Y. Mar. 27, 2019) .................8

*Worth Constr. Co. v. I.T.R.I. Masonry Corp.*,
    No. 98 Civ 2536 (CM), 2001 U.S. Dist. LEXIS 2144 (S.D.N.Y. Feb. 21, 2001) ..................8

**Statutes**

Federal Rule of Civil Procedure 56 ...................................................................................1

Defendant Murray Huberfeld ("Huberfeld") respectfully submits this memorandum of law in support of his motion (the "Motion") for summary judgment, pursuant to Federal Rule of Civil Procedure 56, dismissing the Second Amended Complaint (the "SAC") of plaintiffs Martin Trott and Christopher Smith, as Joint Official Liquidators and Foreign Representatives of Platinum Partners Value Arbitrage Fund L.P. (in Official Liquidation) (the "JOLs") and Platinum Partners Value Arbitrage Fund L.P. (in Official Liquidation ("PPVA," together with the JOLs, "Plaintiffs") in its entirety.

## PRELIMINARY STATEMENT

In 2016, Platinum-affiliated entities (including PPVA) and Huberfeld, among others, negotiated and executed a Release Agreement.  For his part, Huberfeld: (i) gave up the indirect beneficiary interests that he and certain affiliated persons or entities held at the time in Platinum Management (the investment manager for PPVA); (ii) agreed not to redeem for a period of two years any limited partnership interests in PPVA and other Platinum funds belonging to him and certain affiliated persons or entities; and (iii) provided Platinum (including PPVA) with a broad unconditional general release from liability.  In exchange, Platinum (including PPVA) provided Huberfeld with a broad unconditional general release from liability and certain indemnification rights.  All relevant parties were represented and advised by experienced, sophisticated attorneys, and signed and performed under the Release Agreement.  That Release Agreement now unequivocally requires by its express terms the summary dismissal of all the claims against Huberfeld currently being pursued by PPVA in this action.

The JOLs filed the instant lawsuit on behalf of PPVA against Huberfeld over two years after the Release Agreement was executed, reneging on PPVA's agreement to release him from liability.  All of the pending claims against Huberfeld are based on Huberfeld's purported wrongdoing in 2016 and earlier – claims that PPVA clearly and unambiguously released when the

Release Agreement was executed in 2016 in exchange for valuable consideration. Because PPVA's release is valid, unambiguous, and encompasses all the claims against Huberfeld set forth in the SAC, summary judgment dismissing Plaintiffs' SAC against Huberfeld is squarely warranted.

## **RELEVANT FACTS**[1]

### A.     **General Background**

Huberfeld, along with Mark Nordlicht and David Bodner, participated in the creation of Platinum Partners Value Arbitrage Fund LP ("PPVA") by providing seed investment money for its formation in 2003. (56.1 ¶ 4.) In exchange for Huberfeld seeding Nordlicht's formation of PPVA, Huberfeld received an indirect minority beneficiary interest in Platinum Management (NY) LLC ("PMNY"), which is the general partner of, and company that managed, PPVA. (56.1 ¶ 5.) Huberfeld held that indirect minority interest in PMNY through Manor Lane Management, LLC ("Manor Lane"), an entity in which Huberfeld was the sole member. (56.1 ¶¶ 5-6.) Manor Lane was not a member of PMNY. Rather, it was a 24.99% beneficiary of the Mark Nordlicht Grantor Trust (the "MNG Trust"). (56.1 ¶ 5.) The MNG Trust, in turn, was a passive member of PMNY. (56.1 ¶ 2.) The last time Manor Lane received payments from the MNG Trust on account of its beneficiary interest was in 2014, reflecting fees earned in 2013. (56.1 ¶ 7.)

### B.     **PPVA's Organization and Management**

PPVA operated pursuant to a Second Amended and Restated Limited Partnership Agreement, dated July 1, 2008 (the "PPVA Partnership Agreement"). (56.1 ¶ 8.) The PPVA Partnership Agreement provides that "management of the Partnership shall be vested exclusively in the General Partner"; PPVA's general partner was at all relevant times PMNY. (56.1 ¶¶ 9-10.)

---

[1]     All the relevant facts are set forth in the accompanying Rule 56.1 Statement ("56.1") which is incorporated by reference herein.

