UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE PLATINUM-BEECHWOOD LITIGATION | Master Docket No. 1:18-cv-06658-JSR |
| MARTIN TROTT and CHRISTOPHER SMITH, as Joint Official Liquidators and Foreign Representatives of PLATINUM PARTNERS VALUE ARBITRAGE FUND L.P. (in Official Liquidation) and PLATINUM PARTNERS VALUE ARBITRAGE FUND L.P. (in Official Liquidation),<br><br>    Plaintiffs,<br><br>    -v-<br><br>PLATINUM MANAGEMENT (NY) LLC, et al.,<br><br>    Defendants. | Case No. 1:18-cv-10936-JSR |

**REPLY MEMORANDUM OF LAW OF
DEFENDANT HUBERFELD FAMILY FOUNDATION, INC.
IN FURTHER SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

MORRISON COHEN LLP
909 Third Avenue
New York, NY 10022
(212) 735-8600

*Attorneys for Defendant Huberfeld Family Foundation, Inc.*

## **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................. 1

ARGUMENT ............................................................................................................................ 3

    I.    HFF Did Not Substantially Assist The Black Elk Scheme
           Or Proximately Cause Plaintiffs' Alleged Damages ........................................................ 3

    II.   Plaintiffs Improperly Point To Huberfeld's
           Individual Conduct, And Not HFF's Conduct ................................................................ 5

    III.  Plaintiffs' Argument That HFF's Legitimate Activity Substantially
           Assisted  Any Other Fraud or Breach of Fiduciary Duty Is Specious ............................. 7

    IV.  Plaintiffs Effectively Concede That HFF Is Entitled To Summary Judgment ............. 13

    V.   Plaintiffs Concede That HFF Is A Third-Party Beneficiary Of The Release
           Agreement That Bars Plaintiffs' Claims Against HFF In This Action .......................... 14

CONCLUSION ...................................................................................................................... 15

i

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Aventis Envtl. Science USA LP v. Scotts Co.*,
  383 F. Supp. 2d 488 (S.D.N.Y. 2005)..................................................................................8

*Beckman v. United States Postal Serv.*,
  79 F. Supp. 2d 394 (S.D.N.Y. 2000)....................................................................................8

*Fletcher v. Atex, Inc.*,
  68 F.3d 1451 (2d Cir. 1995).................................................................................................7

*Lambertson v. Kerry Ingredients, Inc.*,
  50 F. Supp. 2d 163 (E.D.N.Y. 1999) ............................................................................14, 15

*In re Platinum-Beechwood Litig.*,
  No. 18-cv-06658 (JSR), 2019 U.S. LEXIS 62745 (S.D.N.Y. Apr. 11, 2019).....................14

*Shah v. Helen Hayes Hosp.*,
  252 F. App'x 364 (2d Cir. 2007) .........................................................................................8

*Trott v. Platinum Mgmt. (NY) LLC*,
  Nos. 18-cv-06658 & 18-cv-10936 (JSR), 2019 U.S. Dist. LEXIS 104562
  (S.D.N.Y. June 21, 2019).................................................................................................5, 7

*Valentine Props. Assocs., LP .v United States HUD*,
  785 F. Supp. 2d 357 (S.D.N.Y. 2011), *aff'd*, 501 F. App'x 16 (2d Cir. 2012)......................8

**Statutes**

28 U.S.C. § 1746................................................................................................................9, 10

HFF respectfully submits this Reply Memorandum of Law in further support of its Motion for Summary Judgment.[1]

## PRELIMINARY STATEMENT

Plaintiffs' Opposition underscores just how far we have come after extensive discovery dispelled so many of Plaintiffs' brazen claims against HFF in the SAC. As the Court is doubtless aware, HFF is a not-for-profit charitable organization and publicly disclosed all of its material charitable work and principal-generating activity in public tax returns and other documents. It is undisputed that HFF made many millions of dollars in charitable donations to a variety of charitable, religious and educational organizations and needy individuals. (HFF 56.1 Statement ¶ 31) It is also undisputed that HFF invested millions of dollars in PPVA. Indeed, HFF's investment in PPVA was valued at over $13 million at the end of 2015. (HFF 56.1 Statement ¶ 36). HFF not only lost its investment in PPVA, it has now been compelled to spend money on legal fees instead of charitable causes.

