```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------ x
In re PLATINUM-BEECHWOOD LITIGATION :    18-cv-6658 (JSR)
------------------------------------ x
SENIOR HEALTH INSURANCE COMPANY OF  :
PENNSYLVANIA,                       :
                    Plaintiff,      :    19-cv-7137 (JSR)
                                    :
           -v-                      :
                                    :
LINCOLN INTERNATIONAL LLC, et al.,  :    OPINION AND ORDER
                                    :
                    Defendants.     :
------------------------------------ x
```

JED S. RAKOFF, U.S.D.J.

Familiarity with the procedural background to this action is here assumed. As relevant here, on October 31, 2019, plaintiff Senior Health Insurance Company of Pennsylvania ("SHIP") filed an amended complaint against defendants Lincoln International LLC ("Lincoln International") and Lincoln Partners Advisors LLC ("Lincoln Partners"), alleging that Lincoln International and Lincoln Partners (collectively, "Lincoln") participated in the Platinum-Beechwood fraud in their joint capacity as a valuation services provider. Amended Complaint, ECF No. 39 ("Amended Complaint"). On December 3, 2019, the Court granted Lincoln's motion to dismiss three of the five counts, while denying the motion in all other respects. ECF No. 48.

Now before the Court is Lincoln's motion for summary judgment on the remaining two counts, viz., claims for aiding and abetting fraud and for aiding and abetting breach of

-1-

fiduciary duty. See ECF No. 50; Memorandum of Law in Support of Lincoln International LLC and Lincoln Partners Advisors LLC's Motion for Summary Judgment, ECF No. 51 ("Lincoln Mem."); Reply Memorandum of Law in Support of Lincoln International LLC and Lincoln Partners Advisors LLC's Motion for Summary Judgment, ECF No. 64 ("Lincoln Reply"). SHIP opposes. See Plaintiff's (Corrected) Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment, ECF No. 62 ("SHIP Opp."). For the reasons set forth below, the Court grants summary judgment in favor of Lincoln on both counts and dismisses the Amended Complaint in its entirety.

## Background

Except where otherwise noted, the following facts, either undisputed or taken most favorably to the non-moving party, are taken from the parties' Rule 56.1 statements:

<u>Parties</u>

Plaintiff Senior Health Insurance Company of Pennsylvania is a long-term care insurance company operating in run-off. Local Rule 56.1 Statement of Undisputed Facts in Support of Lincoln International LLC and Lincoln Partners Advisors LLC's Motion for Summary Judgment, ECF No. 52 ("Lincoln 56.1") ¶ 39. Defendants Lincoln International LLC and Lincoln Partners Advisors LLC are sister companies and wholly-owned subsidiaries of non-party Lincoln International, L.P. Id. ¶ 1. Lincoln

Partners offers a range of valuation services through its Valuations and Opinions Group. Id. ¶ 2.

Engagement Letter Between Lincoln Partners and Beechwood

On February 19, 2014, Lincoln Partners entered into an engagement letter with B Asset Manager, LP, together with its subsidiaries and affiliates (collectively, "Beechwood"). The engagement letter provided that Lincoln would perform quarterly "positive assurance as to [Beechwood's] fair values" and/or "independent valuations," which would be "used by the Board of Directors of [Beechwood] to assist with its determination of the fair value of the Investments in accordance with the fair measurement principles of the Financial Accounting Standards Board Codification, Topic 820 – Fair Value Measurements and Disclosures . . . ("ASC-820")." Letter dated February 19, 2014, ECF No. 53-4, at 1. In performing such positive assurance, Lincoln agreed to "review [Beechwood's] determination of fair value and provide its opinion as to whether, based on its review, the fair value of each of the Investments is reasonable in accordance with ASC-820." Id.

Subsequently, Lincoln also agreed to provide monthly "negative assurance" letters, where Lincoln would analyze Beechwood's fair values for the investments and provide its opinion on whether Beechwood's fair value estimates were not unreasonable in light of ASC-820. Lincoln 56.1 ¶¶ 13-14.