PMNY and PPVA were also parties to the Fourth Amended and Restated Investment Management

Agreement, dated March 9, 2007, pursuant to which PPVA (and its feeder funds) appointed PMNY

as its investment manager.  (56.1 ¶ 11.)  In 2016, Mark Nordlicht was the Chief Investment Officer

of PPVA and the managing member of PMNY.  (56.1 ¶ 12.)

## C.      PPVA's Broad Release Of All Claims Against Huberfeld

A "Release Agreement,"[2] effective as of March 20, 2016 (the "Release Agreement") was

negotiated and executed by and among, Huberfeld and PMNY, among others.[3]  (56.1 ¶ 13.)  As

set forth in the recitals to the Release Agreement, "Huberfeld, either individually, or through

family members or entities controlled by any of them, is an indirect beneficiary of the Trusts."

(56.1 ¶ 15; Daniels Dec., Ex. 9.)  Thus, it was acknowledged that, as of 2016, Huberfeld, through

Manor Lane, was an indirect beneficiary of the MNG Trust (Huberfeld's "Beneficiary Interest")

which, in turn, owned a passive membership interest in PMNY.[4]   (*Id.*)   The recitals further

acknowledge that Huberfeld, either individually, or through his family members or their entities,

---

[2]      A true and correct copy of the Release Agreement is annexed to the accompanying Declaration of Jeffrey C. Daniels, dated February 14, 2020 ("Daniels Dec."), as Exhibit 9.

[3]      The parties to the Release Agreement include (i) PMNY, Platinum Credit Management LP, Platinum Liquid Opportunity Management (NY) LLC, and Centurion Credit Management LLC; (ii) Mark Nordlicht, individually and as Trustee of the MNG Trust, the Mark Nordlicht Grantor Trust I, and the Mark Nordlicht Grantor Trust II (the "Trusts"); (iii) Huberfeld; (iv) David Bodner; (v) Bernard Fuchs; and (vi) Uri Landesman.  (56.1 ¶ 13 and Daniels Dec., Ex. 9.)

[4]      Although not relevant to this motion, the Trusts also owned membership interests in other Platinum Management entities such as Platinum Credit Management LP, Platinum Liquid Opportunity Management (NY) LLC, and Centurion Structured Growth LLC (and together with PMNY, the "Platinum Management Entities").  (Daniels Dec., Ex. 9.)  The Platinum Management Entities were responsible for the management of the following Platinum-affiliated funds, respectively: PPVA, Platinum Partners Credit Opportunities Fund LP, Platinum Liquid Opportunity Fund LP, and Centurion Credit Management, LLC (together, the "Platinum Funds").  The Platinum Management Entities and the Platinum Funds are referred to collectively in the Release Agreement as "Platinum." (*Id.*)

also beneficially owned limited partnership interests in PPVA and other Platinum Funds (a "Funds Interest").  (56.1 ¶ 17; Daniels Dec., Ex. 9.)

Pursuant to the Release Agreement, Huberfeld provided the following good and valuable consideration (the "Huberfeld Consideration"):

1. Huberfeld relinquished his indirect Beneficiary Interest in the Trusts as of March 20, 2016.

2. Huberfeld, on behalf of himself, his successors, assigns, personal representatives and his "affiliated entities," provided a broad, unconditional general release to "Platinum," defined to include all of the Platinum Management Entities (including PMNY), and all the Platinum Funds (including PPVA), releasing forever all known and unknown claims and actions.

3. Huberfeld, on behalf of himself and certain affiliated persons and entities identified in an attachment to the Release Agreement, also agreed not to redeem any of their Funds Interest (including their substantial Funds Interest in PPVA), or to withdraw any of their funds from the Platinum Management Entities (including any and all monies from earnings in 2015, which would be paid in 2016), for a period of two years from the effective date of the Release Agreement (considerably longer than otherwise required), absent certain limited exceptions (irrelevant for purposes of this motion).  (56.1 ¶ 20.)