Initially, as we explained in our moving papers, Plaintiffs' aiding-and-abetting claims should be dismissed because HFF did not substantially assist the purported Black Elk Scheme or proximately cause Plaintiff's alleged damages resulting from that scheme. Nothing set forth in Plaintiffs' opposition alters that conclusion. The undisputed facts are that HFF's only affirmative conduct even remotely connected to Black Elk was (i) making a $1 million investment in one of the BEOF Funds in February 2013, (ii) rolling over its investment in the BEOF Funds through a new March 2014 offering; and (iii) receiving an approximately $1 million distribution from that same investment in August 2014. It is also undisputed that HFF could not participate in the

---

[1] Capitalized terms not otherwise defined herein refer to the definitions set forth in the Memorandum Of Law Of Defendant Huberfeld Family Foundation, Inc. In Support Of Summary Judgment ("HFF Mem.", 1:18-cv-06658-JSR, ECF Doc. No. 746).

1

Consent Solicitation that PPVA contends was the predicate for its fraud and breach of fiduciary duty claims. Rather, the Consent Solicitation was undertaken only by certain Black Elk bondholders, which HFF undisputedly was not. Moreover, nothing that HFF did could be rationally inferred to have proximately caused PPVA's damages relating to the Black Elk Scheme. Since Plaintiffs lack proof to support HFF's substantial assistance or a causal nexus to the purported fraud and breach of fiduciary duty alleged in the SAC, the aiding-and-abetting claims against HFF should be summarily dismissed.

Second, despite this Court's prior rejection of Plaintiffs' claim that HFF was Huberfeld's alter ego, Plaintiffs nonetheless try to create a fact issue by returning to an alter ego style argument and pointing to alleged instances connecting Murray Huberfeld, as opposed to HFF, to the Black Elk Scheme. Plaintiffs' efforts in this regard fail, however, because the evidence does not support any relevant actions by Huberfeld in his capacity as an officer or director of HFF.

Third, Plaintiffs argue that HFF substantially assisted other unspecified fraudulent schemes and breaches of fiduciary duty because Huberfeld used HFF "as a source of funds to maintain the fraudulent illusion that PPVA was a financially sound hedge fund, rather than an enterprise teetering on the brink of collapse." (Opp. at 28.) This aspect of Plaintiffs' claims against HFF has already been dismissed by the Court, however, following full briefing on HFF's motion to dismiss the SAC and is otherwise procedurally barred. Moreover, as a matter of substance, the evidence cited by Plaintiffs to support their claim, namely HFF loans to four persons, not only fail to support Plaintiffs' assertions, they directly contradict and undermine any such claim. It should also be noted here that Plaintiffs misrepresent the testimony of Bernard Fuchs by failing to disclose his clarifications and corrections in subsequent deposition testimony.

Fourth, Plaintiffs do not respond at all to HFF's argument for summary dismissal of their

unjust enrichment claim and thus effectively concede the same. As HFF argued in its Motion, to the extent HFF received back its principal investment in the BEOF Fund, it was not at PPVA's expense, but rather at Black Elk's expense.  PPVA entered into a binding settlement agreement wherein it agreed that the funds subject to Plaintiff's unjust enrichment claim are due and owing to Black Elk, not PPVA.  Black Elk, in fact, separately sued HFF and HFF settled all claims with Black Elk in their entirety.  Under these circumstances, equity and good conscience simply do not favor permitting PPVA to recover funds to which another party is entitled, nor do they countenance a windfall to PPVA or a double recovery against HFF.  Given Plaintiffs' lack of response to these arguments, no doubt recognizing their merit, the unjust enrichment claim should be dismissed.

Finally, HFF was expressly named as a third-party beneficiary of the Release Agreement and is equally entitled to the benefit of the General Release provided by PPVA therein.  That broad and unambiguous agreement bars this action against HFF.  For this independent reason as well, summary judgment dismissing all the remaining claims set forth against HFF in the SAC is squarely warranted.