Investment Management Agreements Between SHIP and Beechwood

On May 22, 2014, June 13, 2014, and January 15, 2015, SHIP entered into three Investment Management Agreements ("IMAs") with certain Beechwood entities, pursuant to which Beechwood agreed to provide investment management and advisory services to SHIP. Id. ¶¶ 46-47. Two of the three IMAs guaranteed to SHIP an investment return "equal to 5.85% per annum (non-compounded) of the net asset value of the Assets contributed to the Account as of the date of the [IMAs]," where any annual shortfall obligated Beechwood to make a "true-up payment" to SHIP. Id. ¶¶ 49-50. Conversely, Beechwood was entitled to a "performance fee" equal to 100% of the amount by which the net profit exceeded the guaranteed rate. Id. ¶ 51. The third IMA did not contain express provisions as such, but SHIP entered into a side letter which similarly guaranteed an annual investment return of 5.85% per year. Id. ¶¶ 53-54. The IMAs also provided that, within 15 days after the end of each fiscal quarter, Beechwood would provide SHIP "valuation reports from an independent third-party valuation company (currently Lincoln International) on all non-public securities." Id. ¶ 56.

Wilmington Trust, N.A. ("Wilmington") served as the custodian for the IMA accounts. Id. ¶ 58. It issued monthly account statements for the SHIP custodian accounts, which included a market value for each of the investments held at the

end of the month. Id. ¶¶ 119-20. The market values in these statements were based on information Beechwood sent to Wilmington. Id. ¶ 122-30. As relevant here, SHIP received the December 31, 2014 and January 31, 2015 Wilmington account statements on, respectively, January 14, 2015 and February 9, 2015. Id. ¶ 133; Senior Health Insurance Company of Pennsylvania's Response to Defendants' Local Rule 56.1 Statement of Undisputed Facts, ECF No. 62 ("SHIP 56.1 CS") ¶¶ 185-86.

Lincoln's Valuations of Beechwood Investments

In performing its valuations, Lincoln relied on information from Beechwood, as well as existing economic, financial, and market conditions, to opine on whether Beechwood's fair value estimates were reasonable (for positive assurance) or not unreasonable (for negative assurance), in accordance with ASC-820. Lincoln 56.1 ¶ 26. Lincoln also understood that Beechwood had ties to Platinum, and thus considered any transactions between the two as related-party transactions. Id. ¶¶ 29-30.

Between March 7, 2014 and December 4, 2014, inclusive, Lincoln issued various positive assurance reports and negative assurance letters with respect to investments by Beechwood's investors other than SHIP. Id. ¶¶ 59-68. None of these reports or letters referenced SHIP, the SHIP custody accounts, or the

-5-

value of Beechwood's investments in the SHIP custody accounts. Id. ¶ 69.[1]

Over the course of its engagement, Lincoln grew frustrated with Beechwood for reasons disputed by the parties: Lincoln focuses on the testimony showing that the Beechwood valuation process took an enormous amount of time and resources, whereas SHIP focuses on the testimony and other evidence hinting that Lincoln was concerned with Beechwood's lack of transparency. Lincoln 56.1 ¶ 70; SHIP 56.1 CS ¶ 70.

On January 19, 2015, Lincoln issued a positive valuation report valuing seven investments[2] in the SHIP custody accounts. Positive Assurance Valuations as of December 31, 2014, ECF No. 53-9 ("Positive Assurance Report"). In that report, Lincoln concluded that "Beechwood fair values as of December 31, 2014 . . . are reasonable, in accordance with the fair value

---

[1] While SHIP admits that these reports do not mention SHIP or the SHIP custody accounts, SHIP disputes this statement on the ground, which the Court finds puzzling and unpersuasive, that these assets were later added to the SHIP custody accounts. SHIP 56.1 CS ¶ 69.

[2] These seven investments consist of: (1) debt investments in MYSYRL Capital, LLC, The New Bradley House Ltd., Northstar GOM Holdings, LLC, and San Gold Corp. LLC, (2) equity investment in Agera Energy, LLC ("Agera"), and (3) limited partnership investments in Platinum Partners Credit Opportunities Fund LLC and Platinum Partner Value Arbitrage Fund LLC ("PPVA"). Lincoln 56.1 ¶¶ 91, 93.

measurement principles of [ASC-820]." Id. Although the parties dispute whether the substance of, or specific figures within, the report ever reached SHIP or Wilmington, it is undisputed that the valuation report itself never reached either SHIP or Wilmington. Lincoln 56.1 ¶ 98.