In return for the Huberfeld Consideration, "Platinum" (including, most particularly for purposes of this motion, PPVA) provided a similarly broad unconditional general release of Huberfeld.  The release provided to Huberfeld by Platinum (including PPVA) expressly states in pertinent part as follows:

> For good and valuable consideration, receipt and sufficiency of which is hereby acknowledged, each of ***Platinum***, the Nordlicht Parties, Fuchs, and Landesman, on behalf of himself or itself, and his or its respective successors, assigns, personal representatives and affiliated entities, hereby ***fully, finally, forever and unconditionally waives, releases, and discharges*** each of Bodner and ***Huberfeld*** and each of their respective predecessors,

successors, assignors or assignees, heirs, executors and administrators (as applicable), and any entity controlled by any of them, and with respect to each such entity, each of their respective present and former directors, officers, employees, agents, attorneys, representatives and direct or indirect shareholders, each in their capacities as such (collectively, the "BH Released Parties"), each of whom is an intended third-party beneficiary of this Section 3, of and from *any and all manner of actions, causes of action, suits*, debts, liabilities, sums of money, accounts, reckonings, bonds, bills, covenants, contracts, controversies, agreements, promises, variances, trespasses, *judgments, executions, claims and demands whatsoever, whether in law or in equity, whether known, unknown, or hereafter becoming known, foreseen or unforeseen, suspected or unsuspected*, liquidated or unliquidated, contingent or noncontingent, asserted or unasserted, matured or unmatured, whether direct or indirect, individual, class, derivative, *representative or other capacity, existing or hereafter arising, in law or in equity or otherwise that have been or could have been or in the future could be or might be asserted (whether directly or derivatively) that are based in whole or in part on any act or omission, transaction, or event in connection with any manner whatsoever with Platinum*, from the beginning of the world to the Effective Date.

(56.1 ¶ 21 and Daniels Dec., Ex. 9 (emphasis added).)

Contemporaneous with the execution of the Release Agreement, the attorneys for Huberfeld (and David Bodner) drafted a memorandum to Platinum's counsel memorializing the background, purpose, and justification for the Release Agreement.  (56.1 ¶ 23; Daniels Dec., Ex. 11.)  By agreeing to the Release Agreement, PMNY apparently hoped to improve the liquidity of PPVA and the Platinum Funds, by attracting a prominent investor with the enticement of a beneficial interest in PMNY.  (56.1 ¶ 20.)  The Release Agreement was reviewed by attorneys for PMNY, who approved PMNY entering into the Release Agreement on behalf of all Platinum parties, including PPVA.  (56.1 ¶ 23; Daniels Dec., Ex. 11.)  The Release Agreement was then fully executed by all parties, and Platinum and Huberfeld performed under the Release Agreement.  (56.1 ¶¶ 22-25; Daniels Dec., Ex. 9.)  Among other things, consistent with the Release Agreement, neither Huberfeld nor any of his family members or affiliated entities have filed counterclaims,

crossclaims, or third party claims against any of the parties released pursuant to the Release Agreement.  (*See* Daniels Dec., Ex. 12.)

## D.    Procedural History

On January 25, 2019, Plaintiffs filed their First Amended Complaint ("FAC") alleging claims against Huberfeld, among others.  Following full briefing, the Court dismissed Count 14 (unjust enrichment).  *In re Platinum-Beechwood Litig.*, No. 18-cv-06658 (JSR), 2019 U.S. Dist. LEXIS 62745 (S.D.N.Y. Apr. 11, 2019).  On March 29, 2019, Plaintiffs filed their SAC, which set forth substantially identical claims against Huberfeld.  Following full briefing once again, the Court dismissed Count 17 (civil RICO) and confirmed the dismissal of Count 14 (unjust enrichment).  *Trott v. Platinum Mgmt. (NY) LLC*, Nos. 18-cv-06658 & 18-cv-10936 (JSR), 2019 U.S. Dist. LEXIS 104562 (S.D.N.Y. June 21, 2019).

Presently, the only remaining operative claims brought by PPVA against Huberfeld in the SAC are Counts 1-2 (breach of fiduciary duty), Counts 3, 6-8 (aiding-and-abetting fraud and breach of fiduciary duty), Counts 4-5 (fraud and constructive fraud), and Count 16 (civil conspiracy).  Generally, the SAC alleges that Huberfeld (and a slew of others) fraudulently caused PPVA to (i) falsely inflate the net value ascribed to PPVA's assets, thereby enabling PMNY to collect unearned fees, and (ii) engage in non-commercial transactions for the benefit of others' interests over PPVA's.  (Daniels Dec., Ex. 1 (SAC) ¶¶ 9-11.)