## ARGUMENT

I. **HFF Did Not Substantially Assist The Black Elk Scheme Or Proximately Cause Plaintiffs' Alleged Damages**

Plaintiffs' Opposition does not point to any disputed issue of fact central to their claims. Rather, the Opposition essentially confirms that HFF did not engage in any affirmative conduct to substantially assist the Consent Solicitation, which is the only alleged fraud and breach of fiduciary duty underlying the Black Elk Scheme.  Distilled to its essence, Plaintiffs readily concede that HFF's only connection to Black Elk was: (i) to make a $1 million investment in one of the BEOF Funds on February 8, 2013; (ii) "roll[ing] over its investment in the BEOF Funds through a new March 2014 offering"; and (iii) receiving an approximately $1 million distribution from that same

investment in August 2014.  (Opp. at 27-28.)   As they must, Plaintiffs do not dispute that both HFF's initial investment in February 2013, and the purported 'rollover of its investment' in March 2014, occurred prior to the time that the Black Elk Scheme was allegedly concocted.  Plaintiffs also admit that HFF itself did not participate in the Consent Solicitation; indeed, the Consent Solicitation was not circulated by Black Elk until a year-and-a-half after HFF invested in the BEOF Fund, the Consent Solicitation was not directed to HFF because it was not a Noteholder, HFF did not (and could not) tender any consent to Black Elk, and HFF did not direct how the proceeds of the Renaissance Sale would be distributed.  (*See* Opp. at 26-29; HFF 56.1 Statement ¶¶ 50-51.)

Plaintiffs' emphasis on the fact that HFF "rolled over its investment in the BEOF Funds through a new March 2014 offering" and that HFF indirectly received the proceeds of the Renaissance Sale (Opp. at 27-28) is neither here nor there.  Those undisputed facts do not bear on whether HFF substantially assisted the *Consent Solicitation*, which is the only conduct underlying Plaintiffs' aiding-and-abetting claims.  Similarly, Plaintiffs' assertion that Black Elk may have suffered financial or economic difficulties prior to HFF's investment in February 2013 (Opp. at 27) is also irrelevant, since Plaintiffs do not allege that the Black Elk Scheme or the Consent Solicitation were concocted at the time that HFF invested in the BEOF Fund.

Relatedly, Plaintiffs also fail to identify any affirmative conduct by HFF that can reasonably be inferred to have proximately caused PPVA's alleged damage from the Black Elk Scheme.  The true facts – undisputed in the Opposition – confirm that HFF's investment in the BEOF Fund (whether deemed to have been in February 2013 or March 2014) was made long before any of the purportedly fraudulent acts alleged in the SAC and otherwise has no nexus to the Consent Solicitation.

Because there is no question that HFF did not contribute to (let alone substantially assist)

4

the Black Elk Scheme, which is only alleged to have been carried out by the Platinum Defendants and the Beechwood Defendants through the Consent Solicitation, HFF is entitled to summary judgment dismissing Plaintiffs' aiding-and-abetting fraud and breach of fiduciary claims.

## II. Plaintiffs Improperly Point To Huberfeld's Individual Conduct, And Not HFF's Conduct

Lacking any evidence of HFF's affirmative conduct, and despite this Court's prior rejection of Plaintiffs' claim that HFF was Huberfeld's alter ego, Plaintiffs nonetheless try to manufacture controversy by pointing to certain instances seemingly connecting *Murray Huberfeld* – but not HFF – to the Black Elk Scheme. (Opp. at 27.)[2] Namely, Plaintiffs assert that "there . . . is significant evidence that Huberfeld, in his role as owner of HFF, was involved in the Black Elk Consent Solicitation scheme." (Opp. at 27.) The evidence presented by Plaintiffs, however, does not raise any issue of fact bearing on Plaintiffs' claims against HFF because Huberfeld was plainly acting individually in the instances cited, and not in his capacity as a director or officer of HFF.

Initially, Plaintiffs' description of Huberfeld as acting as an "owner" of HFF is legally and factually impossible because HFF is a not-for-profit corporation. As such, HFF had no "owners"; no one invests in or owns HFF (just like any other not-for-profit corporation).[3]

In any event, Plaintiffs point to only *five* emails to support their claim that Huberfeld was

---

[2] It is surprising that Plaintiffs made this argument since the Court already dismissed Plaintiffs' specious claim for relief based on an alter ego theory of liability, rejecting Plaintiffs' efforts to attribute Huberfeld's individual conduct to HFF. *See Trott v. Platinum Mgmt. (NY) LLC*, Nos. 18-cv-06658 & 18-cv-10936 (JSR), 2019 U.S. Dist. LEXIS 104562, at *61-63 (S.D.N.Y. June 21, 2019).