On February 19, 2015, Lincoln issued a negative assurance letter to Beechwood regarding SHIP's investments for the month ending January 31, 2015. Negative Assurance Letter, dated February 19, 2015, ECF No. 53-6, at 2 ("Negative Assurance Letter"). The letter discussed the same seven portfolio companies as the Positive Assurance Report. Id. The letter itself never reached either SHIP or Wilmington. Lincoln 56.1 ¶ 109.

Performance Fee Withdrawals

During the course of the IMAs, Beechwood made numerous withdrawals of performance fees from SHIP's custody accounts, but only one withdrawal occurred prior to March 9, 2015. Id. ¶¶ 134-35. That withdrawal, in the amount of $1 million, occurred on October 2, 2014 for the period ending September 30, 2014. Id. ¶ 135. In addition, the next withdrawal of performance fees occurred on April 6, 2015, for the period ending March 31, 2015, where Lincoln did not value any of the SHIP IMA assets as of March 31, 2015. Id. ¶¶ 137-38.

Lincoln's Termination and Aftermath

Following the issuance of the Positive Assurance Report on January 19, 2015, Lincoln internally decided to terminate the Beechwood engagement because of increasing concerns over working with Beechwood (for the reasons discussed above, as disputed by the parties). Lincoln 56.1 ¶ 99; SHIP 56.1 CS ¶ 99. Accordingly, on March 9, 2015, Lincoln sent Beechwood a notice of termination, backdated to be effective February 19, 2015. Notice of Termination, ECF No. 54-23; Email dated March 9, 2015, ECF No. 59-9; SHIP 56.1 CS ¶¶ 226-28. On the same day, Beechwood engaged Duff & Phelps to replace Lincoln in performing quarterly valuations for its investments. Lincoln 56.1 ¶ 115.

In June 2016, federal authorities arrested Murray Huberfeld, a Platinum executive, and the ongoing federal investigation of Platinum became public. Id. ¶ 139. On July 25, 2016, the Wall Street Journal published an article on the Platinum fraud probe and its ties to Beechwood. Id. ¶ 141. Subsequently, a series of government investigations, criminal actions, and civil actions commenced against Platinum and Beechwood entities and individuals (as well as others), alleging that they, inter alia, engaged in fraudulent overvaluations of net asset values of Platinum and Beechwood investments and concealed from investors the close ties between Platinum and Beechwood. See, e.g., In re Platinum-Beechwood Litig., Nos. 18-cv-6658, 18-cv-10936, 18-cv-12018 (JSR) (S.D.N.Y.); United

States v. Nordlicht et al., No. 16-cr-00640 (BMC) (E.D.N.Y.); SEC v. Platinum Management (NY) LLC et al., No. 16-cv-06848 (BMC) (E.D.N.Y.).

**Analysis**

Under Rule 56(a) of the Federal Rules of Civil Procedure, a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "The movant bears the burden of demonstrating the absence of a genuine dispute of fact, and, to award summary judgment, the court must be able to find after drawing all reasonable inferences in favor of a non-movant that no reasonable trier of fact could find in favor of that party." Palmer/Kane LLC v. Rosen Book Works LLC, 204 F. Supp. 3d 565, 568 (S.D.N.Y. 2016).[3]

"To establish liability for aiding and abetting fraud under New York law, the plaintiffs must show (1) the existence of a fraud; (2) the defendant's knowledge of the fraud; and (3) that the defendant provided substantial assistance to advance the fraud's commission." Krys v. Pigott, 749 F.3d 117, 127 (2d Cir. 2014).

---

[3] Unless otherwise indicated, in quoting cases all internal quotation marks, alterations, emphases, footnotes, and citations are omitted.