On July 12, 2019, Huberfeld filed an answer to the SAC, in which he asserted an affirmative defense based upon the Release Agreement.  (56.1 ¶ 27; Daniels Dec., Ex. 12.)

Huberfeld now moves for summary judgment dismissing all of the remaining counts alleged in the SAC on the basis that they are barred by a valid and binding release.

## STANDARD OF REVIEW

"[S]ummary judgment is appropriate where there exists no genuine issue of material fact and, based on the undisputed facts, the moving party is entitled to judgment as a matter of law." *D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir. 1998). Facts are "material" only where those facts could "affect the outcome of the suit under the governing law." *See Mortg. Resolution Servicing, LLC v. JPMorgan Chase Bank, N.A.*, No. 15-cv-293 (LTS-RWL), 2019 U.S. Dist. LEXIS 167845, at *17 (S.D.N.Y. Sep. 27, 2019) (*quoting Holtz v. Rockefeller & Co. Inc.*, 258 F.3d 62, 69 (2d Cir. 2001)). A dispute is only "genuine" when there is enough evidence in favor of the non-moving party to support a jury verdict for that party. *Id.* (*quoting Holtz*, 258 F.3d at 69). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Arneberg v. Georges Berges Galleries, LLC*, Nos. 16-cv-8955 & 17-cv-4973 (AJN), 2018 U.S. Dist. LEXIS 47876, at *7-8 (S.D.N.Y. Mar. 22, 2018) (citation omitted).

An award of summary judgment is particularly suited where, such as here, a plaintiff's claims are barred by a valid and unambiguous release. *See, e.g.*, *Beaumont Capital Corp. v. Bear, Stearns & Co.*, 704 F. Supp. 362, 364 (S.D.N.Y. 1988) (granting summary judgment dismissing complaint based on release; "'One who gives a general release has had his opportunity to press his claim; before waiving his rights, he should carefully consider the possibility of a development such as the one that gave birth to this lawsuit. That risk was implicit in the settlement, and we see no reason to relieve the appellant from the consequences of his choice. Once the decision to settle is made, a party must abide by it.'") (citation omitted).

## ARGUMENT

### Plaintiffs' Claims Are Barred By A Valid Release

The Release Agreement is a valid and enforceable agreement.  Because the General Release granted by PPVA to Huberfeld is unequivocal in its intent to release Huberfeld from all manner of claims – including the particular counts alleging fraud and breach of fiduciary duty alleged in the SAC – summary judgment dismissing the SAC is warranted under fact and law.

## I.   The General Release Bars PPVA's Claims

### A.   The Release Agreement Is Valid And Binding on PPVA

"[A] party's release of claims may not be treated lightly."  *See W.P. Carey, Inc. v. Bigler*, No. 18 Civ. 585 (KPF), 2019 U.S. Dist. LEXIS 51975, at *36 (S.D.N.Y. Mar. 27, 2019) (citation omitted).  "A release is a species of contract and is governed by principles of contract law."  *Carter v. Ponte*, No. 17-cv-1830 (VSB), 2018 U.S. Dist. LEXIS 168206, at *12 (S.D.N.Y. Sep. 28, 2018) (citation omitted).  "The interpretation of an unambiguous contract – including a release – is also a question of law reserved for the court."  *Id.*

"Under New York law,[5] 'a release that is clear and unambiguous on its face and which is knowingly and voluntarily entered into will be enforced.'"  *Id.* (*quoting Pampillonia v. RJR Nabisco, Inc.*, 138 F.3d 459, 463 (2d Cir. 1998)); *DuFort v. Aetna Life Ins. Co.*, 818 F. Supp. 578, 581 (S.D.N.Y. 1993).  Absent a showing of fraud, duress, undue influence or other valid legal defense, a release will be construed as binding between the parties.  *Davis & Assocs. v. Health Mgmt. Servs.*, 168 F. Supp. 2d 109, 113 (S.D.N.Y. 2001); *Worth Constr. Co. v. I.T.R.I. Masonry Corp.*, No. 98 Civ. 2536 (CM), 2001 U.S. Dist. LEXIS 2144, at *14 (S.D.N.Y. Feb. 21, 2001) ("Since a release is a 'jural act of high significance without which the settlement of disputes would

---

[5]     The Release Agreement is expressly governed by New York law.  (56.1 ¶ 26; Daniels Dec., Ex. 9.)

be rendered all but impossible . . . the traditional bases for setting aside written agreements, namely duress, illegality, fraud or mutual mistake, must be established or else [it] stands.'") (citation omitted).