[3] This was indeed a consistent error in Plaintiffs' pleadings against HFF. (*See, e.g.*, SAC ¶¶ 1034, 1037.) HFF has directors and officers, of which Huberfeld was one throughout 2013 and 2014 (as was publicly disclosed on HFF's tax returns). Huberfeld was also among those directors who shared decision-making authority for HFF. (HFF 56.1 ¶¶ 38-39.) For the reasons stated *infra*, however, none of Huberfeld's conduct to which Plaintiffs point was in his capacity as a director or officer of HFF.

5

involved in the Black Elk Scheme "in his role as owner of HFF".[4] (*See* Opp. at 27 (citing Plaintiffs' 56.1 Statement at ¶¶ 465, 542).)  Not one communication remotely suggests that the messages were transmitted to Huberfeld in his role as a director or officer of HFF, rather than in his individual or another capacity:

- The email shown in "Bixter Decl. Ex. 339" is not directed to or from Huberfeld, let alone HFF.  (*See* Opp. at 27 (citing Plaintiffs' 56.1 Statement at ¶ 465).)

- The email shown in "Bixter Decl. Ex. 340" is a message directed to many recipients with Platinum email addresses, including Murray Huberfeld at his mhuberfeld@platinumlp.com email address.  (*Id.* (citing Plaintiffs' 56.1 Statement at ¶ 465).)

- The emails shown in "Bixter Decl. Exs. 477 and 601" are messages directed to Huberfeld personally.  (*Id.* (citing Plaintiffs' 56.1 Statement at ¶ 542).)

- The email shown in "Bixter Decl. Ex. 396" are messages directed to many recipients with Platinum email addresses, including to Huberfeld personally.  (*Id.* (citing Plaintiffs' 56.1 Statement at ¶ 542).)

Plainly, the five emails which Plaintiffs cite in support of their argument do not reflect, and cannot fairly be read to infer, that the messages were sent to Huberfeld in his capacity as a director or officer of HFF.  Tellingly, as well, not one of the five emails were sent *from* Huberfeld; rather, they were only sent *to* him.

Likewise, the additional three emails cited by Plaintiffs as purporting to prove that "*Huberfeld* created the BEOF Funds" do not have any bearing on *HFF's* substantial assistance to the Black Elk Scheme.  (*See* Opp. at 28 (emphasis added) (citing Plaintiffs' 56.1 Statement at ¶ 126, "Bixter Decl. Exs. 88, 89, and 91").)  Rather, Plaintiffs effectively concede that it was only Huberfeld, and not HFF, who allegedly contributed to the creation of the BEOF Funds.  Plaintiffs

---

[4] As the Court is aware, Plaintiffs have had access to over 9 million of Platinum's documents for years.  Plaintiffs also took substantial non-party document discovery and 50+ depositions.  It speaks volumes that Plaintiffs have essentially submitted only eight emails, none addressed to or from HFF, in opposition to HFF's motion for summary judgment.

do not (because they cannot) argue that HFF contributed to the creation of those funds. (*See* Opp. at 28.) Because there are no issues of fact to preclude a finding that HFF did not substantially assist the Black Elk Scheme, HFF is entitled to summary judgment. *See, e.g.*, *Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1461-62 (2d Cir. 1995) (granting summary judgment dismissing claims because company was not liable for tortious acts of agent; company did not confer actual or apparent authority on agent in connection with subject conduct).

### III. Plaintiffs' Argument That HFF's Legitimate Activity Substantially Assisted Any Other Fraud or Breach of Fiduciary Duty Is Specious

Grasping at straws, and without adequate factual or legal support, Plaintiffs argue in passing that HFF's summary judgment motion should be denied because "Huberfeld, and other Platinum Management partners, used HFF as a source of funds to maintain the fraudulent illusion that PPVA was a financially sound hedge fund, rather than an enterprise teetering on the brink of collapse." (Opp. at 28.) This component of Plaintiffs' claims against HFF has already been dismissed by the Court, however, following full briefing on HFF's motion to dismiss the SAC. Indeed, the Court preserved only Plaintiffs' "aiding and abetting and unjust enrichment [claims] in connection with HFF's role as a Preferred Investor [in the BEOF Fund]," and concluded that HFF could only be "held liable for the proceeds that it received" from the Renaissance Sale. *See Trott v. Platinum Mgmt. (NY) LLC*, 2019 U.S. Dist. LEXIS 104562, at *61-63.