-9-

"A claim for aiding and abetting a breach of fiduciary duty requires, inter alia, that the defendant knowingly induced or participated in the breach." Krys v. Butt, 486 F. App'x 153, 157 (2d Cir. 2012) (summary order). Furthermore, "[a] person knowingly participates in a breach of fiduciary duty only when he or she provides substantial assistance to the primary violator." Baron v. Galasso, 921 N.Y.S.2d 100, 104 (2d Dep't 2011).

Because "the same activity is alleged to constitute the primary violation underlying both claims," the claim for aiding and abetting fraud here overlaps substantially with the claim for aiding and abetting breach of fiduciary duty. Fraternity Fund Ltd. v. Beacon Hill Asset Mgmt., LLC, 479 F. Supp. 2d 349, 360 (S.D.N.Y. 2007). For this reason, except where otherwise stated, these two claims are analyzed together.

The substantial assistance element is established "when a defendant affirmatively assists, helps conceal or fails to act when required to do so, thereby enabling the breach to occur." Lerner v. Fleet Bank, N.A., 459 F.3d 273, 295 (2d Cir. 2006). Also embedded in the substantial assistance element is the concept of proximate causation, which requires a showing that "a defendant's participation [was] the proximate cause of plaintiff's injury." Dubai Islamic Bank v. Citibank, N.A., 256 F. Supp. 2d 158, 167 (S.D.N.Y. 2003). SHIP asserts that Lincoln

substantially assisted Beechwood's primary breach and fraud against SHIP in two ways: (1) Lincoln overvalued SHIP's investments in violation of ASC-820, such overvalued marks were sent by Beechwood to Wilmington in a spreadsheet on January 27, 2015, and Wilmington incorporated those marks into its January 31, 2015 monthly account statements sent to SHIP, and (2) Lincoln failed to affirmatively disclose what it allegedly knew – i.e., overvaluation of SHIP's investments and close ties between Platinum and Beechwood – to SHIP, Beechwood's auditor, and Duff & Phelps (the entity that replaced Lincoln).[4] The Court finds that, under either theory, Lincoln did not substantially assist Beechwood's primary fraud or breach of fiduciary duty, for the following reasons.

I. **Substantial assistance by means of overvaluation**

Even assuming arguendo that Lincoln overvalued SHIP's investments and that Lincoln's marks were somehow incorporated

---

[4] The Amended Complaint alleges that the presentations that Beechwood used to induce SHIP into signing the IMAs mentioned Lincoln as the valuation company and that these presentations constituted Lincoln's substantial assistance. See Amended Complaint ¶¶ 188-92. However, these allegations have been abandoned by SHIP at this summary judgment stage; indeed, there is no genuine dispute of the fact that Lincoln had no knowledge of these presentations and did not reviewed them. Lincoln 56.1 ¶ 45; SHIP 56.1 CS ¶ 45; see also Lincoln 56.1 ¶ 48; SHIP 56.1 CS ¶ 48.

into the January 31, 2015 Wilmington statements[5] that SHIP received (both of which are disputed by the parties, see Lincoln Mem. 15-20; Lincoln Reply 3-7; SHIP Opp. 18-22), no evidence shows that SHIP was injured as a proximate cause of Lincoln's conduct. To begin with, there is no evidence that Lincoln's valuation marks[6] allowed Beechwood to withdraw unearned performance fees. See Amended Complaint ¶¶ 188-92. Out of tens of millions in performance fees that Beechwood withdrew from SHIP's accounts over many years, only one performance fee of $1,000,000, based on the valuations as of September 30, 2014, was withdrawn during Lincoln's engagement with Beechwood. See Withdrawal Notice, dated October 2, 2014, ECF No. 54-37; Beechwood-SHIP Performance Withdrawals, ECF No. 54-36; see also

---

[5] On January 27, 2015, Beechwood sent to Wilmington a spreadsheet containing valuation marks for four of SHIP's seven investments, and Wilmington incorporated these marks into the January 31, 2015 statements delivered to SHIP. SHIP 56.1 CS ¶¶ 181-88. The parties dispute whether the figures in the spreadsheet were authored by Lincoln. SHIP Opp. 22; Lincoln Reply 3. Other than this, there is no evidence that Lincoln's marks ever reached SHIP. See infra note 7.