In this case, the Release Agreement containing the General Release was set forth in writing and fully executed. The circumstances surrounding the Release Agreement are further memorialized by counsel in a contemporaneous memorandum. (Daniels Dec., Ex. 11.) PMNY, as the general partner of PPVA, was authorized to, and properly executed, the Release Agreement on PPVA's behalf, and thereby provided the General Release to Huberfeld on behalf of PPVA, among other Platinum Funds. *See Locafrance U.S. Corp. v. Intermodal Sys. Leasing, Inc.*, 558 F.2d 1113, 1115 (2d Cir. 1977); *Consorcio Prodipe, S.A. de. C.V. v. Vinci, S.A.*, 544 F. Supp. 2d 178, 189-90 (S.D.N.Y. 2008); *Global Entm't, Inc. v. New York Telephone Co.*, No. 00 Civ. 2959 (SHS), 2000 U.S. Dist. LEXIS 16038, at *22 (S.D.N.Y. Oct. 31, 2000) (A contract can bind a non-party when the contract is signed by the party's agent.); *Arcadia Biosciences, Inc. v. Vilmorin & Cie*, 356 F. Supp. 3d 379, 392-94 (S.D.N.Y. 2019) (finding that a non-signatory can be bound by forum selection provisions to the same extent it can otherwise be bound to a contract under standard principles of contract law). Additionally, both Platinum and Huberfeld performed under the Release Agreement. Huberfeld surrendered the "Beneficial Interest" and agreed to a two year lock up of a substantial "Funds Interest." He also provided a broad general release of his own to Platinum and has abided by the same.

Under these circumstances, the Release Agreement is unquestionably valid and enforceable against PPVA. *See Consorcio Prodipe, S.A. de. C.V., S.A.*, 544 F. Supp. 2d at 193 (granting summary judgment; "No reasonable jury could, on this record, conclude that the releases given as part of the 1996 Agreements were anything other than the valid and enforceable releases …. Thus,

they preclude plaintiffs from bringing any claims against defendants … that relate to or touch upon the Project."); *see also Krumme v. Westpoint Stevens Inc.*, 238 F.3d 133, 144-45 (2d Cir. 2000) (enforcing release to dismiss claims); *Davis & Assocs.*, 168 F. Supp. 2d at 113 (awarding summary judgment and dismissing plaintiff's claims pursuant to an unambiguous release).  The JOLs clearly stand in PPVA's shoes and are equally bound by the Release Agreement.  *See United States SBA v. Coqui Capital Mgmt., LLC*, No. 08 Civ. 0978 (LTS), 2008 U.S. Dist. LEXIS 86772, at *8 (S.D.N.Y. Oct. 27, 2008).

  B.  *The Release Encompasses All of PPVA's Claims Against Huberfeld*

   The General Release is also unambiguous, clearly covering all of PPVA's claims against Huberfeld.  Generally, the terms of a release agreement must be construed in accordance with the executing parties' intent, such that the release will give effect to an "explicit, unequivocal statement of a present promise to release [a party] from liability." *Golden Pac. Bancorp v. FDIC*, 273 F.3d 509, 515 (2d Cir. 2001) (citation omitted).  Where, such as here, a release is executed in a commercial context between sophisticated parties with roughly equivalent bargaining positions and equal access to counsel, "the general rule is that 'if the language of the release is clear… the intent of the parties [is] indicated by the language employed.'" *Consorcio Prodipe, S.A. de. C.V.*, 544 F. Supp. 2d at 189-190 (citation omitted); *see also Locafrance U.S. Corp. v. Intermodal Sys. Leasing, Inc.*, 558 F.2d 1113, 1115 (2d Cir. 1977).   Where general language is used in a releasing document, the release must be construed most strongly against the releasing party; the burden is on Plaintiffs – as the releasing party – to establish that the general release should be limited in scope. *See Corines v. Charter One Bank*, 365 Fed. Appx. 237, 238-39 (2d Cir. 2010) (enforcing release); *Consorcio Prodipe, S.A. de. C.V.*, 544 F. Supp. 2d at 189-190.