During discovery, the JOLs' Rule 30(b)(6) corporate designee, Martin Trott, again confirmed that Plaintiffs' claims against HFF are essentially limited to HFF's investment in the BEOF Fund, and that no "other activity by [HFF] in connection with Platinum [] forms the basis for [PPVA's] damage allegations" other than its direct or indirect participation in the BEOF Funds (Chase Decl., Ex. 35 (Tr. 788:11-789:8)). (HFF 56.1 ¶ 61.) For this reason alone, any portion of Plaintiffs' claims based on HFF's activity, beyond its alleged involvement in the Black Elk

7

Scheme, should be dismissed. *See, e.g.*, *Valentine Props. Assocs., LP .v United States HUD*, 785 F. Supp. 2d 357, 370 (S.D.N.Y. 2011) ("a brief opposing a dispositive motion is not the appropriate means of seeking to revive previously dismissed claims"), *aff'd*, 501 F. App'x 16 (2d Cir. 2012); *Aventis Envtl. Science USA LP v. Scotts Co.*, 383 F. Supp. 2d 488, 512 (S.D.N.Y. 2005) ("A request in an opposition brief to a motion for summary judgment marshaling new facts is an improper means for requesting reinstatement of a previously dismissed claim . . . ."). Nor may Plaintiffs effectively amend the SAC to assert new theories of liability not previously alleged. *See, e.g.*, *Shah v. Helen Hayes Hosp.*, 252 F. App'x 364, 366 (2d Cir. 2007) ("A party may not use his or her opposition to a dispositive motion as a means to amend the complaint."); *Beckman v. United States Postal Serv.*, 79 F. Supp. 2d 394, 407-08 (S.D.N.Y. 2000) ("Because a failure to assert a claim until the last minute will inevitably prejudice the defendant, courts in this District have consistently ruled that 'it is inappropriate to raise new claims for the first time in submissions in opposition to summary judgment.'") (citation omitted).

In any event, Plaintiffs are also writing checks that their proof cannot cash. The facts cited by Plaintiffs simply fail to raise a genuine issue of material fact as to HFF's substantial assistance to any other fraudulent scheme or breach of fiduciary duty. In a shallow and desperate effort to concoct a claim, Plaintiffs simply point to HFF's loan activity with Moshe Oratz ($1,825,000), the Aaron Elbogen Irrevocable Trust ($6.5 million), the Huberfeld Bodner Family Foundation ($1,369,730), and the Fuchs Family Foundation ($325,000). Plaintiffs assert that these HFF loans were "made to PPVA investors and insiders in order to keep their money in PPVA and avoid mass redemptions, or to otherwise maintain the illusion of PPVA's viability." (Opp. at 28-29.) Plaintiffs make no real effort, however, to connect any of this loan activity to any fraudulent scheme or breach of fiduciary duty. Instead, they essentially ask the Court to indulge their pure

8

speculation and to try to help them piece together their theory.  Plaintiffs point to no evidence – not a single email, testimony, or anything else – connecting these four loans, on the one hand, to an attempt to cause "PPVA investors and insiders . . . to keep their money in PPVA . . . .", on the other hand.  (Opp. at 29.)  Nor is there otherwise any attempt to connect these loans to any alleged damage to PPVA.  In any event, the undisputed and unassailable evidence confirms that these loans had nothing whatsoever to do with PPVA -- no connection to any fraudulent scheme, and no connection to any damages alleged by PPVA.

As to the HFF loans to Moshe Oratz, Plaintiffs are plainly wrong on multiple fronts.  First and foremost, neither Oratz, nor his family, nor any entity affiliated with him, ever invested in PPVA (or any Platinum Fund for that matter), nor do Plaintiffs offer any evidence of an Oratz investment.  (Oratz Decl.[5] ¶ 3; Chase Reply Decl.[6], Ex. 2 (HFF Dep. Tr. 156:20 to 157:3).)  Accordingly, there was no money for Oratz to keep in PPVA.  Second, he had no employment or management role at PPVA and was not a Platinum insider, nor do Plaintiffs offer any evidence of his relationship to Platinum.  (Oratz Decl. ¶¶ 2, 5.)[7]  Plaintiffs simply fail to show any connection at all between the Oratz loans and PPVA or the claims asserted.