[6] As discussed above, Lincoln's valuation reports themselves were, undisputedly, never delivered to SHIP or Wilmington Trust, so Lincoln could not have caused SHIP any harm by means of Lincoln's valuation reports. Lincoln 56.1 ¶¶ 98, 109; SHIP 56.1 CS ¶¶ 98, 109; see also Senior Health Insurance Company of Pennsylvania's Responses to Defendants' Request for Admissions, ECF No. 53-21 ("SHIP Admissions"), at 5. Therefore, the parties instead focus on whether Lincoln's valuation marks may have caused SHIP any injury.

Lincoln 56.1 ¶ 135; SHIP 56.1 CS § 135. That withdrawal occurred at least three months before Lincoln first issued its valuation report and before Lincoln's marks were allegedly delivered to SHIP through the January 31, 2015 Wilmington statement.[7] See Positive Assurance Report; SHIP 56.1 CS ¶¶ 181-88. Therefore, there cannot be proximate causation between Lincoln's valuations and the withdrawal on October 2, 2014. In addition, the very next performance fee withdrawal, for the period ending March 31, 2015, occurred on April 6, 2015, where Lincoln did not value any of the SHIP IMA assets as of March 31, 2015. Lincoln 56.1 ¶¶ 137-38; SHIP 56.1 CS ¶¶ 137-38.

In its opposition brief, SHIP argues that the fact that SHIP's performance fee withdrawals came before Lincoln's valuations or after Lincoln's termination does not mean that SHIP's injuries are not attributable to Lincoln, because

---

[7] SHIP notes that, on October 14, 2014, it directly received from Beechwood certain spreadsheets containing marks for Agera and PPVA at about $25.4 million and $9.1 million, respectively, and listing Lincoln as the "price source" for certain of SHIP's assets. See SHIP 56.1 CS ¶¶ 162, 187. However, there is no evidence that these marks came from Lincoln. In fact, Lincoln did not issued a valuation report for Beechwood's investments in the SHIP custody accounts as of September 30, 2014. See Lincoln 56.1 ¶ 69. Furthermore, no Lincoln marks or reports valued Beechwood's investments in Agera and PPVA at around $25.4 million and $9.1 million, respectively, around this time. Lastly, even if these marks truly came from Lincoln, the performance fee withdrawal at issue occurred on October 2, 2014, 12 days prior to when SHIP received these spreadsheets.

-13-

Lincoln's inflated valuations enabled Beechwood to avoid its obligation to "true up" SHIP's accounts when the actual returns were in fact below the guaranteed rate of 5.85% per year. See SHIP Opp. 23. However, undisputed evidence shows that SHIP's true-up theory of injury also fails. According to the IMAs, Beechwood's annual true-up obligation for the years 2014 and 2015 was assessed as of December 31, 2014 and December 31, 2015, respectively. See Investment Management Agreements, ECF Nos. 53-16, 53-17, Ex. B §§ 1, 3; see also Side Letter, ECF No. 53-22, at 1. The December 31, 2014 Wilmington statements did not reflect Lincoln's valuations, as acknowledged by SHIP.[8] Compare Statement of Account re: Beechwood Re Ltd., as of December 31, 2014, ECF No. 54-34 and Statement of Account re: Beechwood Bermuda International Ltd., as of December 31, 2014, ECF No. 54-35 with Positive Assurance Report; see also Lincoln 56.1 ¶¶ 131-

---

[8] Because the December 31, 2014 Wilmington statements do not reflect Lincoln's valuations at all, on the issue of whether Lincoln's marks ever reached SHIP (a contested issue that the Court does not reach), SHIP focuses primarily on how the January 31, 2015 Wilmington statements – which incorporated the figures in the January 27, 2015 spreadsheet - contain marks that allegedly came from Lincoln. SHIP Opp. 22 ("Lincoln argues that it could not have been the 'source' of the marks on the Wilmington account statement for December 2014 because Lincoln's valuation report was issued on January 19, 2015. . . . But Lincoln's argument selectively presents the facts: Lincoln's marks were reflected in Wilmington's account statements for January 2015 and transmitted to SHIP.").