   Here, by its express terms, the general release provision in the Release Agreement released Huberfeld from "any and all manner of actions, causes of action, suits, . . . claims and demands . .

. whether in law or in equity, whether known, unknown, or hereafter becoming known, foreseen or unforeseen . . . representative or other capacity, existing or hereafter arising, in law or in equity . . . that are based in whole or in part on any act or omission, transaction, or event in connection in any manner whatsoever with Platinum, from the beginning of the world to the Effective Date." This language – both clear and common – demonstrates that all parties, each of whom were represented by counsel, intended that the precise type of claims alleged in this case were intended to be encompassed within the scope of PPVA's general release.  Consequently, PPVA's claims alleging that Huberfeld acted wrongfully toward PPVA, whether denominated in law or equity, whether set forth as a breach of fiduciary duty or fraud, are barred as a matter of law.  *See Corines*, 365 Fed. Appx. at 238-39 (enforcing release); *Pampillonia*, 138 F.3d at 463 (applying release "that [was] knowingly and voluntarily made and clearly covered all claims whether already accrued or which might arise subsequently"); *Smickle v. City of New York*, No. 16-cv-3333 (VSB), 2018 U.S. Dist. LEXIS 53553, at *9 (S.D.N.Y., Mar. 29, 2018) (finding similar release language to be "unambiguous"); *Mandal v. City of New York*, No. 02 Civ. 1234 (WHP)(FM), 2008 U.S. Dist. LEXIS 24903, at *6 (S.D.N.Y. Mar. 17, 2008) ("if the language used [in a release] is unambiguous, the court must avoid the temptation to redraft it to make it comply with the court's sense of equity") (applying New York law); *Volk v. Liggett Grp.*, 96 Civ. 1921 (SS), 1997 U.S. Dist. LEXIS 2600, at *12 (S.D.N.Y. Mar. 10, 1997) ("[A]n agreement to waive 'any and all claims' is effective not only as to those claims 'already accrued' as of the time that the instrument is executed, but also as to any claims 'which might arise subsequent to the date of execution.'") (*citing Skluth v. United Merchants & Mfrs., Inc*., 163 A.D.2d 104, 107 (1st Dep't 1990)); *Fay v. Petersen Publ'g Co.*, No. 88 Civ. 6499 (MBM), 1990 U.S. Dist. LEXIS 5917, at *6-7 (S.D.N.Y. May 17, 1990) ("Although at the time of signing plaintiff may have had no inkling that he would bring an age discrimination

claim in the future, he should have understood from the language of the agreement that he was giving up 'any known or unknown claims' against the company related to his termination.").

PPVA entered into the Release Agreement intentionally, knowingly, and voluntarily. This conclusion is supported by both the four corners of the Release Agreement, as well as the memorandum prepared by counsel contemporaneously with the Release Agreement, which explained the purpose of the Release Agreement and its effect. (Daniels Dec., Ex. 11.) The signatory parties were cognizant of the effect of the Release Agreement on Platinum and PPVA specifically, and engaged in a thoughtful, sophisticated discussion on its meaning and relevance both internally and externally. Such discussion demonstrates that the Release Agreement was knowingly and voluntarily entered into by and behalf of all parties, including PPVA, and is enforceable in accordance with its terms.

## CONCLUSION

The Release Agreement should be enforced and all the claims set forth against Huberfeld in the SAC should accordingly be dismissed with prejudice.

Dated: New York, New York
           February 14, 2020

> _/s/ Jeffrey C. Daniels_
> Jeffrey C. Daniels, Esq.
> Of Counsel to Horowitz and Rubenstein, LLC
> 4 Carren Circle
> Huntington, NY 11743
> Tel: (516) 745-5430
> jdaniels@jcdpc.com
>
> _Attorneys for Murray Huberfeld_