---

[5] Declaration of Moshe Oratz Pursuant to 28 U.S.C. § 1746 in Support of Defendant Huberfeld Family Foundation, Inc.'s Motion for Summary Judgment, dated March 12, 2020.

[6] Reply Declaration of Donald H. Chase in Further Support of the Huberfeld Family Foundation, Inc.'s Motion for Summary Judgment, dated March 17, 2020.

[7] The referenced loans were not even to Mr. Oratz alone; instead they were made to his brother, to SLO Trust, a trust administered by his brother, and to he and his wife. (Chase Reply Decl., Ex. 2 (HFF Tr. at 153-59).)  Moreover, the loans were all at market rates and for investment purposes with one small exception, a short term loan to his brother that was fully repaid.

As to the HFF loans to the Aaron Elbogen Irrevocable Trust, the evidence unequivocally shows that Mr. Elbogen was not a Platinum insider. (Elbogen Decl.[8] at ¶ 2) At various points in time over a long period, the Aaron Elbogen Irrevocable Trust requested and received loans from HFF. (*Id*. at ¶ 4) Those loans were all at market or above market interest rates (some as high as 18% or more) and all were paid back with interest (or to the extent any portion of a more recent loan is still outstanding, will be paid back in full with interest). (*Id*.). Plaintiffs fail to explain how above market interest rate loans could possibly induce Mr. Elbogen to assist PPVA in any manner, much less how the loans are connected in any way to a fraudulent scheme that damaged PPVA.[9] All of the loans obtained by Elbogen from HFF had nothing whatsoever to do with any investment in PPVA or any business of PPVA. (*Id*.)

Moreover, while Elbogen and the Aaron Elbogen Irrevocable Trust had no investment in PPVA, it is true that Ace Foundation, a private charitable foundation of which Elbogen is an officer and has ultimate decision-making authority as to investments, was an investor in PPVA. (*Id*. at ¶ 3.) Curiously, however, the Ace Foundation's investment in PPVA steadily decreased over the years: from $2,113,344 at the end of 2009, to $1,338,825 at the end of 2011, to $673,811 at the end of 2013, to $214,453 at the end of 2014, to $96,030 at the end of 2015. (*Id.*) This directly contradicts Plaintiffs' theory that HFF loans were made so that investors such as the Ace Foundation would not make significant redemptions and instead maintain their funds with PPVA.

---

[8]   Declaration of Aaron Elbogen Pursuant to 28 U.S.C. § 1746 in Support of Defendant Huberfeld Family Foundation, Inc.'s Motion for Summary Judgment.

[9]   Even though Elbogen certainly could have been obtained loans from other banks or financial institutions at lower interest rates, the principal reason he turned to HFF for such loans was because the need was immediate, and HFF was prepared to make the loans very quickly without excessive paperwork or security based on his longstanding business relationship and personal guaranty. (*Id.*; *see also* Chase Reply Decl., Ex. 3 (Elbogen Dep. Tr. 83-85).

Of course, Plaintiffs make no effort whatsoever to connect HFF's loans to Elbogen to any fraudulent scheme or damages suffered.

As to loans between HFF and the Huberfeld Bodner Family Foundation, a charitable foundation that Huberfeld and Bodner had formed before forming their own separate family charitable foundations (Chase Reply Decl., Ex. 4), these are simply transfers between charitable organizations that Huberfeld has explained (Chase Reply Decl., Ex. 2 at Tr. 256:4-261:23).  In any event, it defies logic to suggest that any such loan served a purpose in connection with any alleged fraudulent scheme or breach of fiduciary duty.  Plaintiffs make no effort to suggest one. Certainly any loan between these respective charitable foundations offered no incentive whatsoever for Huberfeld or Bodner themselves to maintain funds in PPVA.