32; SHIP 56.1 CS ¶¶ 131-32. Moreover, SHIP fails to explain how the January 31, 2015 Wilmington statements, let alone any valuation work that Lincoln did up to February 19, 2015, had any bearing on Beechwood's annual true-up obligation in 2015 that was measured as of December 31, 2015.[9]

In sum, even assuming arguendo that Lincoln overvalued SHIP's investments with Beechwood, such conduct did not proximately cause SHIP's injuries. Therefore, Lincoln did not, by means of alleged overvaluation, substantially assist Beechwood's primary fraud and breach of fiduciary duty.

## II. Substantial assistance by means of failure to disclose

SHIP argues that Lincoln's failure to disclose the allegedly fraudulent nature of various Beechwood investments

---

[9] In addition, at the motion to dismiss stage, the Court held that the allegation in the Amended Complaint that Lincoln's fraudulent valuations contributed to preventing SHIP from discovering the fraud and terminating the IMAs was sufficient on its own to plead proximate causation. ECF No. 48, at 14-15. However, at the summary judgment stage, SHIP seems to have abandoned this theory of proximate causation and puts forth no evidence to back it up. See SHIP Opp. 22-24. This abandonment is understandable, as discovery has revealed that the nexus, if any at all, between Lincoln's marks and information that SHIP received turned out to be significantly narrower in scope and time than what the Amended Complaint alleges. Compare Amended Complaint ¶¶ 138, 143-44, 184 with supra notes 3 and 7.
    Accordingly, SHIP instead argues that Lincoln's failure to disclose what it knew, rather than its overvaluation, contributed to preventing SHIP from discovering the fraud and terminating the IMAs, which is discussed below. See SHIP Opp. 23-24.

contributed to preventing SHIP from discovering fraud and terminating the IMAs. SHIP Opp. 23-24. In SHIP's view, when Lincoln terminated its relationship with Beechwood, it could and should have disclosed to SHIP that (1) Beechwood and Platinum were related parties and (2) substantial portions of the investments Beechwood made pursuant to the IMAs were related-party transactions with Platinum. Id. Similarly, SHIP adds, Lincoln could have revealed such information to Beechwood's auditor or Duff & Phelps, who would have raised red flags, allowing SHIP to discover the fraud. Id.; see also SHIP 56.1 ¶¶ 224-25.

However, it is axiomatic that mere inaction cannot constitute substantial assistance unless "the defendant owes a fiduciary duty directly to the plaintiff," which Lincoln did not. SPV Osus Ltd. v. UBS AG, 882 F.3d 333, 346 (2d Cir. 2018). SHIP cites to no evidence supporting any inference that Lincoln owed any fiduciary duty to its client's investor, auditor, and subsequent valuation services provider. In fact, SHIP does not argue in its brief that Lincoln owed fiduciary duty to those entities, and, during oral argument, SHIP confirmed as much. See Transcript, 4/7/2020, at 29:18-30:20. Therefore, Lincoln did not

substantially assist Beechwood's primary fraud and breach by means of its failure to disclose what it allegedly knew.[10]

### Conclusion

For the reasons set forth above, the Court holds that Lincoln did not substantially assist Beechwood's primary breach of fiduciary duty and fraud committed against SHIP. Accordingly, the Court grants summary judgment in favor of defendants on the aiding and abetting claims and dismisses the Amended Complaint in its entirety.

The Clerk of the Court is directed to close the entries bearing docket number 50 in 19-cv-7137 and docket number 733 in 18-cv-6658, and to close the case with number 19-cv-7137.

SO ORDERED.

Dated: New York, NY
April 10, 2020

_____
United States District Judge

---

[10] Because the above is sufficient to grant summary judgment in favor of Lincoln, the Court does not reach the other contested issues of (1) whether Lincoln overvalued Beechwood investments and/or failed to comply with ASC-820, (2) whether Lincoln's valuation marks ever reached SHIP, (3) whether Lincoln had actual knowledge of Beechwood's primary fraud and breach of fiduciary duty, and (4) whether claims against Lincoln International LLC should be dismissed on the ground that it was not engaged by Beechwood. See Lincoln Mem. 15-20, 22-25; Lincoln Reply 3-7, 9-10; SHIP Opp. 16-22, 24.