Finally, that brings us to the smallest of the loans cited, HFF's $325,000 loan to the Fuchs Family Foundation.  Plaintiffs put before the Court certain provocative testimony given by Bernard Fuchs that they assert alone proves that that "HFF played a prominent role in . . . deceptions" meant to create "the illusion that Platinum was a viable and profitable company." (Opp. at 26.)   In that excerpted testimony, Fuchs states that HFF "loan[ed] Fuchs . . . $325,000 in lieu of [Fuchs taking a] redemption [from PPVA]," and that Fuchs "refused to repay most of the 'loan' because the $325,000 was his money."  (*Id*.)  Solely on the basis of that evidence, Plaintiffs assert that "Huberfeld, and the other partners, treated HFF as just another Platinum capital pool and used HFF's funds, when necessary, to fund BEOF or disguise Platinum's payments and obligations." (*Id.*)  Again pointing to that evidence, Plaintiffs argue that "Mr. Fuchs' testimony alone creates a material issue of fact for the jury on all three claims [against HFF] . . . ."  (Opp. at 27.)

Plaintiffs' argument is disingenuous at best because they deliberately neglect to state that Fuchs subsequently clarified and corrected in part his testimony under oath at deposition.

11

Plaintiffs' use of Fuchs' testimony prior to his corrections to assert the existence of a disputed issue of fact, without any concomitant reference to Fuchs' subsequent testimony is misleading. Specifically, Plaintiffs elected not to disclose to the Court in their Opposition that during his December 10, 2019 deposition, Fuchs confirmed that in 2016, HFF loaned $325,000 to the Fuchs Family Foundation (a charitable organization), and *not* to Fuchs personally. (Chase Reply Decl., Ex. 1 at Tr. 427:2-3; 427:25-428:4; 434:8-14.) The purpose of HFF's loan was charitable; the funds loaned to the Fuchs Family Foundation were donated to Yeshiva Torah Vodaath (a religious educational institution), as well as other similar Jewish schools. (*Id.* at 437:25-439:7.) Fuchs further unequivocally testified that HFF's loan to the Fuchs Family Foundation was made: (i) to his charitable foundation, (2) for charitable purposes, and (3) "wasn't a personal loan." (*Id.* at 439:3-9.)

Although Plaintiffs assert in their Opposition that "Fuchs refused to repay most of the 'loan' because the $325,000 was his money," Fuchs in fact clarified in his testimony that he did "pa[y] back some" of the loan, continued repaying the loan until December 2018, intended to pay back the remainder of the loan in 2020, and had only stopped repaying the loan after he was sued by Plaintiffs in the instant action. (*Id.* at Tr. 434:21-436:14.) Fuchs explained that to the extent any of his prior testimony was contradictory, it simply "was a mistake" because he "was confused a little bit that day." (Chase Reply Decl., Ex. 1 at Tr. 467:16-17, 469:5-10.) Of course, Fuchs testimony is entirely consistent with HFF's tax returns, which publicly report all of HFF's charitable and investment-related activity on an annual basis. (*See* Chase Decl., Exs. 13-21.)

The reason that Plaintiffs' use of Fuchs earlier testimony is so egregious is that it is at the end of the day the sole piece of evidence on which Plaintiffs rely for their contention that HFF was "treated . . . as just another Platinum capital pool." (Opp. at 26.) Plaintiffs nevertheless put forth

Fuchs' earlier clearly erroneous testimony (by his own admission) and suggest that it "alone creates a material issue of fact for the jury on all three [of Plaintiffs'] claims." (Opp. at 27.) In view of the fact that Fuchs expressly clarified and corrected the testimony on which Plaintiffs rely, and that nothing about Fuchs testimony raises the specter that HFF acted wrongfully (let alone tortiously or in a manner that proximately caused Plaintiffs' alleged damages), Fuchs' testimony creates no material issue of fact and Plaintiffs' arguments based on Fuchs uncorrected testimony should be disregarded.[10]

In any event, Fuchs testimony is not probative of any relevant factual issue as to HFF's substantial assistance in any fraudulent scheme or breach of fiduciary duty. Plaintiffs' apparent argument as to this $325,000 loan is also nonsensical. Fuchs had millions invested in PPVA so why would a $325,000 loan to his charitable foundation to allow it to meet a charitable commitment mollify any request by him for personal redemptions? Moreover, how is this transaction related to any fraudulent scheme and how does it possibly constitute a proximate cause for any of Plaintiffs' alleged damages? In sum, Plaintiffs' emphasis on Mr. Fuchs testimony is much ado over nothing.

### IV. Plaintiffs Effectively Concede That HFF Is Entitled To Summary Judgment On The Unjust Enrichment Claim

In its moving papers, HFF demonstrated that summary judgment is warranted on Plaintiffs' unjust enrichment claim because PPVA is not entitled to any proceeds from the Renaissance Sale. First, to the extent HFF received back its principal investment in the BEOF Fund, it was not at PPVA's expense, but rather at Black Elk's expense. (HFF Mem. at 16.) Second, to the extent

---

[10] Similarly, Plaintiffs' emphasis on an April 2016 email between Nordlicht and his personal accountants plainly refers to a discussion about Nordlicht's personal finances, and has nothing to do with PPVA or PPVA investors. (Opp. at 29 (citing Plaintiffs' 56.1 Statement ¶ 177, "Bixter Decl. Ex. 114").)

Black Elk received and continues to have a judgment against PPVA, such judgment would necessarily be reduced by virtue of Black Elk's settlement with HFF and its dismissal of the claims against HFF. Hence, Plaintiffs have thus already received the benefit of HFF's settlement and resolution and HFF is no longer "enriched." (HFF Mem. at 17.) Third, equity and good conscience do not ratiocinate in favor of permitting PPVA to recover funds to which it was not, in the first place, concededly entitled as a matter of undisputed fact and law, and for which it has already received the benefit. (HFF Mem. at 17.)

In Opposition, Plaintiffs do not respond at all to HFF's arguments that PPVA is not the proper party to recover in equity any proceeds from the Renaissance Sale. Although Plaintiffs state, "HFF knowingly entered into these transactions outside the structure of PPVA in order to subordinate PPVA and unjustly enrich itself by way of the Renaissance Sale," they do not respond to Plaintiffs' substantive arguments that PPVA – as opposed to Black Elk – is not factually, legally, or equitably entitled to recover on an unjust enrichment theory. Having conceded the argument, summary judgment is warranted. *See, e.g.*, *In re Platinum-Beechwood Litig.*, No. 18-cv-06658 (JSR), 2019 U.S. LEXIS 62745, at *70 (S.D.N.Y. Apr. 11, 2019) (dismissing and treating as abandoned Plaintiffs' unjust enrichment claim against other defendants because Plaintiffs' opposition did not address defendants' arguments).

### V. Plaintiffs Concede That HFF Is A Third-Party Beneficiary Of The Release Agreement That Bars Plaintiffs' Claims Against HFF In This Action

Plaintiffs do not dispute that HFF is a third-party beneficiary of the Release Agreement and the General Release. (Opp. at 67 n.15; *see* Chase Decl. Ex. 9, Ex. A) While Plaintiff asserts in passing that HFF "provided no consideration to PPVA," that is simply not true. HFF provided a general release to PPVA which itself constitutes ample consideration, particularly considering HFF's substantial losses from its investment in PPVA. (*Id.*) *See Lambertson v. Kerry Ingredients,*

14

*Inc.*, 50 F. Supp. 2d 163, 169 (E.D.N.Y. 1999) ("This mutual release provides sufficient consideration to effectuate the General Release.").

Plaintiffs also concede that should the Court find that the Release Agreement is a valid and binding agreement, the General Release bars Plaintiffs' instant claims against HFF.  (*Id.*) Accordingly, for brevity, HFF respectfully joins in the motions for summary judgment and legal argument of Murray Huberfeld and David Bodner as it relates to the Release Agreement, which establish that the Release Agreement is a valid and binding agreement, and enforceable against PPVA.  Because Plaintiffs unequivocally released HFF from all manner of PPVA's claims in this case, summary judgment is warranted on this ground as well.

## CONCLUSION

For all the foregoing reasons, HFF's motion for summary judgment should be granted and all the claims in the SAC against HFF should be dismissed with prejudice.

Date:   March 17, 2020

                Respectfully submitted,

                MORRISON COHEN LLP

                */s/ Donald H. Chase*
                Donald H. Chase
                Y. David Scharf
                Daniel C. Isaacs
                909 Third Avenue
                New York, NY 10022
                Tel: (212) 735-8600
                dchase@morrisoncohen.com
                dscharf@morrisoncohen.com
                disaacs@morrisoncohen.com

                *Attorneys for Defendant Huberfeld Family Foundation, Inc.*